Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
**ARNS DAVIS LAW**
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Anthony L. Label, State Bar No. 205920 (al.team@veenfirm.com)
Theo Emison, State Bar No. 209183 (t.emison@veenfirm.com)
Steven A. Kronenberg, State Bar No. 215541 (al.team@veenfirm.com)
Jacqueline K. Oh, State Bar No.286089 (al.team@veenfirm.com)
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMULO TORRES, individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BOTANIC TONICS, LLC; 7-ELEVEN, INC.; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 3:23-cv-01460<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Violation of Cal. Bus. Prof. Code §§ 17200, *et seq.*<br>2. Violation of Cal. Bus. Prof. Code §§ 17500, *et seq.*<br>3. Common Law Fraud<br>4. Breach of Implied Warranty of Merchantability<br>5. Unjust Enrichment<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Romulo Torres, on behalf of himself and all others similarly situated, brings this action against Defendants Botanic Tonics, LLC; 7-Eleven, Inc.; and Does 1 through 10. Plaintiff alleges, upon information and belief, the investigation of counsel, and the facts that are a matter of public record, as follows:

1.    Plaintiff brings this action individually and on behalf of two proposed classes defined below ("the Classes") against Defendants, which Plaintiff contends falsely advertised and misrepresented the character of the product "Feel Free Wellness Tonic" and failed to warn about its dangerous side effects.

2.    Botanic Tonics advertised its "Feel Free Wellness Tonic" as a safe, sober, and healthy alternative to alcohol. Botanic Tonics utilized targeted advertising on social media to reach its desired customer base, which included individuals like Plaintiff who had battled with addiction in the past. As a part of its campaign, Botanic Tonics paid social media influencers to post pictures and videos of themselves drinking Feel Free and advertising it as a way to quit drinking or stay sober. Botanic Tonics prominently advertised with the hashtag #alcoholalternative.

3.    Botanic Tonics also partnered with college sports teams, hired hundreds of college students, gave away Feel Free at fraternity and sorority parties and during finals weeks to "fix [their] stress," and engaged in a campaign to target college students as a means to expand its consumer base.

4.    In advertisements and informational materials, Botanic Tonics characterized Feel Free as a kava drink, kava being a relatively harmless plant from the South Pacific that acts as a moderate depressant, inducing a sense of calm or relaxation. Botanic Tonics stated that Feel Free was safe, healthy, and not addicting, stating that it was no more habit forming than sugar or caffeine, and that it had no side effects.

5.    Despite these misleading marketing statements, Feel Free has the potential to be highly addictive. Contrary to the marketing, Feel Free's primary ingredient is not kava, but kratom. Kratom is an opioid that carries similar risks of addiction as controlled narcotics. The FDA and DEA have warned that kratom can lead to addiction, with significant detrimental side effects, and the DEA has categorized it as a Drug and Chemical of Concern. Accordingly, addiction rehabilitation centers in California include kratom as one of the harmful substances for which they

treat patients, and they do so using similar methods as those used to treat opioid addiction.

6. Kratom—especially at the concentrations used in Feel Free—is also responsible for a variety of side effects in users that range from the moderate to severe. Moderate side effects of kratom include nausea, sweating, itching, dry mouth, constipation, increased urination, agitation, and trouble sleeping. More severe side effects include respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, and coma.

7. Unbeknownst to consumers, Botanic Tonics not only added kratom in large amounts, but also manipulated the formula of Feel Free to magnify the effects of kratom and induce a quicker, longer-lasting, and greater high. Botanic Tonics never disclosed the amount or concentration of kratom in Feel Free, the fact that it manipulated Feel Free's formula to magnify the effects of kratom, or that Feel Free had the potential to cause significant side effects.

8. Like the 2.9 million Californians who suffer from substance abuse disorders, Plaintiff Romulo Torres suffered from alcoholism. After battling with this disease for years, Plaintiff entered a rehabilitation facility in 2014 and achieved sobriety, sustaining long-term sobriety. In 2020, Plaintiff began to receive targeted ads from Botanic Tonics on social media, marketing Feel Free as a safe, healthy, and sober alternative to alcohol.

9. In December 2021, Plaintiff tried Feel Free, purchasing it from a 7-Eleven store. Within three months, he had developed a strong addiction to the product. He was drinking 10 Feel Free tonics per day and spending $3000 per month on the product. Like any other highly addictive substance, Plaintiff could no longer function without Feel Free and suffered severe withdrawal symptoms when he attempted to stop using Feel Free. In 2022, Plaintiff relapsed and began drinking alcohol in an effort to cope with the worsening symptoms of his Feel Free addiction.

10. Over the next several months, Plaintiff was admitted to the emergency room with symptoms associated with severe poioid use, including vomiting, lapses in consciousness, delirium, and psychosis. His symptoms were attributed to the ingredients in Feel Free. In fall 2022, Plaintiff underwent medical detox and subsequently was readmitted to a rehabilitation facility.

11. Feel Free has caused Plaintiff to lose his job, had severe impacts on his family life, and has

undermined his decades of work in recovery.

12.    Plaintiff's story is not unique. Scores of individuals who have battled with sobriety have found themselves the victims of targeted and misleading advertising by Botanic Tonics. They have been induced to try a product, Feel Free, as a means to support their sobriety. Through tragic irony by way of fraud, this product has perpetuated the very addiction they sought to avoid. Botanic Tonics has marketed its product misleadingly to this vulnerable population and failed to warn about the dangerous side effects of the product.

13.    The scope of Feel Free's effect on public health would have been far more limited but for the involvement of 7-Eleven, a large national convenience store corporation that partnered with Botanic Tonics and ensured that 7-Eleven stores across California and the nation would stock and sell Feel Free, thereby increasing the joint profits of 7-Eleven and Botanic Tonics. 7-Eleven participated in a joint venture with Botanic Tonics to increase their profits through the expansion of the market for Feel Free.

14.    Plaintiff asserts claims individually and collectively under the California Unfair Competition Law, Business & Professions Code sections 17200, *et seq*.; California False Advertising Law, Business & Professions Code sections 17500, *et seq*.; common law fraud; breach of the implied warranty of merchantability; and unjust enrichment.

