Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
**ARNS DAVIS LAW**
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Anthony L. Label, State Bar No. 205920 (al.team@veenfirm.com)
Theo Emison, State Bar No. 209183 (t.emison@veenfirm.com)
Steven A. Kronenberg, State Bar No. 215541 (al.team@veenfirm.com)
Cyrus A. Nazarian, State Bar No. 323748 (c.nazarian@veenfirm.com)
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMULO TORRES and SAM ROSENFIELD, individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>BOTANIC TONICS, LLC; 7-ELEVEN, INC.; NOWHERE PARTNERS, LLC dba EREWHON; HYDRA623 HOLDINGS, LLC; and DOES 1 to 10, inclusive,<br><br>Defendants. | No. 3:23-cv-01460-VC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Vince Chhabria<br>Date: September 21, 2023<br>Time: 10:00 a.m.<br>Dept: Courtroom 4, 17th Flr. |

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

III. PLAINTIFF HAS SUFFICIENTLY ALLEGED AN UNFAIRNESS CLAIM .............. 3

   A. Plaintiffs' Allegations Against 7-Eleven Meet the *Camacho* Test .................................. 4

      1. Plaintiffs Have Alleged Substantial Injury ..................................................... 4

      2. Plaintiffs Have Alleged That the Harm Outweighs the Benefits to Consumers .......... 5

      3. Plaintiffs Have Alleged the Harm Was Not Easily Avoidable ................................... 6

   B. Plaintiffs' Allegations Against 7-Eleven Meet the *South Bay* Test ................................ 8

   C. A Common Law Duty to Disclose Is Not a Prerequisite for an Unfairness Claim .......... 9

IV. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**CASES**

*Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394 (2006) ............................. 5, 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ............... 1, 4

*F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010) .................................................. 5, 6, 7

*Hodsdon v. Mars. Inc.*, 891 F.3d 857, 865-66 (9th Cir. 2018) ............................................... 4, 10

*Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *6 (N.D. Cal. July 21, 2014) ....................................................................................................................... 5

*In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) .................... 6

*In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *11 (N.D. Cal. Dec. 24, 2020) ..................................................................... 11

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1378 (2012) ........................................ 10

*Livingston v. Marie Callender's, Inc.*, 72 Cal. App. 4th 830, 838 (1999) .................................... 8

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.,* 9 Cal. 5th 279, 304, n. 10 (2020) ............................................................................................................................ 4, 8, 10

*Perryman v. Litton Loan Servicing, LP,* 81 F. Supp. 3d 893, 898 (N.D. Cal. 2015) .................... 9

*Regueiro v. FCA US, LLC*, No. 222CV05521SPGMAR, 2023 WL 3564761, at *8 (C.D. Cal. May 4, 2023) ............................................................................................................................ 6

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999) ............... 8

*Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 856 (N.D. Cal. 2022) ........................................... 11

**STATUTES**

Cal. Com. Code § 2314 ................................................................................................................ 7

## I. INTRODUCTION

Is it unfair for a corporation to reap profits from the sale of a substance it knows is dangerous to its consumers—blatantly ignoring its own internal policies prohibiting the sale—without any restrictions or disclosures to consumers about the danger? Under the fundamental principles of honesty and fair dealing, the answer is a resounding "yes."

Those principles are the very foundation of the "unfair" prong of California's Unfair Competition Law (UCL), which is broadly drafted to protect against "the innumerable new schemes which the fertility of man's invention would contrive" that would not otherwise be proscribed by an existing law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180-81 (1999).

Defendant 7-Eleven Inc. had control over the products sold by its franchisee stores. It knew that the product Feel Free had the potential for dangerous side effects, including addiction, withdrawal, organ damage, and severe mental illness—and knew that 7-Eleven customers had, in fact, suffered from these effects of the product. 7-Eleven also had an internal policy that prohibited the sale of Feel Free. But despite this knowledge and control, 7-Eleven allowed the sale of Feel Free in its franchisee stores without communicating the dangers to its franchisees or providing any disclosures to its consumers. It also neglected to communicate its prohibition to franchisees despite exerting a high degree of control over all aspects of franchisee operations. Reasonably assuming from 7-Eleven's silence that the product was authorized for sale, franchisees placed Feel Free by the checkout counters pursuant to product placement guidelines that 7-Eleven had provided and trained them to follow.

