Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
**ARNS DAVIS LAW**
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Anthony L. Label, State Bar No. 205920 (al.team@veenfirm.com)
Theo Emison, State Bar No. 209183 (t.emison@veenfirm.com)
Steven A. Kronenberg, State Bar No. 215541 (al.team@veenfirm.com)
Jacqueline K. Oh, State Bar No.286089 (al.team@veenfirm.com)
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BOTANIC TONICS LITIGATION<br><br>This Document Relates to: All Actions | Case No. 3:23-cv-01460-VC<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>1. Violation of Cal. Bus. Prof. Code §§ 17200, *et seq*.<br>2. Violation of Cal. Bus. Prof. Code §§ 17500, *et seq*.<br>3. Common Law Fraud<br>4. Breach of Implied Warranty of Merchantability<br>5. Unjust Enrichment<br>6. Violation of Cal. Civ. Code §§ 1750, *et seq*.<br>7. Violation of the New Jersey Consumer Fraud Act<br>8. Violation of New York GBL § 349<br>9. Violation of New York GBL § 350<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs, on behalf of themselves and all others similarly situated, bring this action against Defendants Botanic Tonics, LLC; 7-Eleven, Inc.; Nowhere Partners, LLC dba Erewhon; Hydra623 Holdings, LLC and Does 1 through 10. Plaintiffs allege, upon information and belief, the investigation of counsel, and the facts that are a matter of public record, as follows:

1. Plaintiffs bring this action individually and on behalf of the proposed classes defined below ("the Classes") against Botanic Tonics, which Plaintiffs contend falsely advertised and misrepresented the character of the product "Feel Free Wellness Tonic" and failed to warn about its dangerous side effects; against 7-Eleven, which Plaintiffs contend failed to take precautionary measures to ensure that Feel Free would not be sold in its stores without proper disclosures or warnings; against Erewhon, which Plaintiffs contend falsely advertised and misrepresented the character of Feel Free in its Erewhon stores and failed to take precautionary measures to ensure that Feel Free would not be sold in Erewhon stores without proper disclosures or warnings; and against Hydra623, which Plaintiffs contend, as the managing entity of Botanic Tonics, falsely advertised and misrepresented the character of the product "Feel Free Wellness Tonic" and failed to warn about its dangerous side effects.

2. Botanic Tonics advertised its "Feel Free Wellness Tonic" as a safe, sober, and healthy alternative to alcohol. Botanic Tonics utilized targeted advertising on social media to reach its desired customer base, which included individuals like Plaintiffs who had battled with addiction in the past. As a part of its campaign, Botanic Tonics paid social media influencers to post pictures and videos of themselves drinking Feel Free and advertising it as a way to quit drinking or stay sober. Botanic Tonics prominently advertised with the hashtag #alcoholalternative.

3. Botanic Tonics also partnered with college sports teams, hired hundreds of college students, gave away Feel Free at fraternity and sorority parties and during finals weeks to "fix [their] stress," and engaged in a campaign to target college students as a means to expand its consumer base.

4. In advertisements and informational materials, Botanic Tonics characterized Feel Free as a kava drink, kava being a relatively harmless plant from the South Pacific that acts as a moderate depressant, inducing a sense of calm or relaxation. Botanic Tonics stated that Feel Free was safe, healthy, and not addicting, stating that it was no more habit forming than sugar or caffeine, and that

it had no side effects.

5.     Despite these misleading marketing statements, Feel Free has the potential to be highly addictive. Contrary to the marketing, Feel Free's primary ingredient is not kava, but kratom. Kratom is an opioid that carries similar risks of addiction as controlled narcotics. The FDA and DEA have warned that kratom can lead to addiction, with significant detrimental side effects, and the DEA has categorized it as a Drug and Chemical of Concern. Accordingly, addiction rehabilitation centers include kratom as one of the harmful substances for which they treat patients, and they do so using similar methods as those used to treat opioid addiction.

6.     Kratom—especially at the concentrations used in Feel Free—is also responsible for a variety of side effects in users that range from the moderate to severe. Moderate side effects of kratom include nausea, sweating, itching, dry mouth, constipation, increased urination, agitation, and trouble sleeping. More severe side effects include respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, and coma.

7.     Unbeknownst to consumers, Botanic Tonics not only added kratom in large amounts, but also manipulated the formula of Feel Free to magnify the effects of kratom and induce a quicker, longer-lasting, and greater high. Botanic Tonics never disclosed the amount or concentration of kratom in Feel Free, the fact that it manipulated Feel Free's formula to magnify the effects of kratom, or that Feel Free had the potential to cause significant side effects.

8.     Like the 2.9 million Californians who suffer from substance abuse disorders, Plaintiff Romulo Torres suffered from alcoholism. After battling with this disease for years, Plaintiff Torres entered a rehabilitation facility in 2014 and achieved sobriety, sustaining long-term sobriety. In 2020, Plaintiff Torres began to receive targeted ads from Botanic Tonics on social media, marketing Feel Free as a safe, healthy, and sober alternative to alcohol.

9.     In December 2021, Plaintiff Torres tried Feel Free, purchasing it from a 7-Eleven store. Within three months, he had developed a strong addiction to the product. He was drinking 10 Feel Free tonics per day and spending $3000 per month on the product. Like any other highly addictive substance, Plaintiff Torres could no longer function without Feel Free and suffered severe

withdrawal symptoms when he attempted to stop using Feel Free. In 2022, Plaintiff Torres relapsed and began drinking alcohol in an effort to cope with the worsening symptoms of his Feel Free addiction.

10. Over the next several months, Plaintiff Torres was admitted to the emergency room with symptoms associated with severe opioid use, including vomiting, lapses in consciousness, delirium, and psychosis. His symptoms were attributed to the ingredients in Feel Free. In fall 2022, Plaintiff Torres underwent medical detox and subsequently was readmitted to a rehabilitation facility.

11. Feel Free has caused Plaintiff Torres to lose his job, had severe impacts on his family life, and has undermined his decades of work in recovery.

12. In May 2022, Plaintiff Rosenfield tried and purchased Feel Free for the first time from an Erewhon store. Immediately, he had developed a strong addiction to the product. He was drinking 9 to 12 Feel Free tonics per day and spending $4000 per month on the product. Like any other highly addictive substance, Plaintiff Rosenfield could no longer function without Feel Free and suffered severe withdrawal symptoms when he attempted to stop using Feel Free. He lied to his loved ones about his addiction, but eventually admitted himself to a rehabilitation center in March 2023 to deal with the addiction and its detrimental effects.

13. Feel Free has caused Plaintiff Rosenfield to lose his job, had severe impacts on his mental and physical health, damaged his relationships, and undermined his years of work in recovery.

14. Plaintiffs' stories are not unique. Scores of individuals who have battled with sobriety have found themselves the victims of targeted and misleading advertising by Botanic Tonics. They have been induced to try a product, Feel Free, as a means to support their sobriety. Through tragic irony by way of fraud, this product has perpetuated the very addiction they sought to avoid. Botanic Tonics has marketed its product misleadingly to this vulnerable population and failed to warn about the dangerous side effects of the product.

15. Plaintiffs assert claims individually and collectively under the California Unfair Competition Law, Business & Professions Code sections 17200, *et seq.*; California False Advertising Law, Business & Professions Code sections 17500, *et seq.*; common law fraud; breach of the implied warranty of merchantability; and unjust enrichment.

16. Plaintiffs seek restitution, disgorgement, equitable relief, costs and expenses of litigation including attorneys' fees, punitive damages, and all additional relief that the Court may deem appropriate and just under the circumstances.

## JURISDICTION AND VENUE

17. CAFA Jurisdiction: This Court has diversity jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). This action is a class action as defined by 28 U.S.C. §1332(d)(1)(B). The complaint is brought as a "Class Action" and Plaintiffs bring it individually and on behalf of the proposed Class.

- Minimal Diversity: As alleged herein, Defendant 7-Eleven is a Texas corporation with its principal place of business at 3200 Hackberry Road, Irving, Texas 75063. Additionally, Plaintiffs are residents of California, and the proposed Class includes California purchasers of Feel Free.

- Amount in Controversy Exceeds $5 million: The amount in controversy in the underlying dispute exceeds $5 million, thus satisfying 28 U.S.C. § 1332(d)(2). Plaintiffs believe there to be more than 5,000 members of the proposed Class. Plaintiffs allege that they and the proposed Class have been fraudulently misled and intentionally misrepresented to in the course of the advertising and sale of Feel Free to Plaintiffs.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, Defendants engage and perform business activities in and throughout the State of California, including this district; and Class Members entered into agreements to purchase Defendants' products while in Sonoma and Alameda County.

## PARTIES

19. Plaintiff Romulo Torres is a resident of and domiciled in Sonoma County, California. Plaintiff purchased Feel Free from multiple 7-Eleven stores, including stores in Sonoma and Berkeley, California. Plaintiff purchased Feel Free in reliance on misleading advertisements by Botanic Tonics characterizing the product as a non-addictive, "safe," and "healthy" alternative to alcohol for individuals like him who chose sobriety. Plaintiff suffered side effects of his use of Feel Free, including addiction, withdrawal, and symptoms associated with opioids and stimulants.

