Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
**ARNS DAVIS LAW**
515 Folsom St, 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Anthony L. Label, State Bar No. 205920 (al.team@veenfirm.com)
Theo Emison, State Bar No. 209183 (t.emison@veenfirm.com)
Steven A. Kronenberg, State Bar No. 215541 (al.team@veenfirm.com)
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BOTANIC TONICS LITIGATION<br><br>This Document Relates to All Actions | Master File No. 3:23-cv-01460-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Vince Chhabria<br>Dept: Courtroom 4, 17th Flr. |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on _____ at _____ in Courtroom 4, before the Honorable Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs Romulo Torres, Sam Rosenfeld, Paul Teitler and Christopher Corday ("Plaintiffs") move this Court for preliminary approval of the Class Action Settlement ("Settlement Agreement" or "Settlement," attached as Exhibit 1 to the accompanying Declaration of Shounak S. Dharap) as to the Class and approval of the Settlement.

Plaintiffs request that this Court enter an Order (1) conditionally certifying the Rule 23 settlement class; (2) granting preliminary approval to the proposed Settlement; (3) appointing Plaintiffs as class representatives; (4) appointing Plaintiffs' attorneys as Class Counsel; (5) appointing RG2 as Settlement Administrator; (6) approving the form, content, and method of distribution proposed by counsel to provide notice of the class settlement; (7) and scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and Service Awards to the Named Plaintiffs.

The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declarations of Shounak S. Dharap, Anthony Label, Matthew Mendelson, Neal Deckant, and Joel Smith, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of the Settlement with their moving papers.

## Table of Contents

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND............................................. 1

A.     The Factual Allegations ............................................................................... 1

B.     Procedural Background................................................................................. 2

C.     BT Defendants and Plaintiffs Reach an Agreement .................................... 3

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................... 4

A.     Basic Terms and Value of Settlement.......................................................... 4

B.     Class Definition ........................................................................................... 6

C.     Scope of Release .......................................................................................... 6

D.     Settlement Administration ........................................................................... 7

IV.     ARGUMENT ........................................................................................................ 7

A.     The Settlement Is Fair, Reasonable and Adequate ...................................... 7

1.     Plaintiffs and Their Counsel Have Adequately Represented the Class ......................... 8

2.     The Proposed Settlement Was Negotiated at Arm's Length ................................ 9

3.     The Relief Provided for the Class is Adequate ................................................. 10

4.     The Proposed Settlement Treats Class Members Equitably ......................... 14

B.     The Court Should Provisionally Certify the Class for Settlement.................................... 14

1.     The Requirements of Rule 23(a) Are Satisfied .......................................... 14

2.     The Class Merits Certification Under Rule 23(b)(3) for Settlement Purposes............. 17

3.     The Proposed Notice and Notice Program Complies with Rule 23 and Due Process.. 18

C.     Settlement Class Counsel Should Be Appointed ....................................... 20

i.      Proposed Schedule of Events........................................................................... 20

V.      CONCLUSION..................................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ................................................................................................................................ 13

*Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. 2019) ............................................. 10

*Cotter v. Lyft, Inc.* 193 F.Supp.3d 1030 (N.D. Cal. 2016).............................................................. 8

*Edwards v. National Milk Producers Federation* 2017 WL 3623734 (N.D. Cal., June 26, 2017, No. 11-CV-04766-JSW) .................................................................................................... 21

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018)........................................ 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir.1998) ............................................................. 8

*Hodsdon v. Mars*, 891 F.3d 857 (9th Cir. 2018)........................................................................... 3

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................... 8

*In re JUUL Labs, Inc., Marketing Sales Practices and Products Liability Litigation*, 609 F.Supp.3d 942 (N.D. Cal. 2022) ............................................................................................. 16

*In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050 (C.D. Cal. 2015)............ 13

*In re Tobacco Cases II,* 240 Cal. App. 4th 779 (2015)................................................................. 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................. 9

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................................... 19

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................................... 9

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......................................................................... 16

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.,* No. CV 14-7242-DMG (KSX), 2016 WL 5920345 (C.D. Cal. June 23, 2016) ...................................................................................... 14

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993)................................................. 20

*Vaquero v. Ashley Furniture Indus., Inc.,* 824 F.3d 1150 (9th Cir. 2016)................................... 19

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................... 15, 16

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, (9th Cir. 2010 ................................. 19

1

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................................... 13, 14, 15

Fed. R. Civ. P. 23(b) .................................................................................................. 16

Fed. R. Civ. P. 23(c) .................................................................................................. 17

Fed. R. Civ. P. 23(e) ............................................................................................. 7, 8, 13

Fed. R. Civ. P. 23(g) .................................................................................................. 19

1  **I.    INTRODUCTION**

2      This settlement involves a putative class on behalf of vulnerable consumers who purchased

3  a product that contained an ingredient with addictive, opioid-like properties that Plaintiffs Romulo

4  Torres, Sam Rosenfield, Paul Teitler, and Christopher Corday allege Defendants Botanic Tonics,

5  LLC and Hydra623 Holdings, LLC (collectively, "BT Defendants") failed to disclose, creating a

6  dangerous risk to consumers. BT Defendants manufacture, market, and sell a beverage called Feel

7  Free. Plaintiffs allege that Feel Free was misrepresented in the course of BT Defendants' marketing

8  and sales to consumers, including Plaintiffs.