15.    Plaintiff seeks restitution, disgorgement, equitable relief, costs and expenses of litigation including attorneys' fees, punitive damages, and all additional relief that the Court may deem appropriate and just under the circumstances.

## JURISDICTION AND VENUE

16.    CAFA Jurisdiction: This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiffs bring it individually and on behalf of the proposed Class.

- Minimal Diversity: As alleged herein, Defendant 7-Eleven is a Texas corporation with its principal place of business at 3200 Hackberry Road, Irving, Texas 75063. Additionally, Plaintiff is a resident of California and the proposed Class consists of

California purchasers of Feel Free.

- <u>Amount in Controversy Exceeds $5 million</u>: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiff believes there to be more than 5,000 members of the proposed Class. Plaintiff alleges that they and the proposed Class have been fraudulently misled and intentionally misrepresented to in the course of the advertising and sale of Feel Free to Plaintiffs.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendants engage and perform business activities in and throughout the State of California, including this district; and Class Members entered into agreements to purchase Defendants' products while in Sonoma and Alameda County.

## PARTIES

18.     Plaintiff Romulo Torres is a resident of Sonoma County, California. Plaintiff purchased Feel Free from multiple 7-Eleven stores, including stores in Sonoma and Berkeley, California. Plaintiff purchased Feel Free in reliance on misleading advertisements by Botanic Tonics characterizing the product as a non-addictive, "safe," and "healthy" alternative to alcohol for individuals like him who chose sobriety. Plaintiff suffered side effects of his use of Feel Free, including addiction, withdrawal, and symptoms associated with opioids and stimulants.

19.     Defendant Botanic Tonics, LLC is a Delaware corporation with its principal place of business at 740 Kingman Avenue, Santa Monica, California 90402. Botanic Tonics is the manufacturer of Feel Free Wellness Tonic, and markets and sells its product in California. Botanic Tonics manufactures over 700,000 bottles of the product per month.

20.     Defendant 7-Eleven is a Texas corporation with its principal place of business at 3200 Hackberry Road, Irving, Texas 75063. 7-Eleven entered into an agreement with Botanic Tonics to include Botanic Tonics on its preferred vendor list, ensuring that 7-Eleven franchise stores and corporate stores within California would stock Feel Free and sell to California residents. Plaintiff purchased Feel Free from multiple 7-Eleven stores in California, including one in Alameda County.

## CLASS ACTION ALLEGATIONS

Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

All persons who purchased the product "Feel Free" in California, anytime from March 28, 2019 to the present.

Excluded from this class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and affiliated companies; class counsel and their employees; and judicial officers and their immediate families as court staff assigned to his case.

The class is further divided into the following subclass:

**7-Eleven Subclass**: All Class Members who purchased Feel Free from a 7-Eleven store.

21.    The members of the Class are so numerous that joinder of all members would be impracticable. The Class incudes thousands of individuals in California

22.    There are questions of law and fact common to the members of the Classes that predominate over any questions affecting only individual members, including, without limitation:

- Whether the advertising for Feel Free was misleading, fraudulent, deceptive, unfair, or unconscionable;
- Whether Defendants targeted individuals with a history of addiction;
- Whether the targeting of individuals with a history of addiction in the marketing or sale of Feel Free was misleading, fraudulent, deceptive, unfair, or unconscionable;
- Whether Defendants have been unjustly enriched through the false, misleading and deceptive advertising of Feel Free;
- Whether Feel Free was in merchantable condition, defective, and/or possessed the basic fitness for ordinary use when sold;
- The amount of damages owed the Class;
- The appropriate measure of disgorgement; and
- The type and form of injunctive relief.

23.    Plaintiff brings claims that are typical of the claims of the members of the Class and arise out a common course of conduct. Plaintiff and Class Members were damaged by the same wrongful conduct—Defendants' scheme to engage in fraudulent and unfair business practices regarding he marketing and sale of Feel Free.

24.    Plaintiff will fairly and adequately protect the interests of all members of the Classes and has retained attorneys experienced in class action and complex litigation. Plaintiff has no interests antagonistic to those of the Classes and is not subject to any unique defenses.

25.    A class action is superior to all other available methods for the fair and efficient adjudication

of this controversy for, inter alia, the following reasons:

- The Classes are readily definable;

- A class action will eliminate the possibility of repetitious litigation;

- It is economically impractical for any or all of the members of the Class to prosecute individual actions; and

- A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

26.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Romulo Torres Battled Addiction and Won, Sustaining Long-Term Sobriety**

27.     For years, Plaintiff battled with alcoholism. After a hospitalization in 2011, he worked to attain sobriety. For the next three years he achieved periods of sobriety until, in 2014, he entered a rehabilitation facility.

28.     For eight months, Plaintiff lived in a sober living environment at the facility, ultimately achieving lasting sobriety.

29.     Over the next several years Plaintiff continued his recovery, building his career and family. All that changed when he received a targeted advertisement on social media for a product called Feel Free Wellness Tonic.

**B.     Botanic Tonics Misleadingly Advertised Feel Free as a Safe, Healthy, and Sober Alternative to Alcohol**

30.     Botanic Tonics is a wellness brand whose primary product is Feel Free Wellness Tonic. Botanic Tonics markets Feel Free as a "feel good wellness tonic," describing it as "a kava drink made with kava and other ancient plants known to help with relaxation, productivity, focus and so much more!" Feel Free is marketed as a safe, healthy, and sober alternative to alcohol.



31.     Botanic Tonics markets Feel Free as "a great alternative to alcohol, energy drinks, and synthetic focus enhancers" and directs users to "[t]ake feel free when you want to feel more social, need a clean boost of energy, or need to lock in and focus."

32.     With regards to Feel Free's ingredients, Botanic Tonics states in its marketing materials that Feel Free is a "kava drink" made with kava and "other ancient plants." Kava (*Piper methysticum)* is a plant from the South Pacific that acts as a moderate depressant. It is traditionally consumed like a tea—mixed with water—and has been deemed by the World Health Organization to present an "acceptably low level of risk" when consumed in this form.