As a result, 7-Eleven profited—to the tune of up to 59 percent of Feel Free's sales at franchisee stores—on the backs of consumers who purchased a product that caused them horrifying and lingering adverse health effects that they could not have reasonably expected.

As discussed below, there's no question under the applicable legal tests for unfairness that 7-Eleven's conduct violated the UCL. At the pleadings stage, where all allegations must be assumed true, there is no basis to dismiss the unfairness claim against 7-Eleven.

## II. STATEMENT OF FACTS

Defendant Botanic Tonics advertised Feel Free as a "feel good wellness tonic—a safe, sober, non-addictive, and healthy alternative to alcohol—intended to relax, focus, and boost fitness. Dkt. 26, Second Amended Complaint, ¶¶ 36-40, 42-47. In reality, the drink was a cocktail of kratom, a highly addicting opioid; kava, a depressant; and "other ancient plants" of unknown amounts and concentrations. Dkt. 26, ¶¶ 38-39, 64-73. Unbeknownst to customers, Botanic Tonics formulated Feel Free to magnify the addicting effects of kratom. Dkt. 26, ¶¶ 77-79. Consumers who purchased and consumed the product suffered from dangerous and severe side effects, including addiction, withdrawal, vomiting, unconsciousness, delirium, psychosis, severe weight loss, skin conditions, and anxiety. *Id.*, ¶¶ 9-14, 115.

Plaintiff Romulo Torres, as well as members of the 7-Eleven Subclass purchased Feel Free from 7-Eleven stores where it was prominently placed at the checkout. Dkt. 26, ¶¶ 19, 24.

Defendant 7-Eleven, Inc. operates convenience stores across the United States through a franchise model whereby it enters into agreements with franchisee retailers to use its business model and distribute its product. Dkt. 26, ¶ 85. Under the agreement, 7-Eleven shares up to 59 percent of the gross profit earned by a franchisee. *Id.*

7-Eleven exerts a significant degree of control over the details of operation of its franchisee stores, including, *inter alia*, maintenance costs, advertising, accounting, inventory, and even the temperature of the individual stores. Dkt. 26, ¶¶ 86-90. Franchisees are required to strictly adhere to a 1000-page manual of standardized procedures set by 7-Eleven. *Id.*, ¶ 88. This control includes providing franchisees guidance on optimal placement of certain types of products for maximum sales. *Id.*, ¶¶ 90-91. Following this guidance, franchisee stores placed Feel Free prominently by their checkout counters. *Id.*, ¶ 91.

7-Eleven exerts its control by strictly regulating the products sold by the franchisee. Dkt. 26, ¶ 88. 7-Eleven prevents franchisees from ordering certain products through its internal inventory system and restricts the products that a franchisee can stock. *Id.*

After this lawsuit was filed, 7-Eleven sent a communication to its franchisee stores stating

that it had, at all times, maintained a policy that prohibited its franchisees from selling products containing the opioid kratom, including Feel Free. Dkt. 26, ¶ 121. 7-Eleven apparently maintained this policy because of kratom's non-FDA approved status and the potential side effects of kratom. *Id.* However, this policy was never communicated by 7-Eleven to its franchisees. Dkt. 26, ¶ 123. 7-Eleven certainly had the ability to inform and train its franchisees on this policy—as it did with all the other policies by which it exerted control over the franchisees. *Id.*, ¶ 89. Yet even after 7-Eleven customers complained about the dangerous side effects, 7-Eleven took no steps to communicate or enforce its prohibition. *Id.*, ¶ 144.

7-Eleven, despite its internal policy against the sale of Feel Free and its knowledge of the potential harmful side effects, also took no steps to ensure that its franchisees were providing disclosures or warnings to their consumers regarding the product. Dkt., ¶ 144.