20.     Plaintiff Sam Rosenfield is a resident of and domiciled in Los Angeles County, California. Plaintiff Rosenfield purchased Feel Free from multiple Erewhon stores, including stores in Los Angeles and Calabasas, California. Plaintiff Rosenfield purchased Feel Free in reliance on misleading advertisements made by Erewhon characterizing all products available in its stores as "good for you." Further, Plaintiff relied on misleading advertisements by Botanic Tonics characterizing the product as a non-addictive, "safe," and "healthy" alternative to alcohol for individuals like him who practice sobriety. Plaintiff Rosenfield suffered side effects as a result of his use of Feel Free, including addiction, withdrawal, dermopathy, and other symptoms related to opioid and stimulant use.

21.     Plaintiff C.C. is domiciled and lives in New Jersey. While in New Jersey, Plaintiff has purchased Botanic Tonic products periodically since approximately December 2021.  When Plaintiff first started purchasing the products, he reviewed and relied on the product labeling, which did not disclose the addictive nature of the Feel Free tonic, or its active ingredient kratom.  If the product had included a warning about the addictive nature of kratom, Plaintiff would not have purchased it. Unfortunately, Plaintiff has become very addicted to Feel Free and is in the process of trying to wean himself from it to minimize the serious withdrawal symptoms.

22.     Because this action concerns issues of addiction and medical status, Plaintiff C.C. is filing under his initials for the sake of personal privacy.  Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom.  Since addiction issues still wrongly carry somewhat of a stigma, Plaintiff is filing this matter anonymously but will reveal his name as necessary to the Court under seal.

23.     Plaintiff Paul Teitler is domiciled and lives in New York.  While in New York, Plaintiff purchased Botanic Tonics' products several times, with the last purchase being in approximately May 2022.  When Plaintiff Teitler first started purchasing the products, he reviewed and relied on the product labeling, which did not disclose the addictive nature of the Feel Free tonic, or its active ingredient kratom.  If the product had included a warning about the addictive nature of kratom, Plaintiff would not have purchased it.  Plaintiff stopped using the product after starting to feel like he was at risk of becoming addicted to it.

24. Defendant Botanic Tonics, LLC is a Delaware corporation with its principal place of business at 740 Kingman Avenue, Santa Monica, California 90402. Botanic Tonics is the manufacturer of Feel Free Wellness Tonic, and markets and sells its product in California. Botanic Tonics manufactures over 700,000 bottles of the product per month.

25. Defendant 7-Eleven is a Texas corporation with its principal place of business at 3200 Hackberry Road, Irving, Texas 75063. Plaintiffs purchased Feel Free from multiple 7-Eleven franchise stores in California, including one in Alameda County.

26. Defendant Nowhere Partners, LLC is a California corporation doing business as Erewhon, with its principal place of business at 7660 Beverly Boulevard, Suite A in Los Angeles, California 90036. Erewhon owns and operates specialty grocery stores throughout California. Plaintiff Rosenfield purchased Feel Free from multiple Erewhon stores in California.

Defendant Hydra623 Holdings, LLC is a Delaware corporation with its principal place of business at 740 Kingman Avenue, Santa Monica, California 90402. Hydra623 is a holding company and the listed manager of Botanic Tonics, LLC with the California Secretary of State. As the holding company and manager of Botanic Tonics, Hydra623 controlled and oversaw Botanic Tonics, including but not limited to the manufacturing, marketing, advertising, and sales of Feel Free.

## CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4):

All persons nationwide who purchased the product "Feel Free" anytime from March 28, 2019 to the present.

All persons in California who purchased the product "Feel Free" anytime from March 28, 2019 to the present (the California subclass).

All persons in New Jersey who purchased the product "Feel Free" anytime from March 28, 2019 to the present (the New Jersey subclass).

All persons in New York who purchased the product "Feel Free" anytime from March 28, 2019 to the present (the New York subclass).

Excluded from this class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and affiliated companies; class counsel and their employees; and judicial officers and their immediate families as court staff assigned to his case.

The class is further divided into the following subclasses:

**7-Eleven Subclass**: All Class Members who purchased Feel Free from a 7-Eleven store.

**Erewhon Subclass:** All Class Members who purchased Feel Free from an Erewhon grocery store.

28.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or at class certification, including for example, by using multi-state subclasses to account for material differences in state law, if any.

29.     The members of the Class are so numerous that joinder of all members would be impracticable. The Class incudes tens of thousands of individuals across the nation

30.     There are questions of law and fact common to the members of the Classes that predominate over any questions affecting only individual members, including, without limitation:

- Whether the advertising for Feel Free was misleading, fraudulent, deceptive, unfair, or unconscionable;

- Whether Botanic Tonics targeted individuals with a history of addiction;

- Whether the targeting of individuals with a history of addiction in the marketing or sale of Feel Free was misleading, fraudulent, deceptive, unfair, or unconscionable;

- Whether Feel Free was in merchantable condition, defective, and/or possessed the basic fitness for ordinary use when sold;

- Whether 7-Eleven had an obligation to take steps to ensure its franchise stores did not sell Feel Free to customers without disclosures or warnings about its side effects;

- Whether 7-Eleven's failure to ensure that its franchise stores did not sell Feel Free constituted an unfair business practice;

- Whether Erewhon had an obligation to take steps to ensure its stores did not sell Feel Free to customers without disclosures or warnings about its side effects;

- Whether Erewhon failure to ensure that its stores did not sell Feel Free constituted an unfair business practice;

- Whether Defendants have been unjustly enriched;

- The amount of damages owed the Class;

- The appropriate measure of disgorgement; and

- The type and form of injunctive relief.

31.     Plaintiffs bring claims that are typical of the claims of the members of the Class and arise out a common course of conduct. Plaintiffs and Class Members were damaged by the same

wrongful conduct—Defendants' scheme to engage in fraudulent and unfair business practices regarding the marketing and sale of Feel Free.

32. Plaintiffs will fairly and adequately protect the interests of all members of the Classes and have retained attorneys experienced in class action and complex litigation. Plaintiffs have no interests antagonistic to those of the Classes and is not subject to any unique defenses.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons:

- The Classes are readily definable;
- A class action will eliminate the possibility of repetitious litigation;
- It is economically impractical for any or all of the members of the Class to prosecute individual actions; and
- A class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions.

34. Plaintiffs do not anticipate any difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

**A.     Plaintiff Romulo Torres Battled Addiction and Won, Sustaining Long-Term Sobriety**

35. For years, Plaintiff Torres battled with alcoholism. After a hospitalization in 2011, he worked to attain sobriety. For the next three years he achieved periods of sobriety until, in 2014, he entered a rehabilitation facility.

36. For eight months, Plaintiff Torres lived in a sober living environment at the facility, ultimately achieving lasting sobriety.

37. Over the next several years Plaintiff Torres continued his recovery, building his career and family. All that changed when he received a targeted advertisement on social media for a product called Feel Free Wellness Tonic.

**B.     Plaintiff Sam Rosenfield Struggled from Opioid Addiction and Persevered**

38. Over fourteen years ago, Plaintiff Rosenfield battled with opioid addiction. His addiction led to dropping out of college and losing everything to the point of homelessness. Throughout his twenties he maintained periods of sobriety, and entered a rehabilitation facility.

39. Over the next several years Plaintiff Rosenfield continued his recovery and built his career,

put himself through college to finish top of his class and earned his bachelor's degree in finance. All that changed when he purchased a product called Feel Free Wellness Tonic at Erewhon in Los Angeles.

**C.    Botanic Tonics Misleadingly Advertised Feel Free as a Safe, Healthy, and Sober Alternative to Alcohol**

40.    Botanic Tonics is a wellness brand whose primary product is Feel Free Wellness Tonic. Botanic Tonics markets Feel Free as a "feel good wellness tonic," describing it as "a kava drink made with kava and other ancient plants known to help with relaxation, productivity, focus and so much more!" Feel Free is marketed as a safe, healthy, and sober alternative to alcohol.



41.    Botanic Tonics markets Feel Free as "a great alternative to alcohol, energy drinks, and synthetic focus enhancers" and directs users to "[t]ake feel free when you want to feel more social, need a clean boost of energy, or need to lock in and focus."

42.    With regards to Feel Free's ingredients, Botanic Tonics states in its marketing materials that Feel Free is a "kava drink" made with kava and "other ancient plants." Kava (*Piper methysticum)* is a plant from the South Pacific that acts as a moderate depressant. It is traditionally consumed like a tea—mixed with water—and has been deemed by the World Health Organization to present an "acceptably low level of risk" when consumed in this form.



43. Botanic Tonic misleadingly omits in its advertising and marketing that Feel Free's primary ingredient is not kava, but kratom, a psychoactive substance with highly addictive properties that has been characterized by the FDA as an opioid and been classified by the DEA as a Drug and Chemical of Concern.

44. Feel Free is marketed as "absolutely" safe with no side effects. Botanic Tonics states in marketing materials:

> Kava has been enjoyed by cultures throughout the South Pacific for generations. They've used it as a social drink and in all kinds of rituals—including celebrating new leaders, weddings, and cultural holidays. Because kava has been incorporated into drinks for so long, its history is relatively well documented. That includes its safety. When you enjoy a kava drink, **you don't have to worry about side effects**. The same can be said of Botanic Tonics' kava drink, the Feel Free Wellness Tonic. It's made with kava and other ancient plants, so when you enjoy it as a shot, you can just kick back and relax.