9      Plaintiffs allege that they were promised a product for which they paid and received one of

10  much lesser value than what was promised. As a result, Plaintiffs allege that they suffered harm

11  from their purchases. BT Defendants deny Plaintiffs' allegations. The parties engaged in hard-

12  fought litigation for over a year with months of motion practice that ultimately led to discussions

13  of negotiation. Finally, the parties agreed to mediate in early 2024 and after multiple full-day

14  mediation sessions and ongoing negotiations with Judge Patrick Walsh (Ret.) of Signature

15  Resolutions the parties reached a tentative resolution in July 2024.

16      This settlement offers substantial recovery to Plaintiffs and putative class members by

17  offering reimbursement of purchases of Feel Free. Under the settlement, BT Defendants will make

18  a payment of $8,750,000 to resolve this putative class action. Given BT Defendants' precarious

19  financial situation, Plaintiffs run the risk of being unable to recover this amount for the class if

20  litigation is further protracted. Accordingly, Plaintiffs request that this Court preliminarily approve

21  the proposed Class Settlement because it is fair, reasonable and adequate, as required under Federal

22  Rules of Civil Procedure Rule 23(e). Plaintiffs also request that this Court enter the proposed order

23  preliminarily approving settlement, authorizing notice, and scheduling a final approval hearing.

24  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

25      **A.    The Factual Allegations**

26      Plaintiffs and members of the putative Class are consumers who purchased a two-ounce

27  drink—"Feel Free"—manufactured, marketed, and sold by Defendant Botanic Tonics, LLC. Dkt.

28

99, Consolidated Complaint ("Compl.") at ¶ 27. Plaintiffs allege that Botanic Tonics made misleading statements and material omissions in its marketing and sale of Feel Free, violating California Business and Professions Code Sections 17200, *et seq.* and 17500, *et seq.*; California Consumer Legal Remedies Act; common law fraud; New York General Business Law Sections 349 and 250; New Jersey Consumer Fraud Act; and breach of implied warranty of merchantability. Plaintiffs bring these same claims against Defendant Hydra623 Holdings LLC, which they allege is a holding company and manager of Botanic Tonics, LLC that operated as an alter ego of Botanic Tonics and, together, as a joint venture (collectively, "BT Defendants"). Dkt. 99, ¶¶ 146-254.

The allegations are as follows: Botanic Tonics marketed and sold Feel Free as a healthy, non-addicting alcohol alternative, targeting vulnerable consumers like college students and individuals struggling with sobriety. Dkt. 99, ¶¶ 1-16. In reality, Plaintiffs allege Feel Free contained kratom, an addicting compound characterized by the FDA as an opioid. *Id*. Botanic Tonics also manipulated Feel Free's formula to magnify the effects of kratom and induce a quicker, longer-lasting, and greater high. *Id*. Botanic Tonics never disclosed to consumers the amount or concentration of kratom in Feel Free, the fact that it manipulated Feel Free's formula to magnify the effects of kratom, or that Feel Free had the potential to cause serious adverse health effects. *Id*. These health effects include addiction and withdrawal, and run the gamut from nausea and trouble sleeping to seizure, organ failure, psychosis, and even death. *Id*. ¶ 45. Induced by Botanic Tonics' representations and omissions, consumers purchased Feel Free. *Id*. ¶¶ 88, 107, 152, 159. As a result of their consumption of the product, many experienced adverse health effects, including addiction. *Id*. ¶ 119, 169. All spent money on a product they would not have purchased had Botanic Tonics accurately represented the contents and effects of Feel Free. *Id*. ¶ 172, 185, 194. BT Defendants categorically deny these allegations. *See, generally,* Dkt. 105, BT Defendants' Answer to Consolidated Complaint.

### B.    Procedural Background

This consolidated case began as two separate actions: (1) the *Torres* action, brought by Plaintiffs Sam Rosenfield and Romulo Torres in the Northern District of California, and the *C.C.*

action, brought by Plaintiffs Christopher Corday and Paul Teitler in the Central District of California.

Plaintiffs Torres and Rosenfield filed the *Torres* action on March 28, 2023 in the Northern District of California against Defendants Botanic Tonics, LLC and 7-Eleven, Inc. Dkt. 1. On May 2, 2023, Plaintiff filed a First Amended Complaint ("FAC") to add nationwide claims against Defendants. Dkt. 11. On July 28, 2023, Plaintiffs filed a Second Amended Complaint ("SAC") to add Named Plaintiff Sam Rosenfield and Defendants Hydra623 Holdings, LLC and Nowhere Partners, LLC. Dkt. 26. Defendant 7-Eleven, Inc. filed its motion to dismiss on August 11, 2023. Dkt. 31. After fully briefing the issue, 7-Eleven, Inc's motion to dismiss came on hearing on October 19, 2023 and the court denied the motion. Dkts. 52, 82.

Plaintiff Corday filed the *C.C.* action on May 15, 2023 in the Central District of California, *C.C. v. Botanic Tonics*, C.D. Cal. Case No. 2:23-cv-3687. Declaration of Neal Deckant ("Deckant Decl."), ¶ 2. The parties then began the discovery process and exchanged written discovery. *Id.* On August 14, 2023, the *C.C.* matter was transferred to the Northern District of California and assigned Case No. 3:23-cv-04136. *Id.* On December 22, 2023, Plaintiffs in both matters moved to consolidate the two actions for all purposes. Dkt. 83. These matters were consolidated on January 30, 2024 and Plaintiffs filed a consolidated class action complaint on February 23, 2024. Dkt. 99.