33.     Botanic Tonic misleadingly omits in its advertising and marketing that Feel Free's primary

ingredient is not kava, but kratom, a psychoactive substance with highly addictive properties that has been characterized by the FDA as an opioid and been classified by the DEA as a Drug and Chemical of Concern.

34.    Feel Free is marketed as "absolutely" safe with no side effects. Botanic Tonics states in marketing materials:

> Kava has been enjoyed by cultures throughout the South Pacific for generations. They've used it as a social drink and in all kinds of rituals—including celebrating new leaders, weddings, and cultural holidays. Because kava has been incorporated into drinks for so long, its history is relatively well documented. That includes its safety. When you enjoy a kava drink, **you don't have to worry about side effects**. The same can be said of Botanic Tonics' kava drink, the Feel Free Wellness Tonic. It's made with kava and other ancient plants, so when you enjoy it as a shot, you can just kick back and relax.

35.    Contrary to this statement, Feel Free contains high concentrations of kratom, which has well-documented side effects that mirror those of opioids and stimulants, including nausea, sweating, itching, dry mouth, constipation, increased urination, respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, coma, and even death.

36.    Feel Free is marketed as non-addictive, creating no more dependence than sugar or caffeine. Botanic Tonics states in marketing materials:

> As an ingredient in tea or Botanic Tonics' Feel Free Wellness Tonic, kava isn't addictive. But it's important to remember that anything that helps you feel good can influence some level of dependence. **Think sugar or caffeine.** Many of us enjoy these substances every day. You may enjoy the sweetness that sugar adds to your favorite drinks or desserts. You may love the way caffeine wakes you up in the morning. And you may find that you love how Feel Free Wellness Tonic makes you feel at the end of a long week. That feeling of bliss and relaxation can be a powerful one! Just like sugar or caffeine, you can get the most out of Botanic Tonics' Feel Free Wellness Tonic when you enjoy it in moderation.

37.    These materials misleadingly omitted the effects of kratom. In reality, kratom is a highly addictive substance that activates the same opioid receptors as narcotics like morphine. Whereas the marketing materials describe psychological dependence on sugar and caffeine, Feel Free induces physiological, or chemical, dependence due to its high amounts of kratom.

38.    Feel Free is also marketed as being "manufactured in an FDA-regulated facility." This is

misleading, as it creates the impression that the product is FDA regulated or approved. In fact, not only has Feel Free not been evaluated by the FDA, but the FDA has strongly maintained that Feel Free's active ingredient, kratom, is an opioid-like drug that poses a danger to public health.

39.     Botanic Tonics also marketed as a means to boost fitness. Specifically, Botanic Tonics stated in marketing materials:

> Botanic Tonics: Where Kava and Athletics Meet. Kava and athletics go hand-in-hand. The connection might not seem obvious at first, but kava can impact fitness and post-activity well-being. It's due in part to the properties of kava that help promote feelings of calmness and relaxation. These sensations can be both mental and physical. In other words, just as drinking kava after a busy day can help you unwind, the right serving size (half a bottle) can help your muscles feel more relaxed after activity. **This is why people rely on Botanic Tonics' Feel Free Wellness Tonic as part of their overall fitness or sports routine.** It just makes sense—and this is how it can fit into your daily fitness routine.

40.     Botanic Tonics partnered with colleges to advertise as the "official tonic" of their sports teams. Feel Free is the "official tonic" of Florida State University, the University of Southern California, and the University of Texas athletics.

41.     Botanic Tonics paid influencers to promote Feel Free as a sober, safe, and healthy alcohol alternative in various media, including Instagram, TikTok, and on podcasts. In various media, Feel Free was promoted as a means to quit alcohol.

42.     Botanic Tonics also hired hundreds of "brand ambassadors" to spread positive reviews about the product. Brand ambassadors were tasked with sharing their experiences with Botanic Tonic on social media, the Botanic Tonics website, and in person with friends and family. They were directed to emphasize that Feel Free was a kava drink and that its effects were the benefits of kava. They were told:

> The Feel Free Wellness Tonic is made with kava kava and other ancient plants. […] [The Ambassador Program] is all about sharing your love of kava with the world and getting rewarded at the same time. […] Whether you're sharing your kava experience on social media, writing up a quick review on the Botanic Tonics website, or just talking about it with some friends, sharing your love for kava is a big deal. Here's a prime example: If you picked up some kava for anxiety, sharing your experience can serve as inspiration to others. There are so many people looking for ways to alleviate the tense, uncomfortable feelings that come with anxiousness. Posting about your experience on social media about how Feel Free helped you can benefit others who are in search of relief. […] To take that further,

don't hesitate to share your kava story. Why do you drink kava? […] We all have our kava stories, some short and some long, and they're all worth telling!

43.   Brand ambassadors were given a referral code to share with family and friends earned a 40 percent discount on a purchase of Botanic Tonics each time someone used their referral code.

**C.   Botanic Tonics Entered College Campuses to Push Feel Free to a Particularly Vulnerable Population of College Students**

44.   Botanic Tonics specifically targeted college students as a means to grow its direct-to-consumer base. Specifically, Botanic Tonics was marketed to college students on campuses with the intent for those students to bring the product back home during break—to markets without convenience stores or other retail means of purchasing Feel Free.

45.   Botanic Tonics hired people to stand in the middle of college campuses—in libraries, dining halls, and quads—and hand out Feel Free for free to students. Feel Free's founder stated that these individuals were trained to "preach the benefits" of Feel Free to college students, telling students that Feel Free was the solution to their stress.

46.   For example, during finals season at the University of Southern California ("USC"), Botanic Tonics served Feel Free over ice to students at USC Village, a student residential hub, and the Tudor Campus Center, a communal location where students hang out between classes and come to eat. Botanic Tonics served these drinks for free and told the stressed-out students that Feel Free would "fix all [their] stress."

47.   Botanic Tonics also partnered with fraternities and sororities and hired people to promote the product at college parties.

48.   As a part of the on-campus campaign, Botanic Tonic hired hundreds of college students to promote and spread the product.

49.   As a result of Botanic Tonic's on-campus campaigns, college students brought the product home and introduced it to family and friends. Botanic Tonics saw a corresponding rise in direct-to-consumer sales and, after interviewing and surveying college purchasers, concluded that this rise was directly related to the sale of Feel Free on college campuses.