By selectively choosing not to communicate or enforce its policy prohibiting the sale of kratom and Feel Free, and by choosing not to require disclosures or warnings with the sale of the product in its franchisee stores—even after 7-Eleven was put on actual notice of the product's deleterious health effects—7-Eleven reaped financial benefits in the form of profits shared between it and its franchisees that sold Feel Free. Dkt. 26, ¶ 93. These profits came at the expense of consumers, who at worst suffered significant side effects like addiction and organ failure, and at best purchased a product that was not what it was advertised to be. Dkt. 26, ¶¶ 105-110, 114-117.

### III. PLAINTIFF HAS SUFFICIENTLY ALLEGED AN UNFAIRNESS CLAIM[1]

The unfairness prong of the UCL provides an aegis unlike any other available under common law or statute, protecting consumers against business practices "not specifically proscribed by some other law" that nonetheless "violate[] the fundamental rules of honesty and

---

[1] Since unjust enrichment flows from the violation of the UCL, it will rise and fall with the UCL unfairness claim.

-3-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC

fair dealing." *Cel-Tech*, 20 Cal. 4th at 180-81 (1999). The statute was "intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." *Id.* at 181.

The California Supreme Court has recognized three independent tests for unfairness in the consumer context: (1) a test adopted from the definition of unfairness in Section 5 of the FTC (the *Camacho* test); (2) a balancing test involving the utility of the defendant's conduct weighed against the harm to the consumers (the *South Bay* test); and (3) a tethering test that requires a nexus between the conduct and an expression of public policy. *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.,* 9 Cal. 5th 279, 304, n. 10 (2020. Here, Plaintiffs contend that the allegations in the SAC meet the *Camacho* and *South Bay* tests.

Eschewing the *Camacho* and *South Bay* tests, 7-Eleven focuses its briefing on the argument that the lack of a duty to disclose necessarily disposes of claims under the unfair prong. To the contrary, the Ninth Circuit has expressly stated that "the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong." *Hodsdon v. Mars. Inc.*, 891 F.3d 857, 865-66 (9th Cir. 2018); *see* Section III.C, *infra* (discussing why a common law duty to disclose is not required to show unfairness).

Under the correct legal tests, analyzed herein, the SAC sufficiently alleges facts to meet the elements of unfairness under both the *Camacho* test and the *South Bay* test.

**A. Plaintiffs' Allegations Against 7-Eleven Meet the *Camacho* Test**

In *Camacho v. Auto. Club of S. California*, 142 Cal. App. 4th 1394 (2006), the California Court of Appeal adopted the definition of unfairness in Section 5 of the FTC as a test for unfairness under the UCL. *Id.* at 1403. The test requires: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id*.

***1. Plaintiffs Have Alleged Substantial Injury***

To establish substantial injury, plaintiffs must show they "were injured by a practice for

-4-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC

which they did not bargain." *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). An injury is sufficiently substantial if it causes "small harm to a large number of people, or if it raises a significant risk of concrete harm." *Id.*, at 1158. At the pleadings stage, "demonstrating aggregate harm on consumers is sufficient to show substantial injury." *Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *6 (N.D. Cal. July 21, 2014) (internal quotations omitted).

Here, consumers suffered economic harm in the form of overpayment for a product that was inferior to the product consumers reasonably believed they were purchasing. Dkt. 26, ¶ 147 (7-Eleven's actions induced customers to purchase Feel Free they would not otherwise have). While the harm to individual customers could have been minor (although Plaintiffs paid thousands of dollars on the product [Dkt. ¶¶ 9, 12]), aggregate harm to thousands of consumers in the Class is sufficient to meet this element. *See* Dkt. 26, ¶ 25 (Class include tens of thousands of individuals nationwide).

7-Eleven concedes that "absent 7-Eleven's alleged misconduct, plaintiff presumably would not have been able to buy Feel Free from 7-Eleven franchisees" but argues that there is no causation between its conduct and the harm because "plaintiff *would* have been able to buy Feel Free from numerous other sources." Motion at 9. 7-Eleven cannot avoid responsibility by assuming, without support, that consumers would have been harmed from some other independent source—especially where it concedes the existence of a nexus between the allegations of unfair conduct and the allegations of harm. Accordingly, the allegations in the SAC are sufficient to satisfy the element of substantial injury.