45. Contrary to this statement, Feel Free contains high concentrations of kratom, which has well-documented side effects that mirror those of opioids and stimulants, including nausea, sweating, itching, dry mouth, constipation, increased urination, respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, coma, and even death.

46. Feel Free is marketed as non-addictive, creating no more dependence than sugar or caffeine. Botanic Tonics states in marketing materials:

As an ingredient in tea or Botanic Tonics' Feel Free Wellness Tonic, kava isn't addictive. But it's important to remember that anything that helps you feel good can influence some level of dependence. **Think sugar or caffeine.** Many of us enjoy these substances every day. You may enjoy the sweetness that sugar adds to your favorite drinks or desserts. You may love the way caffeine wakes you up in the morning. And you may find that you love how Feel Free Wellness Tonic makes you feel at the end of a long week. That feeling of bliss and relaxation can be a powerful one! Just like sugar or caffeine, you can get the most out of Botanic Tonics' Feel Free Wellness Tonic when you enjoy it in moderation.

47. These materials misleadingly omitted the effects of kratom. In reality, kratom is a highly addictive substance that activates the same opioid receptors as narcotics like morphine. Whereas the marketing materials describe psychological dependence on sugar and caffeine, Feel Free induces physiological, or chemical, dependence due to its high amounts of kratom.

48. Feel Free is also marketed as being "manufactured in an FDA-regulated facility." This is misleading, as it creates the impression that the product is FDA regulated or approved. In fact, not only has Feel Free not been evaluated by the FDA, but the FDA has strongly maintained that Feel Free's active ingredient, kratom, is an opioid-like drug that poses a danger to public health.

49. Botanic Tonics also marketed as a means to boost fitness. Specifically, Botanic Tonics stated in marketing materials:

Botanic Tonics: Where Kava and Athletics Meet. Kava and athletics go hand-in-hand. The connection might not seem obvious at first, but kava can impact fitness and post-activity well-being. It's due in part to the properties of kava that help promote feelings of calmness and relaxation. These sensations can be both mental and physical. In other words, just as drinking kava after a busy day can help you unwind, the right serving size (half a bottle) can help your muscles feel more relaxed after activity. **This is why people rely on Botanic Tonics' Feel Free Wellness Tonic as part of their overall fitness or sports routine.** It just makes sense—and this is how it can fit into your daily fitness routine.

50. Botanic Tonics partnered with colleges to advertise as the "official tonic" of their sports teams. Feel Free is the "official tonic" of Florida State University, the University of Southern California, and the University of Texas athletics.

51. Botanic Tonics paid influencers to promote Feel Free as a sober, safe, and healthy alcohol alternative in various media, including Instagram, TikTok, and on podcasts. In various media, Feel Free was promoted as a means to quit alcohol.

52. Botanic Tonics also hired hundreds of "brand ambassadors" to spread positive reviews

about the product. Brand ambassadors were tasked with sharing their experiences with Botanic Tonic on social media, the Botanic Tonics website, and in person with friends and family. They were directed to emphasize that Feel Free was a kava drink and that its effects were the benefits of kava. They were told:

> The Feel Free Wellness Tonic is made with kava and other ancient plants. […] [The Ambassador Program] is all about sharing your love of kava with the world and getting rewarded at the same time. […] Whether you're sharing your kava experience on social media, writing up a quick review on the Botanic Tonics website, or just talking about it with some friends, sharing your love for kava is a big deal. Here's a prime example: If you picked up some kava for anxiety, sharing your experience can serve as inspiration to others. There are so many people looking for ways to alleviate the tense, uncomfortable feelings that come with anxiousness. Posting about your experience on social media about how Feel Free helped you can benefit others who are in search of relief. […] To take that further, don't hesitate to share your kava story. Why do you drink kava? […] We all have our kava stories, some short and some long, and they're all worth telling!

53. Brand ambassadors were given a referral code to share with family and friends earned a 40 percent discount on a purchase of Botanic Tonics each time someone used their referral code.

**D.  Botanic Tonics Entered College Campuses to Push Feel Free to a Particularly Vulnerable Population of College Students**

54. Botanic Tonics specifically targeted college students as a means to grow its direct-to-consumer base. Specifically, Botanic Tonics was marketed to college students on campuses with the intent for those students to bring the product back home during break—to markets without convenience stores or other retail means of purchasing Feel Free.

55. Botanic Tonics hired people to stand in the middle of college campuses—in libraries, dining halls, and quads—and hand out Feel Free for free to students. Feel Free's founder stated that these individuals were trained to "preach the benefits" of Feel Free to college students, telling students that Feel Free was the solution to their stress.

56. For example, during finals season at the University of Southern California ("USC"), Botanic Tonics served Feel Free over ice to students at USC Village, a student residential hub, and the Tudor Campus Center, a communal location where students hang out between classes and come to eat. Botanic Tonics served these drinks for free and told the stressed-out students that Feel Free would "fix all [their] stress."

57. Botanic Tonics also partnered with fraternities and sororities and hired people to promote the product at college parties.

58. As a part of the on-campus campaign, Botanic Tonic hired hundreds of college students to promote and spread the product.

59. As a result of Botanic Tonic's on-campus campaigns, college students brought the product home and introduced it to family and friends. Botanic Tonics saw a corresponding rise in direct-to-consumer sales and, after interviewing and surveying college purchasers, concluded that this rise was directly related to the sale of Feel Free on college campuses.

60. Botanic Tonics partnered directly with three schools—Florida State University, University of Texas, and USC—as a means to grow its consumer base to vulnerable college students and as a means to use their families and friends to grow its direct-to-consumer base. Botanic Tonics plans to add another 76 colleges to its partnership program by next year.

**E. Botanic Tonics Used Targeted Social Media Advertising to Market to a Particularly Vulnerable Population of Individuals Struggling with Sobriety**

61. Botanic Tonics engaged in an ad campaign targeted to people searching for an alcohol alternative and included a highly vulnerable population of individuals, like Plaintiff, with a history of substance abuse, addiction, or alcoholism who struggled with sobriety. Botanic Tonics utilized social media algorithms to search out and specifically target these individuals.

62. Botanic Tonics posted over a *thousand* advertisements on Instagram, repeatedly using the hashtag #alcoholalternative. These advertisements included the following statements representing Feel Free as safe and sober alcohol alternative:

- "Life without alcohol allows you to feel free."
- "So you don't drink alcohol? Great! Balance is key for a healthy life. Drinking botanic tonics helps you find focus and balance."
- "Don't get hung up on hangovers. Botanic tonics will be your favorite alternative party drink."
- "All the buzz without the booze…what emoji best describes this state of being?"
- "So you don't drink alcohol? Great! Crack open a cold one with your wellness community and channel your inner crystal energy."
- "A new way to cheers - anytime, anywhere."

- "Daily reminder to go on a road trip with your favorite humans. Don't forget to bring your favorite #alcoholalternative for the road. Sip it anytime of day. ✨ Tag your fav road trip buddy to get a couple feel free shots for your trip."

- "All the buzz without the booze... have you tried it yet? ✨✨✨"

- "Buzz without the booze!"

- "Mother's little helper 😍 Tag a mom that could use *feel free* in her life ✨"

- "Sober curious? Just a couple sips of this will make you feel energized and focused ✨✨"

- "Our tonic is plant-based alternative to all of those habits you need to replace 🌱 ✨ who else agrees?"

- "*feel free* to take it along for the ride. Unlike alcohol, FEEL enhanced, not inebriated ✨"

- "Not your average alcohol free elixir. *feel free* was made to be functional and facilitate states of bliss, flow, vitality and focus. The kava + other ancient plants will give you the boost you need but [minus the hangxiety] ⚡"

- "You don't drink alcohol? Well, nice to meet you. ✨ #feelfree"

- "Cheers to not drinking this holiday season ✨"

- "You have a choice - ditch the alcohol this holiday season. ✨"

- "You have a choice. You don't have to get blasted on the holidays."

- "New year, new me. Ditch the alcohol this year."

- "Sober curious? Why not mix it up with a euphoric alternative to alcohol tonight. Best way to start of the new year. You'll be feeling free and elevated ✨"

- "Alcohol got you down? 🥴 cheers to feeling great and not drinking ✨ Use code: DRY40"

63.     Botanic Tonic also used popular internet memes to target individuals who were seeking sobriety or in recovery.





### F. Plaintiffs Fall Victim to Targeted Social Media Advertisements for Feel Free

64. In 2020, Plaintiff Torres began to receive targeted advertisements for Feel Free on Instagram, advertising the product as a sober, healthy, and safe alternative to alcohol. In 2022, Plaintiff Rosenfield began receiving targeted advertisements for Feel Free on Instagram, advertising the product as a sober, healthy, and safe alternative to alcohol.

65. These advertisements omitted any mention of kratom or Feel Free's potential side effects, and included the following representations:

- Feel Free provides a safe and sober buzz for individuals working on sobriety by using ancient plants to enhance serotonin production in the brain; and

- Feel Free is used for productivity enhancement or as a healthy alcohol alternative and is the official tonic of various college athletic teams.