Meanwhile, 7-Eleven filed its Motion to Certify under 28 U.S.C. § 1292(b) for interlocutory review of the Court's order on its motion to dismiss. Dkt. 86. 7-Eleven argued that this Court misinterpreted the Ninth Circuit opinion in *Hodsdon v. Mars*, 891 F.3d 857 (9th Cir. 2018), a controlling issue of law on which its motion to dismiss was hinged. See Dkt. 86. While this Court granted certification for interlocutory review, the Ninth Circuit denied 7-Eleven's permission to appeal. Dkts. 97, 106.  This Court granted the parties' stipulated request to dismiss Defendants 7-Eleven and Nowhere Partners, LLC on November 4, 2024. Dkt. 117.

### C.    BT Defendants and Plaintiffs Reach an Agreement

Plaintiffs engaged in settlement discussions with BT Defendants over the course of 2024. Declaration of     S. Dharap ("Dharap Decl")., ¶ 8. Plaintiffs and Botanic Tonics exchanged

extensive information and data relating to Class Members' purchase histories, marketing and advertising materials, social media engagement, and Botanic Tonics' financial condition. *Id*. Plaintiffs noticed and set the depositions of six executives and officers, but ultimately agreed to hold off on depositions until after the mediation on April 4, 2024. *Id*.

After extensive preparation and a lengthy mediation brief by Plaintiffs, the Parties participated in a full-day, in-person mediation on April 4, 2024, with Judge Patrick Walsh, formerly Chief Magistrate Judge in the Central District of California. Dharap Decl., ¶ 9. By the end of the day, no settlement agreement was reached, but the parties continued negotiating informally and through Judge Walsh of Signature Resolution. *Id*.

After making some progress towards a resolution, the Parties agreed to a second mediation and participated in a full-day, Zoom mediation on May 14, 2024. *Id*. ¶ 10. At the end of the day of the second mediation, the Parties had made significant progress but had not yet reached a resolution. *Id*

With the assistance of Judge Walsh, the Parties continued to negotiate and ultimately executed a Settlement Term Sheet for a tentative settlement on July 1, 2024. Over the next two months, the Parties negotiated the language of the proposed settlement, executing the Settlement Agreement on September 9, 2024. Dharap Decl., ¶¶ 12-13.

## III.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Basic Terms and Value of Settlement

The terms of the Settlement are detailed in the Settlement Agreement, which fully resolves the claims of the Class against all Defendants. The essential terms are as follows:

- BT Defendants will pay an all-in amount of $8,750,000 ("Gross Settlement Fund") in exchange for the settlement and release of the claims asserted in this matter. Ex. 1, Settlement Agreement, ¶ 1.22, 2.1(a).

- The Settlement Class Members are defined as all persons in the United States who purchased the product "Feel Free" anytime from March 28, 2019, through and including the date of preliminary approval of the Settlement. *Id*., ¶ 1.7.

- Class Counsel will request an award of attorneys' fees of up to $2,916,666.66 (33.33% of the Gross Settlement Fund) plus actual expenses of litigation estimated to be $35,000. *Id*. ¶ 2.3.

- The settlement administrator will be paid settlement administration costs, estimated to be $222,169. *Id*. ¶ 2.5.

- Subject to Court approval, up to $20,000 ($5,000 each) of the settlement fund will be paid as "Service Awards" to Plaintiffs Torres, Rosenfield, Teitler, and Corday in recognition of their service to the Settlement Class Members. *Id*. ¶ 2.2.

- The distribution to Class Members will be based on a *pro rata* share of the Settlement amount on a per-bottle basis, less attorneys' fees, costs and expenses, and any other claims or administration expenses associated with administering the Settlement. *Id*. ¶ 2.1(b). Class Members may submit claims for reimbursement of up to 5 bottles of Feel Free purchased within the Class Period without proof of purchase. Class Members may submit reimbursement for more than 5 bottles of Feel Free purchased within the Class Period upon submission of proof of purchase for each bottle purchased. Class Members shall have a maximum of 120 days to submit a claim with proof of purchase(s) from the date the first notice is disseminated. *Id.*

- If a Participating Class Member does not cash their check within 90 days from the date the Settlement Payment is first issued, the proceeds will revert to the Common Fund and be distributed to the *cy pres* recipient of Western Center of Law and Poverty, to be approved by the Court. *Id*. ¶ 2.1(d)–(e). Plaintiffs propose a second round of pro rata distribution to class before remains in common fund are distributed to the *cy pres* recipient. There will be no reversion of funds to Defendant.

- The Notice Program includes multiple forms of notice, including notice by email and online publication. *Id*. ¶ 4.3. Each form of notice will include (a) contact

information for Class Counsel, (b) the website address (to be maintained by the Claims Administrator), (c) instructions on how to access the case docket via PACER or in person at any of the court's locations, (d) the date and time of the Final Approval hearing, and (e) a note advising Class Members to check the settlement website or the Court's PACER site to confirm that the hearing date has not been changed. *Id*.

- Non-monetary relief provided by the Settlement includes disclosure of potential side effects of Feel Free on all product labels that contain kratom, as well as on social media advertising, including Instagram posts—the disclosure will read:

    > Warning: This product contains leaf kratom which can become habit-forming and cause serious adverse health effects. Consider avoiding this product if you have a history of substance abuse.