50.   Botanic Tonics partnered directly with three schools—Florida State University, University of Texas, and USC—as a means to grow its consumer base to vulnerable college students and as a

means to use their families and friends to grow its direct-to-consumer base. Botanic Tonics plans to add another 76 colleges to its partnership program by next year.

**D.    Botanic Tonics Used Targeted Social Media Advertising to Market to a Particularly Vulnerable Population of Individuals Struggling with Sobriety**

51.    Botanic Tonics engaged in an ad campaign targeted to people searching for an alcohol alternative and included a highly vulnerable population of individuals, like Plaintiff, with a history of substance abuse, addiction, or alcoholism who struggled with sobriety. Botanic Tonics utilized social media algorithms to search out and specifically target these individuals.

52.    Botanic Tonics posted over a *thousand* advertisements on Instagram, repeatedly using the hashtag #alcoholalternative. These advertisements included the following statements representing Feel Free as safe and sober alcohol alternative:

- "Life without alcohol allows you to feel free."

- "So you don't drink alcohol? Great! Balance is key for a healthy life. Drinking botanic tonics helps you find focus and balance."

- "Don't get hung up on hangovers. Botanic tonics will be your favorite alternative party drink."

- "All the buzz without the booze…what emoji best describes this state of being?"

- "So you don't drink alcohol? Great! Crack open a cold one with your wellness community and channel your inner crystal energy."

- "A new way to cheers - anytime, anywhere."

- "Daily reminder to go on a road trip with your favorite humans. Don't forget to bring your favorite #alcoholalternative for the road. Sip it anytime of day. ✨ Tag your fav road trip buddy to get a couple feel free shots for your trip."

- "All the buzz without the booze... have you tried it yet? ✨✨✨"

- "Buzz without the booze!"

- "Mother's little helper 😍 Tag a mom that could use *feel free* in her life ✨"

- "Sober curious? Just a couple sips of this will make you feel energized and focused ✨✨"

- "Our tonic is plant-based alternative to all of those habits you need to replace 🌱 ✨ who else agrees?"

- "*feel free* to take it along for the ride. Unlike alcohol, FEEL enhanced, not inebriated ✨"

- "Not your average alcohol free elixir. *feel free* was made to be functional and facilitate states of bliss, flow, vitality and focus. The kava + other ancient plants will give you the boost you need but [minus the hangxiety] ⚡"

- "You don't drink alcohol? Well, nice to meet you. ✨ #feelfree"
- "Cheers to not drinking this holiday season ✨"
- "You have a choice - ditch the alcohol this holiday season. ✨"
- "You have a choice. You don't have to get blasted on the holidays."
- "New year, new me. Ditch the alcohol this year."
- "Sober curious? Why not mix it up with a euphoric alternative to alcohol tonight. Best way to start of the new year. You'll be feeling free and elevated ✨"
- "Alcohol got you down? 🥴 cheers to feeling great and not drinking ✨ Use code: DRY40"

53.   Botanic Tonic also used popular internet memes to target individuals who were seeking sobriety or in recovery.





**E.     Plaintiff Fell Victim to Targeted Social Media Advertisements for Feel Free**

54.   In 2020, Plaintiff began to receive targeted advertisements for Feel Free on Instagram,

advertising the product as a sober, healthy, and safe alternative to alcohol. These advertisements omitted any mention of kratom or Feel Free's potential side effects, and included the following representations:

- Feel Free provides a safe and sober buzz for individuals working on sobriety by using ancient plants to enhance serotonin production in the brain; and
- Feel Free is used for productivity enhancement or as a healthy alcohol alternative and is the official tonic of various college athletic teams.

55.    During that holiday season, Plaintiff tried Feel Free as an alternative to alcohol, relying on the representations that the product was safe, healthy, and supported sobriety.

**F.    Feel Free Contained Concentrated Amounts of Kratom, an Addictive Substance Similar to Opioids that Can Cause Severe Detrimental Reactions, Including Addiction**

56.    Unbeknownst to Plaintiff, undisclosed by any of Botanic Tonic's extensive marketing and advertising, and undisclosed by the label on the product, Feel Free's primary ingredient was kratom. Plaintiff did not know, and could not have known, that there was more than twice the amount of kratom in Feel Free as there was kava, and that Botanic Tonics had formulated the product to magnify the effects of the kratom.

57.    Kratom (*Mitragyna speciosa*) is a tropical tree from Southeast Asia that has both opioid properties and stimulant effects. Historically, the plant was used as an opium substitute in Southeast Asia, including in Malaysia and Thailand. It has been characterized by the FDA as an opioid.

58.    In 2018, the FDA conducted a scientific analysis using 3D modeling to determine the precise effect of kratom on the human body at the molecular level. FDA scientists found that the 25 most prevalent compounds in kratom "share the most structural similarities with controlled opioid analgesics, such as morphine derivatives." The FDA further discovered that 22 of these 25 compounds activate opioid receptors in the brain. Finally, the FDA found that the strength of the bond between these compounds and the opioid receptors was strong—"comparable to scheduled opioid drugs." Based on this analysis, the FDA reached the following conclusion: "Based on the scientific information in the literature and further supported by our computational modeling and the reports of its adverse effects in humans, we feel confident in calling compounds found in kratom, opioids."

59.     The FDA has since repeated this conclusion, stating that "[k]ratom affects the same opioid receptors as morphine [and] appears to have properties that expose people who consume kratom to the risks of addiction, abuse, and dependence." The FDA has further reiterated that "evidence shows that kratom has similar effects to narcotics like opioids, and carries similar risks of abuse, addiction, and in some cases, death."

60.     Contradicting Botanic Tonics' marketing strategy of characterizing Feel Free as healthy because it is "plant-based" and created using "ancient plants," the FDA has expressly stated, as early as 2018, that "claiming that kratom is benign because it is 'just a plant' is shortsighted and dangerous. […] [A]s the scientific data and adverse event reports have clearly revealed, compounds in kratom make it so it isn't just a plant—it's an opioid."

61.     The DEA categorizes kratom as a Drug and Chemical of Concern and notes that it can induce physiological dependence by users, leading to addiction.