### 2. *Plaintiffs Have Alleged That the Harm Outweighs the Benefits to Consumers*

This element is "easily satisfied 'when a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition.'" *F.T.C.*, 598 F. Supp. 2d at 1116. At the pleadings stage, it is sufficient to allege that the practice provided no benefit to consumers or that the harmful

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC

consequences of the defendant's conduct outweighed its justification, motive, or reason. *See Regueiro v. FCA US, LLC*, No. 222CV05521SPGMAR, 2023 WL 3564761, at *8 (C.D. Cal. May 4, 2023) (finding allegations nearly identical to those in instant SAC sufficient to withstand a motion to dismiss); *In re Apple In-App Purchase Litig.,* 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (denying a motion to dismiss a UCL "unfair" claim where, *inter alia*, the plaintiffs contended that no benefit existed and the defendant did not claim that there was any benefit to consumers or competition).

As discussed above, the SAC alleges that 7-Eleven's practice caused clear adverse consequences to its consumers in the form of monies paid for the product that would not otherwise have been paid. Dkt. 26, ¶ 147. The SAC also alleges that this harm was not outweighed by a corresponding benefit, explicitly stating that: "7-Eleven's conduct caused substantial harm that greatly outweighs the utility from its conduct." Dkt. 26, ¶ 144. This type of express allegation has been found sufficient to meet this element of the unfairness test. *See Regueiro*, 2023 WL 3564761, at *8 (finding sufficient an allegation that "[t]he gravity of the consequences of [Defendant's] conduct ... outweighs the justification, motive or reason"). Thus, this element is met.

### 3. *Plaintiffs Have Alleged the Harm Was Not Easily Avoidable*

The final element is that the consumers could not have reasonably avoided the injury. "In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *F.T.C.*, 604 F.3d at 1158. This element can be met in three circumstances: (1) if consumers could not have reasonably anticipated the injury; (2) if they did not have the means to avoid the injury; or (3) if their free-market decisions were unjustifiably hampered by the conduct of the defendant. *Camacho* 142 Cal.App.4th at 1405.

Plaintiff Torres and class members were denied a free and informed choice in avoiding injury. First, Botanic Tonics' marketing and advertising misled them into believing that Feel Free had no side effects, was not addicting, and was safe and healthy. Dkt. 26, ¶¶ 2, 4, 8, 36,

40, 58, 60-63. In the absence of disclosures, consumers also had an implied expectation that the fact that this "wellness tonic" was sold at the checkout counter in 7-Eleven stores meant that it did not have unique and significantly dangerous health effects. *See* Cal. Com. Code § 2314 (implied warranty under California law that goods sold are fit for the ordinary purpose for which such goods are used). Indeed, despite 7-Eleven's actual knowledge of Feel Free's dangerous effects on consumers, 7-Eleven withheld this information from consumers, allowed the product to be sold in its franchisee stores, and continued to make a profit on it.

7-Eleven argues that the SAC alleges that Feel Free's risks were widely known to consumers. This is not accurate. They were widely known to consumers who had *already purchased* and consumed Feel Free because those consumers had experienced the adverse effects. *See* Dkt. 26, ¶ 115-117. But by that point, the harm was already done because the consumers had paid for the product. Moreover, by the time consumers became aware of the side effects of Feel Free, they were unable to mitigate their harm because the very side effects—for example, addition and withdrawal—biologically compelled them to continue purchasing the product. *Id*.

7-Eleven also argues that because kratom was listed as an ingredient in the product, consumers should have known it was dangerous. However, there is a distinction between public knowledge that consumers should reasonably have been expected to know, and scientific consensus about dangerous health effects that was not common knowledge but which the seller had a heightened expectation to know. The Restatement Second of Torts discusses this distinction in the context of strict products liability:

> Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human

skill and foresight should have knowledge, of the presence of the ingredient and the danger.