66. During that holiday season in 2020, Plaintiff Torres tried Feel Free as an alternative to alcohol, relying on the representations that the product was safe, healthy, and supported sobriety.

67. During spring 2022, Plaintiff Rosenfield decided to try Feel Free among the selection of health shots in Erewhon believing that it was safe and healthy as advertised.

### G. Feel Free Contained Concentrated Amounts of Kratom, an Addictive Substance Similar to Opioids that Can Cause Severe Detrimental Reactions, Including Addiction

68. Unbeknownst to Plaintiffs, undisclosed by any of Botanic Tonic's extensive marketing and advertising, and undisclosed by the label on the product, Feel Free's primary ingredient was kratom. Plaintiffs did not know, and could not have known, that there was more than twice the

amount of kratom in Feel Free as there was kava, and that Botanic Tonics had formulated the product to magnify the effects of the kratom.

69. Kratom (*Mitragyna speciosa*) is a tropical tree from Southeast Asia that has both opioid properties and stimulant effects. Historically, the plant was used as an opium substitute in Southeast Asia, including in Malaysia and Thailand. It has been characterized by the FDA as an opioid.

70. In 2018, the FDA conducted a scientific analysis using 3D modeling to determine the precise effect of kratom on the human body at the molecular level. FDA scientists found that the 25 most prevalent compounds in kratom "share the most structural similarities with controlled opioid analgesics, such as morphine derivatives." The FDA further discovered that 22 of these 25 compounds activate opioid receptors in the brain. Finally, the FDA found that the strength of the bond between these compounds and the opioid receptors was strong—"comparable to scheduled opioid drugs." Based on this analysis, the FDA reached the following conclusion: "Based on the scientific information in the literature and further supported by our computational modeling and the reports of its adverse effects in humans, we feel confident in calling compounds found in kratom, opioids."



71. The FDA has since repeated this conclusion, stating that "[k]ratom affects the same opioid receptors as morphine [and] appears to have properties that expose people who consume kratom to the risks of addiction, abuse, and dependence." The FDA has further reiterated that "evidence shows that kratom has similar effects to narcotics like opioids, and carries similar risks of abuse, addiction, and in some cases, death."

72. Contradicting Botanic Tonics' marketing strategy of characterizing Feel Free as healthy because it is "plant-based" and created using "ancient plants," the FDA has expressly stated, as early as 2018, that "claiming that kratom is benign because it is 'just a plant' is shortsighted and dangerous. […] [A]s the scientific data and adverse event reports have clearly revealed, compounds in kratom make it so it isn't just a plant—it's an opioid."

73. The DEA categorizes kratom as a Drug and Chemical of Concern and notes that it can induce physiological dependence by users, leading to addiction.

74. Because of kratom's similarity to opioids and side effects, it is classified as a controlled substance in sixteen countries (including Thailand and Malaysia, its countries of origin). It is also banned in a number of states and others have pending legislation to ban it.

75. Mild side effects of kratom include nausea, sweating, itching, dry mouth, constipation, increased urination, agitation, and trouble sleeping. More severe side effects include respiratory depression, seizure, tachycardia, high blood pressure, vomiting, liver failure, addiction, withdrawal, hallucinations, psychosis, cardiac or respiratory arrest, and coma.

76. Naloxone, commonly known by the brand name Narcan, is used to treat opioid overdoses. Because of the similarity between opioids and kratom, naloxone is used to treat kratom overdoses.

77. Because kratom is known in the scientific community to be an opioid or opioid-alternative, substance abuse treatment and rehabilitation centers list kratom as one of the substances for which they treat patients.

**H. Botanic Tonics Hired Experienced Operatives to Lobby Against Government Opposition to Kratom**

78. The FDA attempted, multiple times, to classify kratom as a schedule 1 drug. However, this was ultimately stymied by pressure from Congress. This pressure was placed by kratom lobbying organizations and manufacturers, including Botanic Tonics.

79. Botanic Tonics' founder, for his part, attributed Congress's opposition to the FDA's crackdown to the public support for kratom and the fact that "a lot of congressmen, they were actually using [kratom]." In reality, Botanic Tonics hired experienced lobbyists to put pressure on the federal government, spending tens of thousands of dollars to lobby the Senate, House of

Representatives, and the FDA to ensure kratom would not be scheduled. To oversee this lobbying campaign, Botanic Tonics hired as its Head of Government Relations a former Director of Government Affairs at JUUL, the e-cigarette company. While at JUUL, this employee had successfully defeated an e-cigarette ban in multiple legislative sessions.

80. Botanic Tonics built a government affairs team with considerable knowledge and expertise to similarly defeat any local, state, or federal opposition to kratom.

**I. Botanic Tonics Formulate Feel Free Specifically to Enhance Kratom's Effects**

81. Botanic Tonics manipulated the formula for Feel Free to ensure that mitragynine, one of the primary compounds responsible for kratom's opioid effects, would cross the blood-brain barrier rapidly after consuming the drink. As a result, the kratom in Feel Free begins to take effect moments after ingesting the drink, leading to a faster, stronger, and longer-lasting high.

82. Botanic Tonics experimented with several different formulations before achieving its desired result, which it then marketed and sold to the public.

83. Botanic Tonics believed that a concentrated dose of Feel Free was preferable to a larger volume drink for multiple reasons—all relating to maximizing profit. First, a concentrated, shelf-stable 2-ounce drink would create the largest profit margins because it is easier to transport and store than a larger drink with a higher percentage of water. Second, a more concentrated dose of the product results in greater effects, which results in greater dependence on the product.

**J. Botanic Tonics Uses Independent Contractors to Keep its Margins Low and Increase Profits**

84. Botanic Tonics relies on retail store sales for the majority of its revenue—specifically convenience stores.

85. Botanic Tonics has cultivated a network of over a hundred direct store distributors—independent contractors who deliver to, merchandize, and liaise between specific stores across the country. These DSDs receive a percentage of sales from the particular stores on their route. As a result of this model, Botanic Tonic's profit margins are higher for retail sales than direct to consumer sales, for which Botanic must pay the cost of shipping.

86. Botanic Tonics plans to have 250 DSDs across the country by the end of 2023.

87. Botanic Tonics makes the same misrepresentations and misleading statements to its DSDs as it does to its consumers.

**K. 7-Eleven Failed to Enact Policies Restricting its Franchises from Selling Feel Free or Requiring them to Warn of its Detrimental Side Effects**

88. Induced by Botanic Tonic's targeted advertising campaign, Plaintiffs discovered that 7-Eleven stores nearby stocked Feel Free. In fact, many 7-Eleven stores across the nation stock Feel Free.

89. 7-Eleven operates many retail locations through a franchise model. Under this model, enter into an agreement with 7-Eleven to use 7-Eleven's business model and distribute its product. The franchisee pays a fee to use 7-Eleven's model and brand name and agrees to follow specific operating requirements and restrictions as set forth in the franchise agreement. 7-Eleven and the franchise store share the gross profit. In fact, 7-Eleven can keep up to 59 percent of the profits earned by a franchise store.

90. Under the FTC Franchise Rule, 16 C.F.R. § 436, 7-Eleven has the authority to exert "a significant degree of control" over franchisees' method of operation. In practice, 7-Eleven is heavily involved in the operation of its franchisee stores, including by taking responsibility for building maintenance costs, equipment maintenance costs, 7-Eleven advertising, book-keeping and back-office support, inventory audits, and business advisory assistance. In fact, franchise owners do not even have the authority or ability to change the temperature in their own stores; 7-Eleven controls the temperature remotely from its headquarters in Texas. 7-Eleven has also installed video cameras in franchise stores that it monitors remotely from its headquarters. 7-Eleven requires that franchisees to maintain specific ethical standards, work full time in the store and supervise day-to-day operations, wear and require employees to wear 7-Eleven-approved apparel, and use 7-Eleven's own payroll system.

91. Franchisees are required to follow an operations manual provided by 7-Eleven that is nearly 1,000 pages long. 7-Eleven has the ability to unilaterally change the rules in this manual at any time.

92. 7-Eleven is also heavily involved in the products sold by its franchises, taking responsibility

for product development and merchandizing assistance. 7-Eleven exerts significant control over the ordering and advertising of products. 7-Eleven specifically prevents franchises from ordering certain products through its internal inventory and ordering system, including, for example, certain types of sodas, ice teas, cigarettes, and even batteries. The franchise agreement expressly requires that franchisees carry an inventory of a "type, quality, quantity, and variety" consistent with the 7-Eleven image, which is discussed in training documents and the operational manual.

93.     7-Eleven, Inc. trains franchise owners in 7-Eleven's rules, policies, and practices that they must follow, including through an initial six to eight weeks of training on store operations.

94.     7-Eleven also provides franchises with a "planogram"—a floor layout displaying where inventory purchased from recommended vendors should be optimally placed within the store.

95.     7-Eleven franchises placed Feel Free in stands at the checkout counter, in accordance with guidance from 7-Eleven relating to optimal placement of certain types of products.