    *Id*. ¶ 2.8.

## B.    Class Definition

For the limited purposes of this Settlement, the Parties seek conditional certification of the nationwide Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3). The Class is defined as: all persons in the United States who purchased the product "Feel Free" anytime from March 28, 2019, through and including the date of preliminary approval of the Settlement by the Court ("Class Period"). Ex. 1, ¶ 1.7. Any judicial officer to whom the Action is assigned is excluded from the Class.

## C.    Scope of Release

The release shall include all claims based on a substantially similar factual predicate as those underlying the allegations and claims asserted in the Action *other than claims for personal injury*, which are specifically excluded from this release. Ex. 1, ¶ 1.25 (emphasis added). Plaintiffs and each member of the Class who has not timely and validly requested exclusion from the Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives, will be deemed to have released BT Defendants and the Released Parties. Ex. 1, ¶ 5.4. The scope of this release conforms with the federal standard articulated in *Hesse v. Sprint Corp.* which provides that settlement agreements "may preclude a party from bringing a related

claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.* 598 F.3d 581, 590 (9th Cir. 2010) (quoting *Williams v. Boeing Co.* 517 F.3d 1120, 1133 (9th Cir. 2008)). Here, the released claims are specifically defined as "all claims that have or could have been asserted in the Actions, whether known or unknown, against the Released Parties relating to violations of violations of the Cal. Bus. & Prof. Code §§ 17200, et seq.; violations of the Cal. Bus. & Prof. Code §§ 17500, et seq.; common law fraud; breach of implied warranty of merchantability; unjust enrichment; violations of Cal. Civ. Code § 1750, et seq.; violations of the New Jersey Consumer Fraud Act; violations of the New York GBL §§ 349 or 350; or any federal, state, or administrative rules applicable to the sale of Feel Free." Ex. 1., ¶ 1.25. All claims must be based on "a substantially similar factual predicate as that underlying the allegations and claims asserted in the Action[.]" *Id.*

### D.    Settlement Administration

The parties have agreed to use RG2, whose administration costs are currently projected by the parties to be approximately $222,169 to administer the Settlement. The Settlement Administrator and Defendants will distribute the notice via email and online publication (i.e. Reddit post); host a settlement website; evaluate claims; calculate individual settlement payments; and prepare and issue all disbursements to Class Members and Class Representatives. Ex. 1, ¶¶ 2.1, 2.2.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable and Adequate

The Court should approve the Settlement because it is fair, reasonable, and adequate, and because it mitigates—for all parties—the large expense and risk of pursuing this action through further discovery, summary judgment, and arbitration (or trial). "Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole

is fair, reasonable, and adequate." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); see also, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). Typically, at the preliminary stage, courts ask whether the agreement "falls within the range of possible approval." *Cotter v. Lyft, Inc.* 193 F.Supp.3d 1030, 1036 (N.D. Cal. 2016). However, the inquiry at the preliminary stage should weigh "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Cotter,*193 F.Supp.3d at 1035 (quoting *Hanlon*, 150 F.3d at 1026.).

A review of these factors favors the proposed Settlement and should give the Court confidence that it will be able to grant final approval after Class Members are given an opportunity to express their views.

### 1.    Plaintiffs and Their Counsel Have Adequately Represented the Class

The first procedural concern asks whether the proposed settlement was the result of adequate representation. Fed. R. Civ. P. 23(e)(2)(A). One of the hallmarks of adequate representation is a thorough investigation and assessment of the class members' claims. See *id.*, Adv. Comm. Note. Formal discovery is not required, but counsel should have sufficient information to make informed decisions at the bargaining table. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, Class Counsel were well prepared to negotiate a beneficial settlement for Class Members. In addition to comprehensive pre-filing investigation, they obtained early discovery (formally and informally in connection with mediation) that went to the heart of the case. Class Counsel reviewed thousands of pages of documents, as well as photographs, videos, and extensive spreadsheets detailing data regarding the class, purchases, advertisements, marketing, and sales. Class Counsel also interviewed hundreds of Class Members and consulted with multiple subject matter experts. Class Counsel is comprised of attorneys with substantial experience in complex

class action litigation, including wage and hour cases. Dharap Decl. ¶¶ 21-23. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate. *Id.* ¶ 25; Deckant Decl., ¶ 5; Declaration of Anthony Label ("Label Decl."), ¶ 9; Declaration of Joel Smith ("Smith Decl."), ¶ 6; Declaration of Matthew Mendelsohn ("Mendelsohn Decl.") ¶ 12.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

When a settlement has resulted from arm's length negotiations conducted by competent counsel after appropriate discovery, a court begins its analysis with a presumption that the settlement is fair and reasonable. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999). Here, Plaintiffs engaged in arm's length settlement discussions with BT Defendants. Before agreeing to mediation, the parties exchanged substantial information and data, including marketing and advertising materials, social media engagement, Botanic Tonics' financial condition, and Class Members' purchase histories. Dharap Decl., ¶¶ 8-10.