62.     Because of kratom's similarity to opioids and side effects, it is classified as a controlled substance in sixteen countries (including Thailand and Malaysia, its countries of origin). It is also banned in a number of states and others have pending legislation to ban it.

63.     Mild side effects of kratom include nausea, sweating, itching, dry mouth, constipation, increased urination,  agitation, and trouble sleeping. More severe side effects include respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, and coma.

64.     Naloxone, commonly known by the brand name Narcan, is used to treat opioid overdoses.

Because of the similarity between opioids and kratom, naloxone is used to treat kratom overdoses.

65.     Because kratom is known in the scientific community to be an opioid or opioid-alternative, substance abuse treatment and rehabilitation centers in California list kratom as one of the substances for which they treat patients.

**G.   Botanic Tonics Hired Experienced Operatives to Lobby Against Government Opposition to Kratom**

66.     The FDA attempted, multiple times, to classify kratom as a schedule 1 drug. However, this was ultimately stymied by pressure from Congress. This pressure was placed by kratom lobbying organizations and manufacturers, including Botanic Tonics.

67.     Botanic Tonics' founder, for his part, attributed Congress's opposition to the FDA's crackdown to the public support for kratom and the fact that "a lot of congressmen, they were actually using [kratom]." In reality, Botanic Tonics hired experienced lobbyists to put pressure on the federal government, spending tens of thousands of dollars to lobby the Senate, House of Representatives, and the FDA to ensure kratom would not be scheduled. To oversee this lobbying campaign, Botanic Tonics hired as its Head of Government Relations a former Director of Government Affairs at JUUL, the e-cigarette company. While at JUUL, this employee had successfully defeated an e-cigarette ban in multiple legislative sessions.

68.     Botanic Tonics built a government affairs team with considerable knowledge and expertise to similarly defeat any local, state, or federal opposition to kratom.

**H.   Botanic Tonics Formulate Feel Free Specifically to Enhance Kratom's Effects**

69.     Botanic Tonics manipulated the formula for Feel Free to ensure that mitragynine, one of the primary compounds responsible for kratom's opioid effects, would cross the blood-brain barrier rapidly after consuming the drink. As a result, the kratom in Feel Free begins to take effect moments after ingesting the drink, leading to a faster, stronger, and longer-lasting high.

70.     Botanic Tonics experimented with several different formulations before achieving its desired result, which it then marketed and sold to the public.

71.     Botanic Tonics believed that a concentrated dose of Feel Free was preferable to a larger volume drink for multiple reasons—all relating to maximizing profit. First, a concentrated, shelf-

stable 2-ounce drink would create the largest profit margins because it is easier to transport and store than a larger drink with a higher percentage of water. Second, a more concentrated dose of the product results in greater effects, which results in greater dependence on the product.

**I.     Botanic Tonics Uses Independent Contractors to Keep its Margins Low and Increase Profits**

72.     Botanic Tonics relies on retail store sales for the majority of its revenue—specifically convenience stores.

73.     Botanic Tonics has cultivated a network of over a hundred direct store distributors—independent contractors who deliver to, merchandize, and liaise between specific stores across the country. These DSDs receive a percentage of sales from the particular stores on their route. As a result of this model, Botanic Tonic's profit margins are higher for retail sales than direct to consumer sales, for which Botanic must pay the cost of shipping.

74.     Botanic Tonics plans to have 250 DSDs across the country by the end of 2023.

75.     Botanic Tonics makes the same misrepresentations and misleading statements to its DSDs as it does to its consumers.

**J.     7-Eleven Entered into an Agreement with Botanic Tonics Under Which 7-Eleven Stores in California Would Sell Feel Free**

76.     Induced by Botanic Tonic's targeted advertising campaign, Plaintiff discovered that a 7-Eleven store near him stocked Feel Free. In fact, many 7-Eleven stores in California stock Feel Free.

77.     A significant number of 7-Eleven stores in California operate as franchises. 7-Eleven negotiates with vendors for optimum pricing and assembles a list of recommended vendors. Each 7-Eleven franchise must purchase 85 percent of their products from the recommended vendors.

78.     7-Eleven negotiated with Botanic Tonics to place Botanic Tonics on the recommended vendors list and ensure that there was a high likelihood that 7-Eleven stores would stock and sell Feel Free.

79.     In order to facilitate this arrangement, Botanic Tonics hired a national account manager who had previously worked for 7-Eleven. While working for 7-Eleven, Botanic Tonics' national account manager had managed all aspects of 7-Eleven corporate and franchise relationships;

facilitated partnerships between clients and 7-Eleven corporate and franchise groups; acted as a liaison between clients and key 7-Eleven decisionmakers; created joint business plans and sales strategies with 7-Eleven franchise groups; coordinated introduction of new products and expansion of existing product lines; and assisted in 7-Eleven's purchasing decisions, negotiations regarding sales and marketing of the products in 7-Eleven stores, and driven in-store product marketing.

80.     Botanic Tonics used this insider knowledge of 7-Eleven's operations and key players to reach a partnership with 7-Eleven to sell Feel Free in 7-Eleven stores.

81.     Indeed, because of Botanic Tonics' placement on 7-Eleven's recommended vendors list, 7-Eleven stores all across California stocked and sold Feel Free.

82.     On information and belief, 7-Eleven and Botanic Tonics' relationship constituted a joint venture to distribute Feel Free in 7-Eleven stores in California. This joint venture was memorialized through written agreements and implied through the conduct of the Defendants.

- 7-Eleven and Botanic Tonics combined their skill and knowledge of "C-Store operations" or convenience store operations to optimize display and product placement and in-store marketing for Feel Free. To accomplish this, Botanic Tonics' National Account Manager directly coordinated between 7-Eleven corporate teams and franchisee stores.

- 7-Eleven and Botanic Tonics each had an ownership interest in the venture to sell Feel Free to 7-Eleven customers. This interest was memorialized in agreements negotiated and entered into between the parties, including, *inter alia*, the agreement to place Botanic Tonics on 7-Eleven's recommended vendors list.

- 7-Eleven and Botanic Tonics had joint control over the venture, even though certain aspects of the marketing, placement, and sale of Feel Free in 7-Eleven stores were delegated to one entity.