*Livingston v. Marie Callender's, Inc.*, 72 Cal. App. 4th 830, 838 (1999) (quoting the Restatement Second of Torts, section 402A).

In this case, it does not matter whether 7-Eleven was expected to know about the scientific consensus about kratom's dangerous effects because the SAC alleges that 7-Eleven had actual knowledge about the dangerous effects of kratom and, independently, Feel Free. Dkt. 26, ¶ 92. Moreover, the fact that the FDA had warned of kratom's dangerous effects is not sufficient to conclude that Feel Free's dangerous effects were common knowledge to consumers—especially in light of Botanic Tonics' aggressive marketing campaign to mislead consumers into believe the product was safe and non-addicting. Dkt. 26, ¶¶ 36-63. Consumers, on the other hand, could not have reasonably avoided the harm because of the misleading manner in which the product was marketed as a "feel good wellness tonic." *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.").

**B. Plaintiffs' Allegations Against 7-Eleven Meet the *South Bay* Test**

In *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999), the California Court of Appeal set forth another, independent balancing test for unfairness that "involves an examination of [the] practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Id.* at 886; *see Nationwide Biweekly*, 9 Cal. 5th at 304, n. 10 ("In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.").

This test is nearly identical in application to the *Camacho* test, with one notable exception: it does not require the consumer to show that the harm was avoidable. *See Perryman v. Litton Loan Servicing, LP,* 81 F. Supp. 3d 893, 898 (N.D. Cal. 2015) (noting that the *South Bay* test does not require a showing of avoidable harm like the *Camacho* test does).

-8-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC

For the reasons discussed in section III.A above—specifically the substantial injury balanced against the lack of benefit to consumers—the *South Bay* test for unfairness is met.

### C. A Common Law Duty to Disclose Is Not a Prerequisite for an Unfairness Claim

Ignoring these two tests, 7-Eleven spends the bulk of its Motion arguing that it did not have a common law duty to disclose information about Feel Free's dangerous side effects. At the outset, it should be noted that while Plaintiff's UCL theory of liability against Botanic Tonics and Erewhon is predicated on a duty to disclose, the claim against 7-Eleven is not. Rather, it is based on the totality of 7-Eleven's conduct in allowing the sale of Feel Free in its franchisee stores. *Compare* Dkt. 26, ¶ 144 *with* ¶ 146. Specifically, the claim against 7-Eleven is predicated on its profiting from the unrestricted sale of Feel Free in its franchisee stores despite its actual knowledge of the product's dangerous effects, its ability to restrict Feel Free's sale and warn consumers, and its uncommunicated internal policies prohibiting the sale.

Even if the lack of disclosure, on its own, were the basis for liability, there is no requirement of a common law duty to disclose. All that is required is that one of the applicable tests above is met. Yet ignoring any analysis of the *Camacho* and *South Bay* tests, 7-Eleven anchors to a flawed thesis: that "[a]s the Ninth Circuit has recognized, a defendant's 'failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical' and accordingly cannot support a claim under the 'unfair' prong." Motion at 8 (citing *Hodsdon v. Mars. Inc.*, 891 F.3d 857, 867 (9th Cir. 2018).

One need only flip to the previous two pages of the *Hodsdon* decision to see that 7-Eleven's characterization of its holding is flawed. There, the Ninth Circuit stated, quoted in full: "Unlike the other two UCL prongs, **the lack of a duty to disclose does not necessarily dispose of claims under the unfair prong**." *Hodsdon*, 891 F.3d at 865–66 (9th Cir. 2018) (emphasis added); *see also Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1378 (2012) (finding, without analyzing duty to disclose, that plaintiff stated a claim for unfairness under the *Camacho* test for Chevron's sale of gasoline without disclosing that, as a result of temperature

fluctuations, the energy content of a gallon of gasoline sold at the pump was less than a standard U.S. Petroleum Gallon).

There are three reasons for the contradiction between what 7-Eleven and Plaintiffs say this case stands for.