96.     7-Eleven knew that its franchise stores carried Feel Free. It also knew that countless individuals were experiencing addiction and dangerous side effects from consuming Feel Free. Yet despite the control 7-Eleven exerted over franchise stores' operations and the type of inventory they were permitted to carry, 7-Eleven failed to require that its franchise stores warn consumers about the dangerous and addictive side effects of Feel Free. 7-Eleven failed to provide training to

franchisees relating to the sale or marketing of products containing kratom; or relating to disclosures or warnings that franchisees should have made to consumers purchasing such products of their potentially addictive and hazardous side effects.

97. By turning a blind eye to the sale of Feel Free in its franchise stores, 7-Eleven reaped the benefits through profits gained pursuant to the profit-sharing between it and its franchises, and it did so at the expense of its most vulnerable customers.

**L. Erewhon Made Misrepresentations and Failed to Warn Customers of Feel Free's Detrimental Side Effects**

98. Erewhon made representations about products sold in its stores in order to induce customers to purchase Feel Free. Specifically, Erewhon's store slogan states, "if it's here it's good for you." This slogan is made on advertisements, in marketing, and repeated on labels of products in its store.

99. Erewhon also repeated the representations made by Botanic Tonics in its own stores and to customers, in order to induce customers to purchase Feel Free.

100. At the time Erewhon made these representations, Erewhon should have known based on publicly available information, including Botanic Tonics' website, that Feel Free contained kratom. Further, Erewhon should have known that kratom poses a threat to customers and should have warned customers of the potential side effects associated with kratom.

101. Erewhon failed to warn its customers about the potential side effects of Feel Free and failed to ensure the products sold in its Erewhon stores were safe for consumer use.

102. Induced by Erewhon's misleading advertising, Plaintiff Rosenfield purchased Feel Free prominently displayed next to the organic ginger turmeric shots. Plaintiff Rosenfield looked at the bottle before purchasing the product but did not see any disclosures or warnings about Feel Free's potential for significant side effects, including addiction. Nor were there any disclosures about the concentration of kratom in the product or the fact that Botanic Tonics had formulated the product to magnify the effects of kratom.

**M. Although Defendants Knew of Kratom's Detrimental Side Effects, They Did Not Warn Consumers**

103. Botanic Tonics did not warn consumers of the potential detrimental and severe side effects of Feel Free, even though it should have known that Feel Free had the potential for such effects.

Indeed, Botanic Tonics took care to avoid mentioning kratom by name in all of its advertising and marketing precisely because it knew that mentioning the substance could lead consumers to research and discover the scientific consensus on kratom's opioid nature. Moreover, Botanic Tonics specifically failed to disclose the amount or concentration of kratom in Feel Free or that the product was manipulated to magnify the effects of the kratom.

104. Moreover, Botanic Tonics specifically instructed its retail partners and sales representatives not to mention kratom. Botanic Tonics instructed employees and contractors it hired to write ad copy and blog posts about Feel Free to downplay kratom and refer to Feel Free's ingredients as including kava and ancient plants, not kratom. Specifically, Botanic Tonics instructed these agents to remove the word "kratom" from posts they made about Feel Free.

105. Even after Botanic Tonics learned that hundreds of consumers were experiencing side effects and addiction, it continued to omit kratom from its marketing and advertising and failed to disclose the potential side effects.

106. 7-Eleven also failed to warn its customers of the potential detrimental and severe side effects of Feel Free, even though it knew—based on scientific consensus at the time—that the kratom in Feel Free had a potential for such effects.

**N.     Plaintiff Torres Purchased Feel Free From 7-Elevens Based on Misleading Advertising**

107. Induced by Botanic Tonic's misleading advertising, Plaintiff Torres found that a nearby 7-Eleven stocked Feel Free. He visited the store, saw the product prominently displayed with the same representations that had been made in the targeted advertisements to him, and purchased it.

108. Plaintiff Torres looked at the bottle before purchasing the product but did not see any disclosures or warnings about Feel Free's potential for significant side effects, including addiction. Nor were there any disclosures about the concentration of kratom in the product or the fact that Botanic Tonics had formulated the product to magnify the effects of kratom.

**O.     Plaintiffs Suffered Significant Detrimental Reactions to Feel Free, Destroying Their Sobriety, Families and Jobs**

109. After trying Feel Free during the holidays, Plaintiff Torres quickly developed physiological dependence on the product. As his body adapted to Feel Free, Plaintiff Torres was forced to buy

and consume more of the product to feel normal and avoid the symptoms of withdrawal. By March of 2021, he was spending $3000 per month on Feel Free and drinking ten per day. He could not sleep or function without Feel Free, and would experience strong withdrawal symptoms, including shakes and delirium.

110. For the next several months, Plaintiff Torres attempted, unsuccessfully, to wean himself off Feel Free. Each time he would suffer intense withdrawals and relapse. Finally, he turned to alcohol to help manage his withdrawals, his decade in recovery undermined by a product misleadingly marketed to support that very recovery.

111. In April 2022, Plaintiff Torres was admitted to the emergency room presenting with symptoms of alcohol poisoning. His blood alcohol content was zero. All he had taken was Feel Free.

112. In September of 2022 Plaintiff Torres was again admitted to the hospital under the effects of Feel Free, this time experiencing psychosis and delirium.

113. After this experience, Plaintiff Torres entered a medical detox facility that treated patients for substance abuse of alcohol, opioids, and kratom. He was placed on medication for opioid addiction and spent ten days experiencing severe withdrawals, including terror, sweats, tremors, delusions, nightmares, and the feeling he was dying.

114. Following detox, Plaintiff Torres entered rehabilitation. He had been forced to quit his job, his behavior under the influence of Feel Free had damaged his relationship with his girlfriend, and he was back at ground zero in his recovery.

115. After drinking Feel Free for the first time in early 2022, Plaintiff Rosenfield immediately went back to the store to purchase another bottle that same day. He quickly developed a dependency on the product, and at the height of his addiction would consume 9 to 12 bottles a day. Plaintiff Rosenfield spent thousands of dollars on Feel Free purchases because of his addiction.

116. Plaintiff Rosenfield attempted, unsuccessfully, to lessen his consumption and refrain from drinking Feel Free. Each time he would suffer intense withdrawals and relapse. During this time, Plaintiff also experienced anxiety, depression, and his skin would flake and shed. After almost a decade in recovery, Plaintiff quickly lost his job and ability to productively function on a daily

basis because of his addiction to Feel Free.

117. Eventually, Plaintiff Rosenfield admitted himself into a rehabilitation center in March 2023 to battle his addiction to Feel Free. He was placed on medication and experienced severe withdrawals, including terror, sweats, tremors, delusions, nightmares, and nausea.

**P.      Class Members Similarly Suffered Detrimental Reactions to Feel Free**

118. Plaintiffs' experiences are unfortunately not unique. Class Members describe being subject to similar advertisements, experiencing similar symptoms, and experiencing major setbacks to sobriety as a result of this product misleadingly marketed for sobriety.

119. Feel Free users who have experienced addiction and other detrimental side effects have posted on social media platforms like TikTok and YouTube, describing their negative experiences with the product. The comments on these videos are replete with countless examples of individuals who were subject to similar targeted advertisements as Plaintiffs and who suffered similar detrimental side effects, including:

- "If only people like you were sharing this stuff a year ago. I'm on my 3rd day without it and it hasn't been much different then my alcohol with drawls, cold sweats, anxiety, I can't get out of bed. I couldn't quit because I literally couldn't work without them. This is the most addictive and dangerous thing I have ever touched. The company has robotic responses, they're selling this to anyone and everyone. Not keeping in mind peoples history with addiction. They are selling it as it is safe and beneficial for everyone."

- "I searched this because I had been progressively taking these more and more frequently to the point that I'm at about 2-3 a day and having been feeling the flu like symptoms you describe."

- "I was actually doing work with them for a while. I really enjoyed the product as it was relaxing my muscles and made me feel really chill. But it made me also feel very weak and tired. I'm not eating good anymore. I tried to get off of it but I kept feeling like I needed it. If I didn't have it I would get cranky. This video has helped me. It feels good to know that I'm not the only one that felt off about it. I stopped working with them and I will begin my journey to quitting this drink today. The longest I went was 3 days and then I was feeling sick. Body aches and pain in my bones. It felt like I needed it. It's terrible as you said."

- "Had a similar experience in regards to getting bombarded with the ads […] and then getting creeped out because all comments were turned off. Dug deeper and found all the Reddit stuff. People taking up to 8 bottles a day!!"

- "My husband and I started using FF because of Ben Greenfield's health podcast to avoid wine with one FF a couple of nights a week, which turned into two, three, then four (me), to six (husband) A DAY. I've been prescribed oxycodone and percocet for surgeries and births - barely took any, no addiction at all - I tried cocaine wayyy back in the day - no

addiction at all - and I was shocked at myself with FF. A once healthy/fit, good looking woman turned addict (??) w wrinkly, crepey, scaly skin, styes in the eyes, giant bags, dark circles, 20 pound weight loss, vomiting, lazy, careless, poor memory, blurry vision, avoidance of family & friends..I could go on. I recently stopped (praise Jesus) and now know what it's like to have a full week of PAINFUL withdrawals in bed."