Plaintiffs thoroughly prepared for the April 4, 2024, mediation and submitted an extensive mediation brief before the full-day mediation with Judge Patrick Walsh, formerly Chief Magistrate Judge in the Central District of California. *Id.* ¶ 9. By the end of the day, no settlement agreement was reached, but after making some progress towards a resolution, the Parties agreed to a second mediation and participated in a full day, Zoom mediation on May 14, 2024. *Id.*, ¶ 10. At the end of the day, the Parties had made significant progress but had not yet reached a resolution. *Id.*

With the assistance of Judge Walsh, the Parties continued to negotiate and ultimately executed a Memorandum of Understanding for a tentative settlement on July 1, 2024. *Id.*, ¶ 12. Over the next two months, the Parties negotiated the language of the proposed settlement, executing the Settlement Agreement on September 9, 2024. *Id.*

Taking into consideration both counsel's preparation for mediation and the involvement of a highly qualified mediator, the parties' proposed settlement should be viewed as procedurally fair. Fed. R. Civ. P. 23(e)(2)(B), 2018 Adv. Comm. Note.

### 3.    The Relief Provided for the Class is Adequate

The Settlement provides substantial relief for the Class. Under the Settlement, BT Defendants will pay a total of $8,750,000. An estimated $5,576,456 of that Gross Fund will go directly into the hands of the Settlement Class Members (the Net Settlement Fund). Dharap Decl., ¶ 14. This represents an estimated net recovery of 63.7% of the gross settlement. *See Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1011 (E.D. Cal. 2019) (a 42% recovery in settlement is exceptional).

The Net Settlement Fund will be distributed via First Class mail as a check payment. Ex. 1, ¶ 2.1. If a Participating Class Member does not cash their check within 90 days from the date the Settlement Payment is first issued, the proceeds will revert to the Common Fund and be distributed to a *cy pres* recipient to be approved by the Court. *Id*. ¶ 2.1(d)–(e). The parties propose Western Center for Law and Poverty as a *cy pres* recipient. There will be no reversion of funds to Defendant. *Id*.

### a)    Risks, Costs and Delay Associated with Further Litigation

The greatest risk to Plaintiffs' case was the potential that protracted litigation would result in Botanic Tonics' inability to satisfy a judgment. A defendant's financial condition can be the predominating factor in determining the fairness of a class settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)*; see also, Spann v. J.C. Penney Corp*., 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (finding settlement fair where, *inter alia*, "the parties were litigating and negotiating 'under a huge cloud of uncertainty concerning [the defendant's] financial stability'" that created a very real risk that plaintiff would recover nothing at trial even if she prevailed.)

Over the course of the mediations, BT Defendants provided Plaintiffs with confidential financial information showing year-over-year revenue and expenses. Dharap Decl., ¶¶ 8-10. BT Defendants also shared documents showing the lack of sufficient insurance coverage applicable to these claims. *Id*. Based on this review, as well as additional information shared through the mediator relating to the company's financial outlook, Class Counsel determined it was probable that BT Defendants would be unable to satisfy a judgment in favor of the Class, especially as the

litigation costs and attorneys' fees continued to increase as the case moved towards class certification, expert discovery, and trial. *Id*.

Additionally, the United States Government's renewed interest in Botanic Tonics and the alleged harmful effects of Feel Free gave Class Counsel reason to believe that delay in the litigation could prejudice the Class. Following the filing of the *Torres* matter, U.S. Marshalls, at the direction of the FDA, filed a forfeiture complaint in the United States District Court for the Northern District of Oklahoma and seized 250,000 units of Feel Free, 1.5 tanks of the liquid product, and approximately 1,000 kilograms of powdered kratom from Botanic Tonics' manufacturing plant in Broken Arrow, Oklahoma. *See U.S. v. 250,000 filled bottles of liquid product*, Case No. 23-cv-168-JFH-CDL, Dkt. 2, Complaint (N.D. Ok. 2023). The Government alleged that Botanic Tonic's products were adulterated dietary supplements, the consumption of which can lead to serious health issues.

Plaintiffs and Class Counsel were concerned that further action by the Government to curb Botanic Tonics' sale and manufacture of Feel Free, including further seizure of product or assets, would—while ultimately aligning with this case—significantly limit the ability of the Class to recover a meaningful monetary amount, if any, from BT Defendants. Dharap Decl., ¶ 11. Accordingly, Plaintiffs believed time was of the essence in reaching a resolution that would bring meaningful monetary relief to the class.

The second-most heavily weighted risk was the risk that class certification would be denied because of individualized issues in determining damages. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (damages must be capable of measurement on a classwide basis).

First, although Plaintiffs sought restitution under a full refund model, such a model is not a sure thing. To recover a full refund under California law, a plaintiff must generally show that the product conferred no benefit to consumers. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (2015) (holding that a full refund was unavailable because deceptively marketed cigarettes still conferred some value to consumers).

Thus, the more likely method of available damages was the price premium, or benefit-of-bargain model. The model is challenging to establish in situations where the product at issue is unique and has no other analog on the market. This is because a determination of price premium requires consideration of supply-side factors—that is, the prices and sales history of the product at issue and comparable products. *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018). An analysis that only considers demand side factors—consumer willingness to pay—does not meet the test for predominance under *Comcast*. *Id.*

Without similar comparable products, it would have been challenging to ensure that the results of the conjoint analysis would reflect the market. Since comparable products provide an anchor to realistic market behavior by showing what consumers have historically paid for comparable products without the misrepresentation or omission; without comparable products, Plaintiffs' conjoint analysis could have risked too-heavily relying on demand-side factors. Such an analysis could have risked denial of class certification. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1122 (C.D. Cal. 2015) (damages model that only incorporated consumers' willingness to pay did not meet *Comcast* test because "it does not permit the court to calculate the *true market price* of [the product] absent the purported misrepresentations"); *see also Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014) (rejecting a damages model in a patent case that did not "reflect the real-world interaction of supply and demand for infringing and noninfringing devices"). While Plaintiffs remain confident that they would have prevailed at class certification, this risk merited serious consideration in reaching this resolution.