- 7-Eleven and Botanic Tonics agreed to share the profits and losses of their venture.

**K.     7-Eleven Ratified Botanic Tonic's Misleading Statements Regarding Feel Free and Failed to Warn About Feel Free's Detrimental Side Effects**

83.     On information and belief, 7-Eleven directed or provided guidance to its stores to place Feel Free in stands at the checkout counter.

84.     Studies have shown that this type of point-of-sale placement significantly increases the likelihood that a customer will purchase a good they have never used before. On information and belief, 7-Eleven directed or provided guidance to its stores to place Feel Free at the checkout counter to induce customers into purchasing the product.

85.     7-Eleven stores used posters, displays, and signs to repeat the misleading statements made by Botanic Tonics to customers—specifically that Feel Free was a safe, healthy, and sober alternative to alcohol that was made with kava and "other ancient plants."



**L.     Although Defendants Should Have Known of Kratom's Detrimental Side Effects, They Did Not Warn Consumers**

86.     Botanic Tonics did not warn consumers of the potential detrimental and severe side effects of Feel Free, even though it should have known that Feel Free had the potential for such effects.

Indeed, Botanic Tonics took care to avoid mentioning kratom by name in all of its advertising and marketing precisely because it knew that mentioning the substance could lead consumers to research and discover the scientific consensus on kratom's opioid nature. Moreover, Botanic Tonics specifically failed to disclose the amount or concentration of kratom in Feel Free or that the product was manipulated to magnify the effects of the kratom.

87.     7-Eleven also failed to warn its customers of the potential detrimental and severe side effects of Feel Free, even though it should have known—based on scientific consensus at the time—that the kratom in Feel Free had a potential for such effects.

**M.     Plaintiff Purchased Feel Free from 7-Eleven Based on Misleading Advertising**

88.     Induced by Botanic Tonic's misleading advertising, Plaintiff found that a nearby 7-Eleven stocked Feel Free. He visited the store, saw the product prominently displayed with the same representations that had been made in the targeted advertisements to him, and purchased it.

89.     Plaintiff looked at the bottle before purchasing the product but did not see any disclosures or warnings about Feel Free's potential for significant side effects, including addiction. Nor were there any disclosures about the concentration of kratom in the product or the fact that Botanic Tonics had formulated the product to magnify the effects of kratom.

**N.     Plaintiff Suffered Significant Detrimental Reactions to Feel Free, Destroying His Sobriety and Affecting His Family and Job**

90.     After trying Feel Free during the holidays, Plaintiff quickly developed physiological dependence on the product. As his body adapted to Feel Free, Plaintiff was forced to buy and consume more of the product to feel normal and avoid the symptoms of withdrawal. By March of 2021, he was spending $3000 per month on Feel Free and drinking ten per day. He could not sleep or function without Feel Free, and would experience strong withdrawal symptoms, including shakes and delirium.

91.     For the next several months, Plaintiff attempted, unsuccessfully, to wean himself off Feel Free. Each time he would suffer intense withdrawals and relapse. Finally, he turned to alcohol to help manage his withdrawals, his decade in recovery undermined by a product misleadingly marketed to support that very recovery.

92.     In April 2022, Plaintiff was admitted to the emergency room presenting with symptoms of alcohol poisoning. His blood alcohol content was zero. All he had taken was Feel Free.

93.     In September of 2022 Plaintiff was again admitted to the hospital under the effects of Feel Free, this time experiencing psychosis and delirium.

94.     After this experience, Plaintiff entered a medical detox facility that treated patients for substance abuse of alcohol, opioids, and kratom. He was placed on medication for opioid addiction and spent ten days experience severe withdrawals, including terror, sweats, tremors, delusions, nightmares, and the feeling he was dying.

95.     Following detox, Plaintiff entered rehabilitation. He had been forced to quit his job, his behavior under the influence of Feel Free had damaged his relationship with his girlfriend, and he was back at ground zero in his recovery.

**O.     Class Members Similarly Suffered Detrimental Reactions to Feel Free**

96.     Plaintiff's experience is unfortunately not unique. Class members describe being subject to similar advertisements, experiencing similar symptoms, and experiencing major setbacks to sobriety as a result of this product misleadingly marketed for sobriety.

97.     Feel Free users who have experienced addiction and other detrimental side effects have posted on social media platforms like TikTok and YouTube, describing their negative experiences with the product. The comments on these videos are replete with countless examples of individuals who were subject to similar targeted advertisements as Plaintiff and who suffered similar detrimental side effects, including:

- "If only people like you were sharing this stuff a year ago. I'm on my 3rd day without it and it hasn't been much different then my alcohol with drawls, cold sweats, anxiety, I can't get out of bed. I couldn't quit because I literally couldn't work without them. This is the most addictive and dangerous thing I have ever touched. The company has robotic responses, they're selling this to anyone and everyone. Not keeping in mind peoples history with addiction. They are selling it as it is safe and beneficial for everyone."

- "I searched this because I had been progressively taking these more and more frequently to the point that I'm at about 2-3 a day and having been feeling the flu like symptoms you describe."

- "I was actually doing work with them for a while. I really enjoyed the product as it was relaxing my muscles and made me feel really chill. But it made me also feel very weak and tired. I'm not eating good anymore. I tried to get off of it but I kept feeling like I needed it.

If I didn't have it I would get cranky. This video has helped me. It feels good to know that I'm not the only one that felt off about it. I stopped working with them and I will begin my journey to quitting this drink today. The longest I went was 3 days and then I was feeling sick. Body aches and pain in my bones. It felt like I needed it. It's terrible as you said."

- "Had a similar experience in regards to getting bombarded with the ads […] and then getting creeped out because all comments were turned off. Dug deeper and found all the Reddit stuff. People taking up to 8 bottles a day!!"

- "My husband and I started using FF because of Ben Greenfield's health podcast to avoid wine with one FF a couple of nights a week, which turned into two, three, then four (me), to six (husband) A DAY. I've been prescribed oxycodone and percocet for surgeries and births - barely took any, no addiction at all - I tried cocaine wayyy back in the day - no addiction at all - and I was shocked at myself with FF. A once healthy/fit, good looking woman turned addict (??) w wrinkly, crepey, scaly skin, styes in the eyes, giant bags, dark circles, 20 pound weight loss, vomiting, lazy, careless, poor memory, blurry vision, avoidance of family & friends..I could go on. I recently stopped (praise Jesus) and now know what it's like to have a full week of PAINFUL withdrawals in bed."