First, *Hodsdon* was decided under two tests for unfairness not at issue in this case: (1) the public policy-tethering test, under which Plaintiffs do not assert liability; and (2) an outdated morality-weighing test also cited in *South Bay* (but distinct from the test referred to herein as the *South Bay* test), that the California Supreme Court has repeatedly found to be "too amorphous and provide too little guidance to courts and businesses." *Nationwide Biweekly*, 9 Cal. 5th at 302 (citing *Cel-Tech*, 20 Cal. 4th at 185.). Notably, the Ninth Circuit in *Hodsdon* did not reach its decision under the *Camacho* or *South Bay* test (as enumerated herein).

Second, relatedly, *Hodsdon* was decided before the California Supreme Court defined the universe of "acceptable" tests for unfairness under California law. *Compare Hodsdon*, 891 F.3d at 866 (noting in 2018 that "the proper definition of 'unfair' conduct against consumers 'is currently in flux' among California courts") *with Nationwide Biweekly*, 9 Cal. 5th at 303-04 (recognizing, in 2020, the three tests discussed above, without resolving the split, but noting that all three could reasonably be applied by courts [as opposed to juries]). Thus, *Hodsdon* had no impetus to consider the facts of the case under the *Camacho* or *South Bay* tests.

Third, even if Plaintiffs were asserting liability under the tests analyzed in *Hodsdon*, 7-Eleven selectively quotes the Ninth Circuit's reasoning to create the impression that the lack of a duty to disclose was the sole or primary reason that the unfair prong was not met in that case. In reality, however, while the Ninth Circuit expressed doubt that the defendant's failure to disclose slave labor within the supply chain on the label of the product was itself immoral, it reached its holding for a separate reason omitted by 7-Eleven: that regardless of a duty to disclose, the information about slave labor was *nevertheless disclosed* under the Supply Chains Act, and as a result, the failure to disclose on the label was not substantially injurious.

-10-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC

*Hodsdon,* 891 F.3d at 867. Here, there is no allegation that 7-Eleven disclosed, in any form, the dangerous side effects of Feel Free to its consumers.

The other two cases cited by 7-Eleven are similarly unavailing. *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 856 (N.D. Cal. 2022) relied on *Hodsdon*, which, for the reasons discussed above, is not applicable to the *Camacho* and *South Bay* tests applied by Plaintiffs here. Moreover, the statement quoted by 7-Eleven—that an unfairness prong based primarily on a duty to disclose would "likely" be subject to dismissal—is dicta that stops short of a bright-line rule considering *Stark* denied the defendant's motion to dismiss the unfair claim. It is also irrelevant here, where it is the the totality of 7-Eleven's conduct, not the sole lack of disclosure, that is the basis for Plaintiffs' claim.

*In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *11 (N.D. Cal. Dec. 24, 2020) also relied on *Hodsdon* and, for the reasons discussed above, is inapplicable to the tests applied herein. Moreover, the sentence preceding the one cited in 7-Eleven's Motion is telling: "the failure to disclose a fact that a manufacturer does not have a duty to disclose, i**.e., a defect of which it is not aware**, does not constitute an unfair...practice." *Id.* Even if this case were applicable, the circumstances here would be distinguishable from the cited proposition of law for the sole reason that 7-Eleven had actual knowledge of Feel Free's dangerous side effects. Dkt. 26, ¶ 92.

## IV.  CONCLUSION

7-Eleven's decision to allow the sale of Feel Free while knowingly violating its own internal policies and failing to inform both franchisees and consumers stands in stark violation of the foundational principles of honesty and fair dealing encapsulated by the unfairness prong of the UCL. The SAC alleges that 7-Eleven enriched itself by garnering profits from its conduct, at the severe detriment of consumers who experienced alarming physical and mental health effects. Based on the applicable legal tests and the broadly accepted societal norms of fairness, it is clear that at this stage of the pleadings, dismissing the claim of unfair business practices

against 7-Eleven would be unfounded. Accordingly, the Court should deny 7-Eleven's Motion to Dismiss.

ARNS DAVIS LAW

By: _____
Shounak S. Dharap
Attorneys for Plaintiffs

-12-
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 7-ELEVEN INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
Case No. 3:23-cv-01460-VC