- "I'm going through withdrawals from this product now and it's absolutely horrific. I've never done hard drugs but I can imagine it's similar to this. My skin on my entire body is flaking off, lips chapped and cracking, horrible anxiety, can't sleep because of restless leg syndrome, the despair and hopelessness feeling is unexplainable. *WARNING: DO NOT GET TRICKED INTO THIS PRODUCT"

- "This product became a HUGE issue for me. I got up to 6 a day!! Because I felt like crap if i didn't take it."

- "I have 12 a day. I slam three shortly after breakfast. […] I'm like an alcoholic, I'm just wasted all days I've lost 49 lbs in the last couple of months just from lack of eating and vomiting. I don't eat so I feel the effects more/don't really feel like it. Just drunk all day with these. It's crazy!"

- "This stuff is HIGHLY addictive because of how well it works. It's a drug not some harmless tea. It works on the the mu-opioid receptors and basically gives you a similar if not identical high as hydrocodone, oxy, opioids in general... If you've never experiences an opiate, take it from a professional opiate addict, do not try it if you have depression, anxiety, and/or an addictive personality. The withdrawals I experienced was on par as getting off roxy."

- "This stuff is extremely addictive. Do not purchase this product. The withdrawal symptoms feel like a bad flu and it dries your skin to the point that your entire body will be very itchy. At first it feels great but as you develop tolerance to the tonic, you will drink more and more. I wish I would have never tried it. Do yourself a huge favor stop ASAP. It is not worth the pain and anguish. Trust me."

- "You're right, these are very addictive, I've binged these for 2-3 months at times, spending thousands of dollars a month on these, up to 4-5 per day. One of the most addictive substances I've ever tried."

- "It's so sketchy that they don't have the ingredients listed anywhere until you look at the faqs on the site. They say botanic tonic featuring kava and "other herbs" that's so messed up. People could accidentally get addicted to kratom from it or have no idea what they are getting into."

- "Yup these are very addictive and hard to get off of. Been trying to stop for weeks now and haven't been able to get through the withdrawals yet. If you dont want to risk having to rely on a substance just to get through the day without feeling like shit then I highly suggest that you stay away from these things."

120. Additionally, multiple threads on Reddit have been dedicated to the addictive qualities of Feel Free, including on the r/sober, r/addiction, r/kava, and r/dryalcoholics subreddits.

Posted by u/[deleted] 7 months ago

**Anyone else find Feel Free Botanic Tonics to be incredibly addictive?**

Anyone else finding Feel Free Botanic Tonics to be incredibly addictive??

for the past 2 months or so I am up to 4 sometimes 5 a day, with an occasional two day break...... I have addictive qualities including being sober from alcohol & trying to get sober from these f█████ up things

Anyway, I'm seeing that botanic tonic is being marketed as an alcoholic alternative and lemme tell you... no. In the days when I don't have it, I feel super depressed and my body starts to tingle... and I'm super restless. I just need to get it over with & suffer a lil bit & today is the day... f███ that nasty brown expensive blue bottle!

206 Comments   Share   Save   Hide   Report          97% Upvoted

**About Community**

r/ r/Sober

Welcome to Sober

Created Dec 25, 2010

61.3k Members        44 Online

Join

121.  In fact, there is an entire community on Reddit, r/QuittingFeelFree, dedicated to individuals who are experiencing addiction to FeelFree and attempting to stop using.

**Q.  The Products At Issue Are Adulterated Dietary Supplements That Are Illegal To Sell**

122.  Under 21 USC § 321(ff)(1), a "dietary supplement" includes products intended to supplement the diet that contain "an herb or other botanical," including in concentrated or extracted form.  It also includes a product that is "intended for ingestion in tablet, capsule, powder, softgel, gelcap, or liquid form.  *Id.* at § 321(ff)(2); § 350(c)(1)(B)(i).

123.  The products at issue here are dietary supplements within the meaning of § 321(ff)(1).

124.  Under 21 USC § 342(f)(1)(A), a dietary supplement shall be deemed to be adulterated if it contains an ingredient that presents an unreasonable risk of illness under ordinary conditions of use (and no contrary conditions of use are suggested or recommended on the labeling, as is the case here).  A dietary supplement shall also be deemed to be adulterated if it contains an ingredient for which there is inadequate information to provide reasonable assurances that such ingredient does not present an unreasonable risk of illness or injury.  *See* § 342(f)(1)(B).

125.  The products at issue here are adulterated within the meaning of § 342(f)(1)(A), or alternatively within the meaning of § 342(f)(1)(B).

126.  Under 21 USC § 331(a), it is illegal to sell adulterated dietary supplements.  Therefore, the products at issue here are illegal to sell.

127.  On April 26, 2023, following the filing of this lawsuit, U.S. Marshalls, at the direction of the FDA, filed a forfeiture complaint in the United States District Court for the Northern District

of Oklahoma and seized 250,000 of Feel Free, 1.5 tanks of the liquid product, and approximately 1000 kilograms of powdered kratom, from Botanic Tonic's manufacturing plant in Broken Arrow, Oklahoma.

128. The Government alleged that Defendant's products were adulterated dietary supplements, the consumption of which can lead to serious health issues including respiratory depression, vomiting, nervousness, weight loss, and constipation. The Government also alleged that withdrawal symptoms may include hostility, aggression, jerky limb movements, and other problems.

129. The Government alleged: "Serious safety concerns exist regarding the effect of kratom on multiple organ systems. Consumption of kratom can lead to a number of negative health impacts, including respiratory depression, vomiting, nervousness, weight loss, and constipation. Kratom consumption has been linked to neurologic, analgesic and sedative effects, addiction, and liver toxicity." The allegations also state that chronic exposure—i.e. repeated use—can result in withdrawal symptoms, including "hostility, aggression, excessive tearing, inability to work, arching of muscle, bones, and jerk[y] limb movements."

130. Substantiating its claim for forfeiture, the Government alleged that "there is inadequate information to provide reasonable assurance that [kratom] does not present a significant or unreasonable risk of injury."

131. Plaintiffs and Class Members would not have purchased the products if they had known that the products were illegal to sell or that they were extremely addictive.

132. Given that the products are illegal to sell, Plaintiffs and Class Members are entitled to a full refund.

**R.     7-Eleven Directs its Franchise Stores to Discontinue Selling Feel Free, Citing an Existing Prohibition That Was Not Communicated to Franchisees**

133. Following the seizure by U.S. Marshalls, 7-Eleven emailed all its franchisees, prohibiting them from selling Feel Free, stating that the sale of Feel Free is prohibited by the 7-Eleven Brand Standards in the Operations Manual, by which all franchises must abide. Specifically, this email was characterized as a "reminder" that 7-Eleven had always prohibited the sale of kratom products,

including Feel Free.

134.    In its email, 7-Eleven demonstrated its prior knowledge of kratom's side effects on consumers, referencing an FDA statement from April 22 that stated there are "no FDA-approved uses for kratom, and the agency has received concerning reports about the safety of kratom."

135.    Yet despite 7-Eleven's prior knowledge of kratom's potential side effects and its statement of an existing policy prohibiting the sale of Feel Free, 7-Eleven never informed its franchises prior to the subject lawsuit that they should not sell Feel Free; nor did it provide guidance or clarification in its Operation Manual that 7-Eleven had a policy against the sale of kratom products like Feel Free.

**S.      Botanic Tonics Redoubles its Lobbying Efforts by Soliciting Positive Testimonials**

136.    Following the Government's seizure, Botanic Tonics sent an email to Class Members soliciting signed statements in exchange for bottles of Feel Free.

137.    The email stated, in relevant part:

> **IMPORTANT: Statements needed!**
>
> **We are looking to collect official statements from passionate lovers of *feel free*,** like yourself, to strengthen our arsenal in supporting legislative efforts in favor of kava and kratom usage. If you are willing to provide a written testimonial, please send us your contact info through this Google Form. **If you decide to opt in, we'll email you a DocuSign to get your testimonial.**
>
> As a token of our appreciation, we will send you some *feel free* samples!



138.    In light of the termination of sales by Amazon and 7-Eleven, two major distributors of Feel

Free, it is foreseeable that consumers suffering from dependency on this product may feel compelled, by their debilitating condition, to accede to Botanic Tonic's offer of complimentary product samples in exchange for their testimonials. This exploitative tactic raises serious ethical and legal concerns, potentially leveraging the vulnerabilities of addicted individuals for the company's strategic gain.

## JOINT VENTURE/SINGLE ENTERPRISE/ALTER EGO ALLEGATIONS

139. Plaintiffs allege that at all relevant times Hydra623 was jointly and severally liable for Botanic Tonics' conduct based on the following information and belief:

140. That Botanic Tonics and Hydra623 were at all relevant times operating as a joint venture, single enterprise and/or alter ego of each other.

141. At all relevant times, Hydra623 operated, managed and controlled Botanic Tonics and its officers, as well as the business, property, and affairs of the company. Hydra623 controls and is the ultimate beneficiary of the income and assets of Botanic Tonics.

142. Hydra623 is the listed manager of Botanic Tonics as registered with the State of California's Secretary of State statement of information. As holding company and manager of Botanic Tonics, Hydra623 acted as the sole authority over financial affairs and treated funds of Botanic Tonics as its own, commingled funds, and otherwise used funds for its own business purposes. Hydra623 and Botanic Tonics agreed to share the profits of Botanic Tonics and commingled funds.