Finally, there was a risk that BT Defendants could defeat class certification through a showing that class members did not uniformly rely on the alleged misleading advertising or nondisclosures on the labelling. Defendants argued that many class members sought out Feel Free precisely because it contained kratom, and that others did not rely on any of the social media advertisements in making their purchase decisions. Dharap Decl. ¶ 11. Defendants also pointed to the diversity and number of social media advertising campaigns, which included different

messaging strategies, touting Feel Free as beneficial in different ways: as an alcohol alternative; as a means to gain a euphoric feeling or buzz; as a means to gain energy and focus for athletics or study; or as a means to relax like yoga or meditation. *Id*. While Plaintiffs argued that these were distinctions without a difference given that the representations were uniformly alleged to be untrue, there was nevertheless a possibility that this diversity in marketing would be reflected in consumer choice. Indeed, class certification has been denied where surveys of consumers show a variety of reasons behind their purchasing decisions that are not tied to a uniform representations. *See Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.,* No. CV 14-7242-DMG (KSX), 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) (denying class certification where the defendant produced surveys showing that a percentage of consumers relied on friends, family, and their own research in purchasing the allegedly mislabeled product). This was a concern for Class Counsel and Plaintiffs here.

### b) Distribution of Settlement Fund is Designed to Be Effective

The $8,750,000 settlement fund will be used to compensate Settlement Class Members, pay service awards to Named Plaintiffs, pay attorneys' fees and costs to Class Counsel, and pay for settlement administration costs. None of the settlement funds will revert to Defendant. Participating Class Members will receive a Settlement Payment of their pro rata share of any amounts paid into the Common Fund on a per-bottle basis, net of any attorneys' fees, costs, expenses, or any other claims or administration expenses associated with administering the Settlement, until the entirety of the Common Fund is exhausted. Class Members will be permitted to submit claims for reimbursement of up to 5 bottles of Feel Free Wellness Tonic purchased within the Class Period without proof of purchase. Class Members will be permitted to submit reimbursement of greater than 5 bottles of Feel Free Wellness Tonic purchased within the Class Period upon submission of proof of purchase for each bottle purchase claimed. Class Members shall have a maximum of 120 days to submit a claim with proof of purchase(s) from the date the first notice is disseminated.

#### 4.     The Proposed Settlement Treats Class Members Equitably

No Class Member is treated differently from any other under the Settlement Agreement. See Fed. R. Civ. P. 23(e)(C)-(D). Each Class Member will receive a pro rata share of the settlement funds based upon the amount of "Feel Free" purchased and the documentation submitted to substantiate such purchase(s). As discussed above, each Settlement Class Member is eligible for reimbursement of up to 5 bottles of Feel Free without proof of purchase, and reimbursement for all bottles of Feel Free purchased with proofs of purchase. *See* Ex. 1, ¶ 2.1(b). Thus, the amount offered in Settlement is reasonable and fair.

### B.     The Court Should Provisionally Certify the Class for Settlement

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

#### 1.     The Requirements of Rule 23(a) Are Satisfied

Under Rule 23(a), Plaintiffs must demonstrate: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

##### *a)     Numerosity*

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Feel Free has been sold online, through multiple retailers, and on college campuses. A vast number of individuals have purchased Feel Free units online and in stores across the United States. Defendants represented here the Settlement Class includes between 30,078 to 50,130 individuals, making joinder of all Settlement Class Members impractical, and satisfying numerosity.

*b)    Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Class wide resolution "means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). A plaintiff satisfies the commonality requirement by demonstrating the presence of questions of law and fact that could be determined on a "common basis based on classwide evidence and proof." *In re JUUL Labs, Inc., Marketing Sales Practices and Products Liability Litigation*, 609 F.Supp.3d 942 (N.D. Cal. 2022). Courts construe the commonality requirement permissively, and all questions of law and fact need not be common to satisfy subsection 23(a)(2). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Even a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc.*, 564 U.S. at 369.

Here, common questions of fact and law satisfy Rule 23(a)(2). These questions include whether advertisement for Feel Free were misleading, fraudulent, deceptive, unfair, or unconscionable; whether Botanic Tonics targeted individuals with a history of addiction; whether the targeting of individuals with a history of addiction in the marketing or sale of Feel Free was misleading, fraudulent, deceptive, unfair or unconscionable; and whether Feel Free was in merchantable condition, defective, and/or possessed the basic fitness for ordinary use when sold to Class Members. These questions depend on Defendants' conduct and the nature of Defendants' policies and procedures regarding Feel Free. Accordingly, the commonality factor favors class certification.