- "I'm going through withdrawals from this product now and it's absolutely horrific. I've never done hard drugs but I can imagine it's similar to this. My skin on my entire body is flaking off, lips chapped and cracking, horrible anxiety, can't sleep because of restless leg syndrome, the despair and hopelessness feeling is unexplainable. *WARNING: DO NOT GET TRICKED INTO THIS PRODUCT"

- "This product became a HUGE issue for me. I got up to 6 a day!! Because I felt like crap if i didn't take it."

- "I have 12 a day. I slam three shortly after breakfast. […] I'm like an alcoholic, I'm just wasted all days I've lost 49 lbs in the last couple of months just from lack of eating and vomiting. I don't eat so I feel the effects more/don't really feel like it. Just drunk all day with these. It's crazy!"

- "This stuff is HIGHLY addictive because of how well it works. It's a drug not some harmless tea. It works on the the mu-opioid receptors and basically gives you a similar if not identical high as hydrocodone, oxy, opioids in general... If you've never experiences an opiate, take it from a professional opiate addict, do not try it if you have depression, anxiety, and/or an addictive personality. The withdrawals I experienced was on par as getting off roxy."

- "This stuff is extremely addictive. Do not purchase this product. The withdrawal symptoms feel like a bad flu and it dries your skin to the point that your entire body will be very itchy. At first it feels great but as you develop tolerance to the tonic, you will drink more and more. I wish I would have never tried it. Do yourself a huge favor stop ASAP. It is not worth the pain and anguish. Trust me."

- "You're right, these are very addictive, I've binged these for 2-3 months at times, spending thousands of dollars a month on these, up to 4-5 per day. One of the most addictive substances I've ever tried."

- "It's so sketchy that they don't have the ingredients listed anywhere until you look at the faqs on the site. They say botanic tonic featuring kava and "other herbs" that's so messed

up. People could accidentally get addicted to kratom from it or have no idea what they are getting into."

- "Yup these are very addictive and hard to get off of. Been trying to stop for weeks now and haven't been able to get through the withdrawals yet. If you dont want to risk having to rely on a substance just to get through the day without feeling like shit then I highly suggest that you stay away from these things."

98.    Additionally, multiple threads on Reddit have been dedicated to the addictive qualities of Feel Free, including on the r/sober, r/addiction, r/kava, and r/dryalcoholics subreddits.



99.    In fact, there is an entire community on Reddit, r/QuittingFeelFree, dedicated to individuals who are experiencing addiction to FeelFree and attempting to stop using.

## FIRST CAUSE OF ACTION
Unfair and Fraudulent Business Acts and Practices
(Bus. & Prof. Code, §§ 17200, *et seq.*)
**Against Botanic Tonics and 7-Eleven**

100.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

101.    Plaintiff brings this claim against all Defendants. Plaintiffs bring this claim against Botanic Tonics for unfair and fraudulent conduct, and against 7-Eleven for unfair conduct.

102.    Business & Professions Code sections 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

103.    Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and

focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

104.    7-Eleven was a co-conspirator in Botanic Tonics' scheme. Through their joint venture, 7-Eleven significantly broadened the scope of Botanic Tonics' advertising reach by opening up the entire United States as a potential market for Feel Free.

105.    Botanic Tonics' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free, and 7-Eleven repeated this information to its franchise stores and, subsequently, consumers.

106.    Botanic Tonic's advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom. 7-Eleven also failed to disclose this information.

107.    The labels on Feel Free failed to disclose that it posed significant risks of substantial physical injury resulting from consumption of Feel Free.

108.    Botanic Tonics' conduct was unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

109.    7-Eleven's conduct was unfair and unconscionable in that it broadened the reach of Botanic Tonics' advertising and opened up the entire United States as a market for Feel Free; 7-Eleven

engaged in this venture without sufficiently investigating Feel Free or its effects on consumers; and 7-Eleven failed to take steps to warn consumers even after consumers made repeated complaints about the effects of Feel Free. 7-Eleven's motivation for engaging in this scheme was to increase its profits. 7-Eleven's conduct caused substantial harm that greatly outweighs the utility from its conduct.

110.    Botanic Tonics' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiff. Reasonable consumers, including Plaintiff, would have found it material to their purchasing decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiff's and Class Members' decisions to purchase Feel Free.

111.    Botanic Tonics' owed Plaintiffs and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

112.    Defendants' scheme actually and proximately caused Plaintiff and Class Members to lose money. Without Defendants' unfair and fraudulent conduct, Plaintiff and Class Members would not have purchased Feel Free or would have paid less for it. Defendants' misrepresentations and omissions induced Plaintiff and Class Members to purchase Feel Free they would otherwise not have. Plaintiff, on behalf of himself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, and all other relief allowable under the law.

**SECOND CAUSE OF ACTION**
False Advertising
(Bus. & Prof. Code, §§ 17500, *et seq.*)
**Against Botanic Tonics Only**

113.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth

in detail herein.

114.    Plaintiff brings this cause of action against Botanic Tonics only.

115.    Business and Professions Code sections 17500, *et seq.* prohibit the publication of any statement concerning the sale of goods that is untrue or misleading. Defendants' conduct, as described above, constitutes the publication of untrue and misleading statements concerning the sale of Feel Free.

116.    Botanic Tonics' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free, and 7-Eleven repeated this information to its franchise stores and, subsequently, consumers.

117.    Botanic Tonic's advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom. 7-Eleven also failed to disclose this information.

118.    The labels on Feel Free failed to disclose that it posed significant risks of substantial physical injury resulting from consumption of Feel Free.

119.    Botanic Tonics' conduct was unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

120.    Botanic Tonics' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiff. Reasonable consumers, including Plaintiff, would have found it material to their purchasing

decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiff's and Class Members' decisions to purchase Feel Free.