143. At all relevant times there existed a unity of interest and ownership between Hydra623 and Botanic Tonics such that the individuality and separation of these entities ceased to exist.

144. Hydra623 and Botanic Tonics share the same corporate address at 740 Kingman Ave, Santa Monica CA 90402 and corporate officer, Jerry Ross.

145. Therefore, Hydra623 as a joint venture, single enterprise and/or alter ego of Botanic Tonics, is jointly and severally liable for the conduct of Botanic Tonics as alleged herein.

///

///

///

## FIRST CAUSE OF ACTION
### Unfair and Fraudulent Business Acts and Practices
(Bus. & Prof. Code, §§ 17200, *et seq*.)
### Against All Defendants

146. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

147. Plaintiffs bring this claim against all Defendants. Plaintiffs bring this claim against Botanic Tonics for unfair and fraudulent conduct, and against 7-Eleven and Erewhon for unfair conduct.

148. Business & Professions Code sections 17200 *et seq*. prohibits acts of "unfair competition" which is defined by Business & Professions Code section 17200 as including "any unlawful, unfair or fraudulent business act or practice."

149. Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

150. Botanic Tonics' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free.

151. Botanic Tonics' advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom.

152. Erewhon's advertisements and marketing materials contain deceptive statements that

induced customers to believe that Feel Free was "good for you" based on the store's slogan, "if it's here it's good for you."

153. Erewhon's advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom.

154. The labels on Feel Free failed to disclose that it posed significant risks of substantial physical injury resulting from consumption of Feel Free.

155. Botanic Tonics' and Erewhon's conduct were unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

156. 7-Eleven's conduct was unfair and unconscionable in that it failed to exercise its significant control over its franchise stores to ensure proper disclosures or warnings were provided to consumers seeking to purchase Feel Free and, in fact, to prevent franchises from selling Feel Free altogether. 7-Eleven failed to take steps to implement such control or warn consumers even after consumers made repeated complaints about the effects of Feel Free. In turning a blind eye to the sale of Feel Free in its franchise stores, 7-Eleven reaped the rewards in the form of profits. 7-Eleven's conduct caused substantial harm that greatly outweighs the utility from its conduct.

157. Botanic Tonics' and Erewhon's conduct were fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiffs. Reasonable consumers, including Plaintiffs, would have found it material to their purchasing decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiffs' and Class Members'

decisions to purchase Feel Free.

158.     Botanic Tonics and Erewhon owed Plaintiffs and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

159.     Defendants' conduct actually and proximately caused Plaintiffs and Class Members to lose money. Without Defendants' unfair and fraudulent conduct, Plaintiffs and Class Members would not have purchased Feel Free or would have paid less for it. Defendants' misrepresentations and omissions induced Plaintiffs and Class Members to purchase Feel Free they would otherwise not have. Plaintiffs, on behalf of himself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, and all other relief allowable under the law.

160.     Defendant is also liable under the unlawful prong of the UCL because (1) its conduct alleged here violates Cal. Civil Code § 1770(a)(5) and (a)(9); the products are illegal to sell, as alleged above; and (d) and Defendant is liable under the statutory and common law causes of action alleged here.

161.     Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles Plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.  In short,

significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

162. Equitable relief is also appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

**SECOND CAUSE OF ACTION**
False Advertising
(Bus. & Prof. Code, §§ 17500, *et seq.*)
**Against Botanic Tonics and Erewhon**

163. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

164. Plaintiffs bring this cause of action against Botanic Tonics and Erewhon.

165. Business and Professions Code sections 17500, *et seq.* prohibit the publication of any statement concerning the sale of goods that is untrue or misleading. Defendants' conduct, as described above, constitutes the publication of untrue and misleading statements concerning the sale of Feel Free.

166. Defendants' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free.

167. Defendants' advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom. .

168. The labels on Feel Free failed to disclose that it posed significant risks of substantial

physical injury resulting from consumption of Feel Free.

169. Defendants' conduct was unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

170. Defendants' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiffs. Reasonable consumers, including Plaintiffs, would have found it material to their purchasing decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiffs' and Class Members' decisions to purchase Feel Free.

171. Defendants' owed Plaintiffs and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

172. Defendants' conduct actually and proximately caused Plaintiffs and Class Members to lose money. Without Defendants' unfair and fraudulent conduct, Plaintiffs and Class Members would not have purchased Feel Free or would have paid less for it. The misrepresentations and omissions induced Plaintiffs and Class Members to purchase Feel Free they would otherwise not have. Plaintiffs, on behalf of himself and on behalf of the Class, seeks restitution, injunctive relief, attorneys' fees, and all other relief allowable under the law.

173. Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and Class Members are inadequate because they are not equally

prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

174. Equitable relief is also appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiffs would be left without the parity in purchasing power to which they are entitled.

**THIRD CAUSE OF ACTION**
Common Law Fraud
**Against Botanic Tonics**

175. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

176. Plaintiffs bring this cause of action against Botanic Tonics only.

177. Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

178. Botanic Tonics' advertisements and marketing materials for Feel Free contain deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free.

179. Botanic Tonic's advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom.

180. The labels on Feel Free failed to disclose that it posed significant risks of substantial physical injury resulting from consumption of Feel Free.

181. Botanic Tonics' conduct was unfair and unconscionable in that it included (1) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (2) misrepresentations and omissions of material fact concerning the characteristics and safety of Feel Free that offended public policy; were immoral, unethical, and oppressive; and caused substantial harm that greatly outweighs and utility from the conduct.

182. Botanic Tonics' conduct was fraudulent and deceptive because the misrepresentations and omissions at issue were likely to, and in fact did, receive reasonable consumers, including Plaintiffs. Reasonable consumers, including Plaintiffs, would have found it material to their purchasing decisions that Feel Free (1) was not a kava drink but actually contained high concentrations of kratom as a primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Knowledge of these facts was a substantial factor in Plaintiffs' and Class Members' decisions to purchase Feel Free.

183. Botanic Tonics owed Plaintiffs and the Class a duty to disclose these facts because they had superior and exclusive knowledge of the facts; because the facts would be material to reasonable consumers; because Defendants actively concealed them; because Defendants intended for

consumers to rely on the omissions in question; because Feel Free posed an unreasonable risk of substantial bodily injury; and because Defendants made partial representations concerning the same subject matter as the omitted facts.

184. Botanic Tonics knew or should have known that their misrepresentations and omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

185. Botanic Tonics' conduct actually and proximately caused Plaintiffs and Class Members to lose money. Without Defendants' unfair and fraudulent conduct, Plaintiffs and Class Members would not have purchased Feel Free or would have paid less for it. The misrepresentations and omissions induced Plaintiffs and Class Members to purchase Feel Free they would otherwise not have. Plaintiffs, on behalf of themselves and the Class, seek restitution, injunctive relief, attorneys' fees, punitive damages, and all other relief allowable under the law.

### FOURTH CAUSE OF ACTION
Breach of Implied Warranty of Merchantability
### Against Botanic Tonics and Erewhon

186. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

187. Plaintiffs bring this cause of action against Botanic Tonics and Erewhon on behalf of the Class.

188. Botanic Tonics and Erewhon were at all times merchants with respect to Feel Free, which was sold to Plaintiffs and the Class, and were in the business of selling such products.

189. Each bottle of Feel Free comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it will be used. Defendants breached the implied warranty of merchantability because Feel Free was not in merchantable condition when sold, was defective when sold, and did not possess even the most basic degree of fitness for ordinary use.

190. The ordinary intended purpose of Feel Free, and the purpose for which it was marketed, promoted, and sold, was to serve a safe, healthy, and sober alternative to alcohol; and to serve as a kava drink to induce relaxation and focus. Feel Free was not fit for that use, or any other use, because it (1) was not a kava drink but actually contained high concentrations of kratom as a

primary active ingredient; (2) had the potential to be highly addictive; and (3) posed unreasonably risks of substantial bodily injury resulting from its consumption. Due to these and other features, Feel Free is not fit for its ordinary, intended use as a wellness tonic.

191. Plaintiffs and Class Members have had sufficient direct dealings with either Botanic Tonics (via its website) or its agents (including retail sellers) to establish privity of contract between Botanic Tonics and Plaintiffs and Class Members.

192. Plaintiff Rosenfield and Members of the Erewhon Subclass have had sufficient direct dealings with either Erewhon to establish privity of contract between Erewhon and Plaintiff and Erewhon Subclass members.

193. Plaintiffs and Class Members were third-party beneficiaries of Botanic Tonics' agreements with distributors and sellers for the distribution and sale of Feel Free to consumers. Plaintiffs and Class Members were the intended beneficiaries of Botanic Tonics' implied warranties.

194. Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' breach of their implied warranties of merchantability. Had Plaintiffs and Class Members been aware of the unmerchantable condition of Feel Free, they would not have purchased Feel Free, or would have paid less for it.

195. Plaintiffs seek damages in an amount to be proven at trial, as well as any other relief the Court may deem proper.

196. Defendants were provided notice of these issues by numerous complaints made by consumers directly to the company or through their agents within a reasonable amount of time after they discovered that Feel Free was defective and unmerchantable.