*c)    Typicality*

Plaintiffs' claims must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (internal quotation marks omitted). "Under the rule's permissive standards,

representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims are typical of the Class Members' because all injuries stem from the same alleged conduct by Defendants. That is, Plaintiffs and Class Members have all suffered the same injuries—they all received a product of lesser value than represented by Defendants. As described above, Defendants' alleged misrepresentations and omissions of material information regarding Feel Free's potential addictiveness, and the health risks associated therewith are similarly alleged on behalf of the Class. Class Members similarly relied on the same misrepresentations and omissions made about Feel Free in their purchases of the product and therefore, suffered a similar injury—the received a product of lower value than represented and perceived.  Accordingly, Plaintiff's claims are typical of the class for purposes of settlement.

d)    *Adequacy*

Rule 23's adequacy requirement is satisfied where a representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. Rule 23(a)(4). Courts in the Ninth Circuit consider two questions in evaluating this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs' and Class Counsel's interests are aligned and do not contain conflicts of interest to those of the Class. Named Plaintiffs and Class Counsel share the goal of remedying the alleged damage suffered by the Class. Dharap Decl., ¶¶ 24-25. Named Plaintiffs have been committed to their representation of the Class through this litigation, communicating regularly with Class Counsel, continuously providing information about their experiences and accounts of other Class Members, and providing their input during settlement discussions. *Id*.; Declaration of Romulo Torres ¶¶ 2-4; Declaration of Sam Rosenfield, ¶¶ 2-4; Declaration of Christopher Corday ¶¶ 2-4. Named Plaintiffs provided Class Counsel with documents, photographs, bills, videos, medical records, and various paraphernalia—all of which were critical in the negotiation of a classwide

settlement. Dharap Decl, ¶ 24; Torres Decl., ¶¶ 2-4; Rosenfield Decl., ¶¶ 2-4; Corday Decl., ¶¶ 2-4.

Class Counsel, for their part, have vigorously prosecuted this action, investigating and litigating this case for over a year and a half, including engaging in regular communication with Plaintiffs, partaking in case management conferences with Defendants, and reviewing thousands of pages of documents in the course of ongoing, contentious negotiations. Dharap Decl., ¶¶ 8-10; 24-25. Class Counsel have extensive experience in prosecuting complex civil matters and class actions and have been approved as class counsel in multiple class actions in state and federal courts. *Id*., ¶¶ 21-22; Deckant Decl., ¶ 3; Label Decl., ¶¶ 3-7; Mendelsohn Decl., ¶¶ 3-10; Smith Decl., ¶ 3. Their experience and efforts ultimately resulted in an efficient and effective settlement that is fair, reasonable, and adequate. Dharap Decl., ¶ 25; Deckant Decl., ¶ 5; Label Decl., ¶ 9; Mendelsohn Decl., ¶ 12; Smith Decl., ¶ 6.

### 2. The Class Merits Certification Under Rule 23(b)(3) for Settlement Purposes

Rule 23(b)(3) is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under the predominance prong of Rule 23(b)(3), "[w]hen common questions present a significant aspect of the case, and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Here, common questions predominate because all Class Members' claims arise under the same laws—Cal. Bus. Prof. Code §§ 17200, *et seq.*, Cal. Bus. Prof. Code §§ 17500, *et seq*., common law fraud, breach of implied warranty of merchantability, unjust enrichment, Cal. Civ. Code § 1750, et seq., New Jersey Consumer Fraud Act, and New York GBL §§ 349 or 350—and same alleged conduct by BT Defendants. Because Plaintiffs' claims are focused on the nature of Defendant's policies and procedures regarding how

they advertised Feel Free Tonics, they are well-suited for class treatment. Defendant's liability can be established largely, if not entirely, through class-wide evidence. To the extent individual Class Members spent different amounts of money on varying quantities of Feel Free Tonics products, that variation goes to the degree of their damages, and it is well established that the need for individualized findings as to the amount of damages is not enough to defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

Under the superiority prong of Rule 23(b)(3), the Court must determine whether a class action is the most efficient and effective means of resolving the controversy. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, class treatment is superior given that consumers across the entire country were affected in the same way by the same advertisements and the judicial efficiency associated with resolution of these claims in one fell swoop.

### 3. The Proposed Notice and Notice Program Complies with Rule 23 and Due Process

Due process requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Under Rule 23(c), the notice must clearly and concisely describe the nature of the action and class definition, inform class members that they may enter an appearance through an attorney if the member so desires, detail the manner through which a class member may opt-out of the settlement, state the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B).

Notice will be disseminated via email and online publication to Class Members based on Defendant Botanic Tonic's records—sales of Feel Free through Botanic Tonics' website collected email addresses. Ex. 1., ¶ 4.3(i). Additionally, notice will be posted online in social media forums

such as Reddit, to ensure a wider exposure to the customer base. *Id.*, ¶ 4.3(j) This notice is reasonably calculated to reach all Class Members and apprise them of the Settlement.

The proposed Notice itself includes information about the nature of the litigation, the definition of the Settlement Class, the claims and issues in the litigation, and the claims that will be released. See, generally, Ex. B to Ex. 1. The proposed Notice describes the recovery to be provided under the Settlement, including the approximate individual settlement amount to be paid to the respective Class Member, and advises Class Members how to object to the Settlement, their right to appear through counsel if desired, the binding effect of a judgment, and the procedures and deadlines to exclude themselves from the Settlement. *Id.* The proposed Notice also sets forth the attorneys' fees, litigation expenses, and class representative service award that Class Counsel will seek court approval of (and how Settlement Class Members can review the fee petition when it is eventually filed), and the date, time, and location of the final approval hearing. *Id.* This information, and the manner in which it is presented in the proposed Notice, satisfies the requirements of Rule 23(c)(2)(B). *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374 (9th Cir. 1993) [Rule 23(c)(2) requires the best notice practicable under the circumstances]. The notice program is designed to mirror Defendants' online presence and interaction with putative Class Members by sending notice via email addresses (collected by Defendants) and online publication. Ex. 1, ¶ 4.3; *see also*, *Edwards v. National Milk Producers Federation* 2017 WL 3623734, at *2 (N.D. Cal., June 26, 2017, No. 11-CV-04766-JSW), *aff'd sub nom. Edwards v. Andrews* 846 Fed.Appx. 538 (9th Cir. 2021) (online notice program preliminarily approved where notice disseminated via online advertising campaign and press release).