121.   Botanic Tonics' owed Plaintiffs and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

122.   Botanic Tonic's conduct actually and proximately caused Plaintiff and Class Members to lose money. Without Botanic Tonics' unfair and fraudulent conduct, Plaintiff and Class Members would not have purchased Feel Free or would have paid less for it. The misrepresentations and omissions induced Plaintiff and Class Members to purchase Feel Free they would otherwise not have. Plaintiff, on behalf of himself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, and all other relief allowable under the law.

**THIRD CAUSE OF ACTION**
Common Law Fraud
**Against Botanic Tonics Only**

123.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

124.   Plaintiff brings this cause of action against Botanic Tonics only.

125.   Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

126.     Botanic Tonics' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free, and 7-Eleven repeated this information to its franchise stores and, subsequently, consumers.

127.     Botanic Tonic's advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom.

128.     The labels on Feel Free failed to disclose that it posed significant risks of substantial physical injury resulting from consumption of Feel Free.

129.     Botanic Tonics' conduct was unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

130.     Botanic Tonics' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiff. Reasonable consumers, including Plaintiff, would have found it material to their purchasing decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiff's and Class Members' decisions to purchase Feel Free.

131.     Botanic Tonics owed Plaintiff and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for

consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

132.   Botanic Tonics knew or should have known that their misrepresentations and omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

133.   Botanic Tonics' conduct actually and proximately caused Plaintiff and Class Members to lose money. Without Defendants' unfair and fraudulent conduct, Plaintiff and Class Members would not have purchased Feel Free or would have paid less for it. The misrepresentations and omissions induced Plaintiff and Class Members to purchase Feel Free they would otherwise not have. Plaintiff, on behalf of himself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, punitive damages, and all other relief allowable under the law.

**FOURTH CAUSE OF ACTION**
Breach of Implied Warranty of Merchantability
**Against Botanic Tonics and 7-Eleven**

134.   Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

135.   Plaintiff brings this cause of action against Botanic Tonics on behalf of the Class.

136.   Plaintiff brings this cause of action against 7-Eleven on behalf of the 7-Eleven Subclass.

137.   Defendants were at all times merchants with respect to Feel Free, which was sold to Plaintiffs and the Class, and were in the business of selling such products.

138.   Each bottle of Feel Free comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it will be used. Defendants breached the implied warranty of merchantability because Feel Free was not in merchantable condition when sold, was defective when sold, and did not possess even the most basic degree of fitness for ordinary use.

139.   The ordinary intended purpose of Feel Free, and the purpose for which it was marketed, promoted, and sold, was to serve a safe, healthy, and sober alternative to alcohol; and to serve as a kava drink to induce relaxation and focus. Feel Free was not fit for that use, or any other use, because it (1) was not a kava drink but actually contained high concentrations of kratom as a

primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Due to these and other features, Feel Free is not fit for its ordinary, intended use as a wellness tonic.

140.    Plaintiff and Class Members have had sufficient direct dealings with either Botanic Tonics (via its website) or its agents (including retail sellers) to establish privity of contract between Botanic Tonics and Plaintiffs and Class Members.

141.    Plaintiff and Members of the 7-Eleven Subclass have had sufficient dealings with 7-Eleven (through its corporate stores) or its actual or ostensible agents (such as franchise stores) to establish privity of contract between 7-Eleven and Plaintiffs and Class Members.

142.    Plaintiff and Class Members were third-party beneficiaries of Botanic Tonics' agreements with distributors and sellers for the distribution and sale of Feel Free to consumers. Plaintiffs and Class Members were the intended beneficiaries of Botanic Tonics' implied warranties.

143.    Plaintiff and 7-Eleven Subclass Members were third-party beneficiaries of 7-Eleven's agreements with distributors and sellers for the distribution and sale of Feel Free to consumers. Plaintiffs and Subclass Members were the intended beneficiaries of 7-Eleven's implied warranties.

144.    Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach of their implied warranties of merchantability. Had Plaintiff and Class Members been aware of the unmerchantable condition of Feel Free, they would not have purchased Feel Free, or would have paid less for it.

145.    Plaintiff seeks damages in an amount to be proven at trial, as well as any other relief the Court may deem proper.

146.    Defendants were provided notice of these issues by numerous complaints made by consumers directly to Defendants or through their agents within a reasonable amount of time after they discovered that Feel Free was defective and unmerchantable.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### Against Botanic Tonics and 7-Eleven

147.    Plaintiff hereby realleges and incorporates by reference all paragraphs above as if set forth in detail herein.

148.    Plaintiff brings this cause of action against both Defendants.

149.    Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

150.    7-Eleven was a co-conspirator in Botanic Tonics' scheme. Through their joint venture, 7-Eleven significantly broadened the scope of Botanic Tonics' advertising reach and opened up the entire United States as a potential market for Feel Free.

151.    Defendants were unjustly enriched as a result of their wrongful conduct, uincluding through the false and misleading advertisements and omissions that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free.

152.    7-Eleven requested and received a measurable benefit at the expense of Plaintiff and the Class Members in the form of payments from 7-Eleven stores, which monies were gained by the stores in payment for Feel Free.

153.    Botanic tonics requested and received a measurable benefit at the expense of Plaintiff and Class Members in the form of payment for Feel Free.

154.    Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiff conferred onto the Defendants at Plaintiff's detriment.

155.    There is not justification for Defendants' enrichment from wrongful conduct would be inequitable, unconscionable, and unjust.

156.    Plaintiff seeks disgorgement and restitution of benefits unjustly retained by Defendants.

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays for judgment against Defendants as follows:

A.      An order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.      For actual and compensatory damages according to proof pursuant to all applicable laws and regulations;

C.      For restitution and disgorgement to the extent permitted by applicable law;

D.      For an order enjoining Defendants from continuing to engage in the conduct described herein;

E.      For civil and statutory penalties available under applicable law;

F.      For pre-judgment and post-judgment interest;

G.      For punitive damages under applicable law;

H.      For an award of attorneys' fees, costs and expenses as authorized by applicable law;

I.      For such other and further relief as this Court may deem just and proper; and

J.      For trial by jury on all causes of action so triable.

Dated: March 28, 2023

Shounak S. Dharap
**ARNS DAVIS LAW**
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888