### FIFTH CAUSE OF ACTION
Unjust Enrichment
### Against All Defendants

197. Plaintiffs hereby reallege and incorporate by reference all paragraphs above as if set forth in detail herein.

198. Plaintiffs bring this cause of action against all Defendants.

199. Botanic Tonics created and implemented a scheme to create a market for Feel Free and substantially increase its sales through a pervasive pattern of false and misleading statements and

omissions. Botanic Tonics portrayed Feel Free as a safe, healthy, and sober way to relax and focus—with particular emphasis on appealing to youths and individuals who struggled with sobriety—while misrepresenting and omitting key facts concerning Feel Free's kratom content and concentration, addictiveness, and significant risks of substantial physical injury from consuming Feel Free.

200. As discussed above, 7-Eleven and Erewhon had an obligation to ensure that its franchises and stores did not sell Feel Free to consumers without proper warnings or disclosures.

201. Defendants were unjustly enriched as a result of their wrongful conduct, as described above.

202. 7-Eleven and Erewhon requested and received a measurable benefit at the expense of Plaintiffs and the Class Members in the form of profits from 7-Eleven franchise stores and Erewhon stores, which monies were gained by the stores in payment for Feel Free.

203. Botanic Tonics requested and received a measurable benefit at the expense of Plaintiffs and Class Members in the form of payment for Feel Free.

204. Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiffs conferred onto the Defendants at Plaintiffs' detriment.

205. There is no justification for Defendants' enrichment from wrongful conduct would be inequitable, unconscionable, and unjust.

206. Plaintiffs seek disgorgement and restitution of benefits unjustly retained by Defendants. Plaintiffs and Class Members lack and adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

**<u>SIXTH CAUSE OF ACTION</u>**
Consumer Legal Remedies Act
(Cal. Civ. Code §§ 1750, *et seq.*)
**Against Botanic Tonics**

207. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

208. The California Consumer Legal Remedies Act applies to Botanic Tonics' actions and conduct described herein because it extends to transactions that are intended to result, or which

CONSOLIDATED CLASS ACTION COMPLAINT
39

have resulted, in the sale of goods to consumers.

209. Plaintiffs and members of the Class are "consumers" within the meaning of the Act.

210. Feel Free is a "good" within the meaning of the Act.

211. Botanic Tonics' advertisements and marketing materials for Feel Free contained deceptive statements that Feel Free was no more addictive than sugar or caffeine, that it would not induce physiological dependence, that consumption of Feel Free was supportive of sobriety, that its primary/active ingredient was kava, and that there were no side effects of consuming Feel Free. Botanic Tonics used third parties to spread false and misleading information about Feel Free.

212. Specifically, Botanic Tonics stated:
- Feel Free is a "feel good wellness tonic."
- Feel Free is "a kava drink made with kava and other ancient plants known to help with relaxation, productivity, focus and so much more!"
- Feel Free is "a great alternative to alcohol, energy drinks, and synthetic focus enhancers."
- Feel Free is marketed as safe with no need to worry about side effects.
- Feel Free is marketed as non-addictive, creating no more dependence than sugar or caffeine.
- Feel Free is "manufactured in an FDA-regulated facility."
- People rely on Feel Free as part of their overall fitness or sports routine.
- Feel Free is the "official tonic" of Florida State University, the University of Southern California, and the University of Texas athletics.
- Feel Free is a means to quit alcohol.

213. Botanic Tonics' advertisements and representations concealed and failed to disclose that Feel Free contained kratom, that its primary active ingredient was kratom, that Feel Free had the potential to be highly addictive, that consumption of Feel Free could result in a variety of side effects ranging from the moderate to the severe—including coma and death—and that Feel Free had been specially formulated to magnify the opiate effects of kratom.

214. Botanic Tonics has violated the CLRA by, *inter alia*:
- Representing that goods or services have […] characteristics, ingredients, uses, benefits, or quantities which they do not have;
- Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
- Advertising goods or services with intent not to sell them as advertised.

215. These misrepresentations and material omissions constitute unfair, deceptive, and

misleading business practices in violation of the Act.

216. As a direct and proximate result of Botanic Tonics' violation of Cal. Civ. Code § 1750, *et seq.*, Plaintiffs and other Class members have suffered concrete and identifiable harm.

217. Botanic Tonics' deceptive acts and omissions occurred in the course of selling a consumer product and have occurred up to the present. Accordingly, Plaintiffs, on behalf of himself and the Class seek an order enjoining Botanic Tonics and from continuing its unlawful business practices and from such future conduct.

218. Plaintiffs also seek restitution, punitive damages, actual damages, attorneys' fees, and any other relief the Court deems proper.

## SEVENTH CAUSE OF ACTION
New Jersey Consumer Fraud Act
### Against Botanic Tonics

219. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

220. Plaintiff C.C. brings this claim individually and on behalf of New Jersey Class Members against Defendant Botanic Tonics.

221. Plaintiff and Class Members have suffered an injury in fact and lost money or property because of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA").

222. The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

223. Plaintiff C.C. and New Jersey Class Members are consumers who purchased Defendant's kratom products.

224. Defendant engaged in unlawful conduct by deliberately and knowingly failing to disclose the dangers associated with its products, and by failing to disclose that the products are illegal to sell.

225. Defendant intended that Plaintiff and Class Members rely on Defendant's omissions, so that they would purchase the products at issue here.

226. Accordingly, Defendant has engaged in unfair and deceptive trade practices.

227. Defendant's acts and practices described herein offend established public policy because of the harm they cause to consumers outweighs any benefit associated with such practices, and because Defendant fraudulently concealed the unsafe nature of its products.

228. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

229. By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

230. Plaintiff C.C. seeks all available relief under the NJCFA.

**EIGHTH CAUSE OF ACTION**
**Violations of New York General Business Law § 349**
**Against Botanic Tonics**

231. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

232. Plaintiff Teitler brings this claim individually and on behalf of New York Class Members against Defendant Botanic Tonics.

233. GBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

234. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 349.

235. Plaintiff Teitler and the New York Class Members are consumers who purchased products from Defendant for their personal use.

236. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York Class Members been apprised of these facts, they would not have purchased the Products.

237. The foregoing deceptive acts and practices were directed at consumers.

238. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

239. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Teitler and the New York Class Members have sustained from having paid for and used Defendant's Products.

240. As a result of Defendant's violations, Plaintiff and the New York Class Members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

241. On behalf of themselves and other members of New York Class Members, Plaintiff seeks to recover their actual damages or fifty dollars per unit sold, whichever is greater, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION
Violations of New York General Business Law § 350
### Against Botanic Tonics

242. Plaintiffs reallege and incorporate the above allegations by reference as if set forth fully herein.

243. Plaintiff Teitler brings this claim individually and on behalf of New York Class Members against Defendant Botanic Tonics.

244. GBL § 350 prohibits false advertising in the conduct of any business, trade, or commerce. Pursuant to § 350, false advertising is defined as "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect."

245. In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of GBL § 350.

246. Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

247. Plaintiff Teitler and the New York Class Members are consumers who purchased products from Defendant for their personal use.

248. By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, as alleged above. Had Plaintiff and the New York Class Members been apprised of these facts, they would not have purchased the Products.

249. The foregoing deceptive acts and practices were directed at consumers.

250. The foregoing deceptive acts and practices are misleading in a material way. A reasonable consumer would not have knowingly purchased the Products if the products had been truthfully advertised, or they would not have paid the price premium associated with the products. By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 350.

251. Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Teitler and the New York Class Members have sustained from having paid for and used Defendant's Products.

252. As a result of Defendant's violations, Plaintiff and the New York Class Members have suffered damages because: (a) they paid a premium price based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

253. On behalf of themselves and other members of New York Class Members, Plaintiff seeks to recover their actual damages or fifty dollars per unit sold, whichever is greater, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

254. On behalf of himself and other New York Class Members, Plaintiff Teitler seeks to recover actual damages or statutory damages of $500 per unit sold, compensatory, treble and

punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, pray for judgment against Defendants as follows:

A.     An order certifying this case as a class action and appointing Plaintiffs and their counsel to represent the Class;

B.     For restitution and disgorgement to the extent permitted by applicable law;

C.     For an order enjoining Botanic Tonics from continuing to engage in the conduct described herein;

D.     For pre-judgment and post-judgment interest;

E.     For punitive damages under applicable law;

F.     For an award of attorneys' fees, costs and expenses as authorized by applicable law;

G.     For such other and further relief as this Court may deem just and proper; and

H.     For trial by jury on all causes of action so triable.

Dated: February 13, 2024

Shounak S. Dharap
**ARNS DAVIS LAW**
515 Folsom Street, Third Floor
San Francisco, CA 94105
Telephone: (415) 495-7800
Facsimile: (415) 495-7888

Matthew R. Mendelsohn (pro hac vice)
**MAZIE SLATER KATZ & FREEMAN LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 228-9898
E-mail: mrm@mazieslater.com

**BURSOR & FISHER, P.A**.
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: jsmith@bursor.com
        ykrivoshey@bursor.com
*Attorneys for Plaintiffs*