As the proposed Notice and notice plan meet the standards under Rule 23(c)(2)(B) and are typical of notice plans in similar consumer class actions, they should be approved by the Court.

Class Counsel also requests the Court appoint the parties' mutually selected Settlement Administrator, RG2, as the Settlement Administrator to effectuate the notice plan approved by the Court and to administer the Settlement. Class Counsel solicited bids from three potential administrators and determined that RG2 was the most effective and capable—estimating

administration costs within $222,169 and ensuring that all the requirements of the proposed Notice plan would be carried out. Dharap Decl. ¶ 16. RG2 is an experienced class action administrator that has successfully managed numerous nationwide consumer class action settlements, including noticing, class identification, and online media planning. *Id.*

In this case, the Administrator will effectively and efficiently administer notice to as many Class Members as possible. Ex. 1, ¶ 1.6; 4.3. Accordingly, the Court should approve the Notice plan and settlement administrator.

### C.    Settlement Class Counsel Should Be Appointed

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Here, Class Counsel have extensive experience prosecuting complex class action cases, and specifically class actions brought under the UCL. Dharap Decl. ¶¶ 21-22; Deckant Decl., ¶ 3; Label Decl., ¶¶ 3-5; Mendelsohn Decl., ¶¶ 3-10; Smith Decl., ¶ 3. As described in their supporting declarations, Class Counsel meet all Rule 23(g)(1)(A) factors. Accordingly, the Court should appoint Arns Davis Law, Smith Krivoshey, Mazie Slater Katz & Freeman, LLC, Bursor & Fisher, PA and The Veen Firm as Class Counsel.

### i.    Proposed Schedule of Events

The parties propose the following schedule of events leading up to the final approval hearing:

| Event | Date |
|-------|------|
| Defendants to provide Class List to Settlement Administrator | Within 30 days after the Court's Entry of Preliminary Approval Order ("Preliminary Approval Date") |

| Notice emailed to the Settlement Class (the "Notice Distribution Date") | Within 30 days after the Court's Entry of Preliminary Approval Order ("Preliminary Approval Date") |
|---|---|
| Notice published online to the Settlement Website and online forum (the "Notice Distribution Date") | Within 30 days after the Court's Entry of Preliminary Approval Order ("Preliminary Approval Date") |
| Last day for Settlement Class Members to opt out or object to the proposed Settlement | 90 days after the Court's Entry of Preliminary Approval Order ("Preliminary Approval Date") |
| Date by which Class Counsel is to file Motion for Final Approval of Settlement and Petition for Award of Attorneys' Fees, Expenses and Service Awards | No later than 14 days prior to the Final Approval Hearing |
| Last day for Class Members to comment on or object to Petition for Award of Attorneys' Fees, Expenses and Service Awards | Date of Final Approval Hearing |
| Final Approval Hearing | At least 110 days after the Court's Entry of Preliminary Approval Order |

## V.    CONCLUSION

For the reasons set forth above, the Court should preliminarily approve the proposed Settlement and direct notice to be distributed. The Court should also preliminarily certify, for settlement purposes only, the putative Class, appoint Plaintiffs and their Counsel to represent the Class, and set the date for the final approval hearing.

1    Dated: January 21, 2025              ARNS DAVIS LAW

2

3                                          Shounak S. Dharap

4                                          Shounak S. Dharap
                                           Katherine A. Rabago
5                                          515 Folsom St., 3rd Floor
                                           San Francisco, CA 94109
6                                          Tel: (415) 495-7800
                                           Fax: (415) 495-7888
7

8                                          **THE VEEN FIRM, P.C.**
                                           Anthony Lawrence Label
9                                          20 Haight Street
                                           San Francisco, CA 94102
10                                         415-673-4800
                                           Fax: 415-771-5845
11

12                                         **SMITH KRIVOSHEY**
                                           Joel D. Smith (State Bar No. 244902)
13                                         Yeremey Krivoshey (State Bar No. 295032)
                                           166 Geary St
14                                         San Frnacisco CA 94108
                                           Tel: (415) 839-7000
15

16                                         **MAZIE SLATER KATZ & FREEMAN, LLC**
                                           Matthew R. Mendelsohn
17                                         103 Eisenhower Parkway
                                           Roseland, New Jersey 07068
18                                         Tel:  (973) 228-0391
                                           Fax: (973) 228-0303
19

20                                         **BURSOR & FISHER, P.A.**
                                           Neal J. Deckant
21                                         1990 North California Blvd., 9th Floor
                                           Walnut Creek, CA 94596
22                                         Tel: 925-300-4455
                                           Fax: 925-407-2700
23

24

25                                         *Counsel for Plaintiffs and the Proposed Class*

26

27

28