Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
Katherine A. Rabago, State Bar No. 333374 (kar@arnslaw.com)
Robert S. Foss, State Bar No. 275489 (rcf@arnslaw.com)
**ARNS DAVIS LAW**
515 Folsom St, 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Neal J. Deckant
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel: 925-300-4455
Fax: 925-407-2700

*Attorneys for Plaintiffs*
*Additional Attorneys on Following Page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| IN RE BOTANIC TONICS LITIGATION | Master File No. 3:23-cv-01460-VC |
|---|---|
| This Document Relates to All Actions | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Vince Chhabria<br>Dept: Courtroom 4, 17th Flr.<br>Hearing Date: August 28, 2025<br>Hearing Time: 2:00 p.m. |

Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
**SMITH KRIVOSHEY**
166 Geary St
San Francisco CA 94108
Tel: (415) 839-7000

Anthony L. Label, State Bar No. 205920 (al.team@veenfirm.com)
Theo Emison, State Bar No. 209183 (t.emison@veenfirm.com)
Steven A. Kronenberg, State Bar No. 215541 (al.team@veenfirm.com)
**THE VEEN FIRM, P.C.**
20 Haight Street
San Francisco, CA 94102
Tel: (415) 673-4800
Fax: (415) 771-5845

Matthew R. Mendelsohn
103 Eisenhower Parkway
**MAZIE SLATER KATZ & FREEMAN, LLC**
Roseland, New Jersey 07068
Tel:  (973) 228-0391
Fax: (973) 228-0303

**NOTICE OF MOTION**

To the Court, all parties, and their Counsel of record:

Please take notice that on August 28, 2025, at 2:30 p.m., before the Honorable Vince Chhabria, in Courtroom 4, 17th Floor, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Romulo Torres, Sam Rosenfield, C.C., and Paul Teitler ("Plaintiffs") by and through their undersigned counsel, will and hereby do move the Court for an order pursuant to Federal Rule of Civil Procedure 23(e) for an order granting final approval of the proposed Class Action Settlement Agreement and Release ("Settlement Agreement") entered into by Plaintiffs and Defendants Botanic Tonics, LLC and Hydra623 Holdings, LLC, as modified by this Court, on March 3, 2025.

Plaintiffs seek an order from the Court granting final certification of the Settlement Class under Rule 23(a) and (b)(3); finding that notice was the best notice practicable under the circumstances and fully complied with due process requirements; finding that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class; and dismissing with prejudice the claims of Plaintiffs and Settlement Class Members against Defendant.

Plaintiffs' motion is based upon this Notice, Memorandum of Points and Authorities filed herewith; the Declaration of Jessie Montague of RG/2 Claims Settlement Administrator; the Declaration of Katherine A. Rabago, and exhibits thereto filed herewith; the preliminary approval motion papers; all other papers and records on file in this matter; and such other oral and documentary evidence as may be presented at the hearing or in connection herewith.

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   SUMMARY OF SETTLEMENT TERMS ............................................................... 2

    A.   Settlement Benefits Negotiated for the Class .................................................. 2

    B.   Allocation of Relief Among Class Members .................................................... 3

    C.   Released Claims ............................................................................................... 3

    D.   Attorneys' Fees and Costs, and Service Awards for Class Representatives ............. 4

III.  NOTICE ADMINISTRATION AND DISSEMINATION ....................................... 4

    A.   The Notice Program ......................................................................................... 4

    B.   Claim Form and Claims Process ...................................................................... 5

    C.   Notice Administration ...................................................................................... 5

    D.   CAFA Notice .................................................................................................... 6

    E.   Response to Notice ........................................................................................... 6

IV.  ARGUMENT .............................................................................................................. 6

    A.   Due Process Rights of the Class Are Protected Against Presumptively Invalid Claim Submissions ............................................................................... 7

       1.   Purchase Location Not Reported on Claim Form ................................... 7

       2.   Duplicate Submissions ........................................................................... 8

       3.   Invalid Documentation Submitted .......................................................... 8

       4.   Bulk Claims Submissions ....................................................................... 8

       5.   Claims Submitted from Outside United States and Canada ................... 10

       6.   Invalid Email Address ........................................................................... 11

       7.   Signature Rejection ............................................................................... 11

    B.   The Settlement is Fair, Reasonable, and Adequate ....................................... 11

       1.   Strength of Plaintiffs' Case Weighed Against Risks of Protracted Litigation.............. 12

       2.   Risk of Maintaining Class Action Status Weighed in Favor of Settlement.................. 13

       3.   Amount Offered in Settlement Benefits the Class ................................ 14

       4.   Extent of Discovery and Stage of Proceedings Support Final Approval.................... 15

       5.   Experience and Views of Counsel ........................................................ 16

       6.   Class Members' Response to Settlement ............................................... 16

    C.   The Settlement Class Should Be Finally Certified ........................................ 17

V.    CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Alvarez v. Sirius XM Radio Inc.*, 2021 WL 1234878 (C.D. Cal. 2021)........................................ 17

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)............................................................................. 7

*Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998 (E.D. Cal. 2019) .............................................. 14

*In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827- EJD, 2023 WL 2090981 (N.D.

    Cal. Feb. 17, 2023).................................................................................................................... 16

*In re Facebook Internet Tracking Litig.*, 2022 WL 16902426 (N.D. Cal. 2022) ......................... 16

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 8443230 (N.D. Cal. 2023)

    .................................................................................................................................................. 17

*In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015).................................... 16

*Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).................... 15

*Oliveira v. Language Line Services, Inc.,* 767 F.Supp.3d 984 (N.D. Cal. 2025) ......................... 12

*Rodriguez v. West Publishing Corp.*, 563 F. 3d 948 (9th Cir. 2009)............................................ 14

*Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244 (C.D. Cal. 2016) .......................................... 12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).................................................. 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.        INTRODUCTION**

Plaintiffs C.C., Sam Rosenfield, Romulo Torres, and Paul Teitler ("Plaintiffs") and Class Counsel respectfully seek final approval of the Settlement Agreement reached between Plaintiffs and Defendants Botanic Tonics, LLC and Hydra623 Holdings, LLC ("BT Defendants"), and preliminarily approved by this Court on March 5, 2025, as fair, reasonable and adequate. The proposed Settlement provides meaningful recovery, both monetary and non-monetary relief, and is an excellent result in consideration of the substantial potential risks. Class Members are provided recovery through a claims-in process to a $8,750,000 cash Gross Settlement Fund. As discussed in the preliminary approval papers, Class Members in this case will also benefit from the injunctive relief provided by the mandated disclosure to be included on all Botanic Tonics' Feel Free products containing kratom.

The Settlement Administrator successfully disseminated notice via email to over 44,000 Class Members and by publication on six different online and social media platforms targeted at Class Members. A toll-free telephone number, website, email account, and P.O. box were established to contact the Settlement Administrator directly with questions and submit claim forms. As of July 25, 2025, the Settlement Administrator has received 48,577 claims that have been validated through a series of screening measures to protect against presumptively invalid claims.

The total claims received, before the screening process, was 736,273. These purported to seek recovery for the purchase of **36 *billion* bottles of Feel Free.** Given that Botanic Tonics reported only having sold 580,080 bottles during the relevant period, a bulk of those claims were clearly invalid. To determine exactly which claims were presumptively invalid, the Settlement Administrator, RG/2 implemented a rigorous screening of submitted claims based on several factors, discussed in detail below. The 48,577 claims that were determined presumptively valid reflect Botanic Tonics' estimate of the class size at the preliminary approval hearing of 30,000 to 50,000 (based on units directly sold to consumers) and an estimate of retailer sales ranging anywhere from 30,000 to 90,000. Rabago Decl., ¶ 15.

Only eight Class Members requested exclusion and none have objected as of the date of this motion. Montague Decl., ¶ 13. The feedback Class Counsel has received from direct communications with Class Members has also been overwhelmingly positive. Rabago Decl., ¶ 16. Therefore, for the reasons discussed herein, and based on the Court's prior finding that the Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court certify the Settlement Class and grant final approval of the Settlement.

## II.    SUMMARY OF SETTLEMENT TERMS

### A.    Settlement Benefits Negotiated for the Class

The Court has preliminarily approved the following class, for the purposes of settlement, "all persons in the United States who purchased the product 'Feel Free' anytime from March 28, 2019, through and including the date of preliminary approval of the Settlement." Dkt. 136, p. 2; *see also*, Dkt. 135-1, Settlement Agreement, ¶ 1.7. The Settlement provides for a gross cash settlement of $8,750,000 for the benefit of the Settlement Class, which anticipates a Net Settlement fund of $5,469,555.05, $305,270 set aside for Settlement Administration costs, and up to $2,916,666.66 (33.33%) set aside for attorneys' fees plus actual expenses of litigation at $38,508.95 with any remainder to be distributed to the Settlement Class. Dkt. 135-1, Settlement Agreement, ¶¶ 1.22, 2.1, 2.3, 2.5. Subject to Court approval, up to $20,000 ($5,000 each) of the settlement fund will be paid as "Service Awards" to Plaintiffs Torres, Rosenfield, Teitler, and Corday in recognition of their service to the Settlement Class Members. *Id*. ¶ 2.2.

The Settlement also provides non-monetary relief to consumers requiring Defendant Botanic Tonics to include a disclosure of potential side effects of Feel Free on all product labels that contain kratom, as well as on social media advertising, including Instagram posts. Dkt. 135-1, Settlement Agreement, ¶ 2.8. The disclosure will read:

> Warning: This product contains leaf kratom which can become habit-forming and cause serious adverse health effects. Consider avoiding this product if you have a history of substance abuse.

*Id*.

**B.      Allocation of Relief Among Class Members**

The Net Settlement Fund is expected to be $5,469,555.05 (the amount remaining after Court-approved awards of administration costs, attorneys' fees and costs, and service awards), and will be allocated as a *pro rata* share to Settlement Class Members who submitted a valid claim form, based on the amount of purchased bottles claimed. Dkt. 135-1, Settlement Agreement, ¶ 2.1(b). Settlement Class Members were permitted to submit claims for reimbursement of up to 10 bottles of Feel Free purchased within the Class Period without proof of purchase. *Id.* Settlement Class Members who submitted reimbursement for more than 10 bottles of Feel Free purchased within the Class Period were required to submit proofs of purchase for each bottle purchased. *Id.* Settlement Class Members had a maximum of 120 days to submit a claim with or without proof of purchase from the date notice was first disseminated on April 18, 2025. *Id.*; *see also,* Declaration of Jessie Montague (Montague Decl.), ¶¶ 6, 7, 11, 14, 15.

Participating Class Members will be issued payment via check sent by U.S. mail, which must be cashed within 90 days from the date the Settlement Payment is first issued. Dkt. 135-1, Settlement Agreement, ¶ 2.1(d). Otherwise, the proceeds will revert to the Common Fund and be distributed to the *cy pres* recipient of Western Center of Law and Poverty, subject to approval by the Court. Dkt. 135-1, Settlement Agreement, ¶ 2.1(d)–(e). Plaintiffs propose a second round of *pro rata* distribution to Participating Class Members before remains in common fund are distributed to the *cy pres* recipient. There will be no reversion of funds to Defendant. *Id*., ¶ 2.1(e).

**C.      Released Claims**

In exchange for the cash settlement, Plaintiffs and Settlement Class Members will release all claims that have or could have been asserted in the action, whether known or unknown, against Botanic Tonics Defendants and are based on the identical factual predicate as the underlying allegations and claims asserted in the Consolidated Class Action Complaint. Dkt. 135-1, Settlement Agreement, ¶ 5.4. This release specifically excludes claims for personal injury. *Id.*

**D.    Attorneys' Fees and Costs, and Service Awards for Class Representatives**

Class Counsel seek, in a separately filed motion, attorneys' fees of $2,916,666.66, or 33.33% of the Gross Settlement Fund plus $38,508.95 for costs of litigation. Dkt. 135-1, Settlement Agreement, ¶ 2.3; *see also,* Mot. for Attorneys' Fees, Costs, and Service Awards. Subject to Court approval, RG/2 will be paid for settlement administration costs currently incurred at $305,270. Dkt. 135-1, Settlement Agreement, ¶ 2.5. Class Counsel also seeks approval of $20,000 as payment for service awards to Named Plaintiffs and Class Representatives, in the amount of $5,000 each. Dkt. 135-1, Settlement Agreement, ¶ 2.2; *see also,* Mot. for Attorneys' Fees, Costs, and Service Awards.

### III.    NOTICE ADMINISTRATION AND DISSEMINATION

**A.    The Notice Program**

RG/2 issued notices to Class Members on April 18, 2025, in accordance with the Settlement Agreement, via email and publication. Montague Decl., ¶¶ 6, 7, 11. To reach as many Settlement Class Members as possible, RG/2 arranged for notices to appear on six separate social media platforms, including Facebook, Instagram, Reddit, YouTube video advertisements, Google and Bing Paid Search advertisements. *Id*. ¶ 12. RG/2 estimates 75% of the class was reached through the internet and social media publication. *Id*. ¶ 13.

RG/2 sent notice via email to 44,983 Class Members for whom Defendants' Counsel provided email addresses on April 18, 2025. *Id*. ¶ 7. Of these email addresses, 4,912 notices could not be delivered, as the emails were invalid, or could not be delivered. *Id*. The emailed Notice included a link to the Settlement Website where Class Members can submit a claim using a login and password. *Id*.

On March 28, 2025, RG/2 established a Settlement Website available at www.FeelFreeClassAction.com, including a summary of Settlement terms, advice regarding Class Members' rights under the Settlement, documents submitted to the court, the full notice, claim form, contact information for RG/2 and Class Counsel, and a link for Class Members to file a claim. Montague Decl., ¶ 7. As of July 25, 2025, the Settlement Website was viewed a total of 450,113 times by 382,344 users. *Id*.

RG/2 hosted a toll-free number to allow Class Members to learn more about the Settlement and contact the administrator with questions. Montague Decl., ¶ 8. This toll-free number was listed on the Full Notice, Email Notice, and on the Settlement Website. *Id*. As of July 25, 2025, RG/2 received 471 calls from Class Members and 64 requests for a Full Notice or Claim Form to be mailed. *Id*.

A settlement mailbox was also set up by RG/2 to receive hard copy Claim Forms, exclusion requests, objections, requests for Claim Forms, and other case correspondence. Montague Decl., ¶ 9. An email address was also established, monitored by RG/2, for Class Members to communicate via email with the settlement administrator. *Id*. ¶ 10.

**B.    Claim Form and Claims Process**

The Settlement Website provided a simple process for Class Members to electronically submit their claims and proof of purchase. The Settlement Website contained an online Claim portal, which Class Members could access by typing in their unique login information. Montague Decl., ¶ 7 (c)-(d). If Class Members did not have a login, the website allowed individuals to request login information via email after entering a name and valid email address. *Id*.

In addition, Class Members were also informed, in the Full Notice and on the Settlement Website, that, as an alternative to submitting the Claim Form electronically, they could download, print out and mail in the Claim Form. Montague Decl., ¶ 7 (c); *see also*, Dkt. 133-2, Full Notice, p. 3.

The Claim Form, approved and modified by the Court, required only necessary information including name, mailing address, email address, amount of bottles purchased, the location of purchase(s), and an attestation under penalty of perjury. Montague Decl., ¶ 17.

**C.    Notice Administration**

As of July 25, 2025, the Settlement Website was viewed a total of 450,113 times by 382,344 users; RG/2 has received and responded to 3,069 emails from Class Members; RG/2 has received and responded to 471 calls from Class Members; and mailed 64 requests for a Full Notice or Claim Form via U.S. Mail. Montague Decl. ¶¶ 7, 8, 10. Both Class Counsel and RG/2 have

responded to inquiries from Class Members about the proposed Settlement and case. *Id.*; Declaration of Katherine A. Rabago (Rabago Decl.) ¶¶ 15-16.

For individuals who contacted RG/2 and/or Class Counsel stating that they were not able to use the claims portal on the Settlement Website because they did not have login information required to access the portal, RG/2 either provided these individuals with login and password, or advised that the Claim Form could be downloaded, filled out and mailed. Montague Decl. ¶ 7(d), 9, 10; Rabago Decl. ¶ 16.

### D.      CAFA Notice

Defense Counsel provided notice pursuant to the Class Action Fairness Act within ten days of the filing of the Motion for Preliminary Approval to the Attorney General of the United States and to the Attorneys General of 55 states and territories. Rabago Decl. ¶ 19.

### E.      Response to Notice

After analyzing over 700,000 claims submitted, RG/2 determined that 46,954 claims appear to be valid, timely and complete, accounting for 449,732 products purchased. Montague Decl., ¶ 15. The total bottles reported purchased by all purported Claimants claiming into the Settlement is over **36 *billion* bottles of Feel Free**, however, Botanic Tonics sold a total of 580,080 bottles during the relevant period, making this amount of purchased bottles impossible. *Id.* As a result of these overwhelming reports by Claimants, the Parties along with RG/2 designed a series of analyses of the claims submitted, described in detail below, to distinguish presumptively invalid claims from valid ones. *See, infra*, IV.A. The Parties are confident in the results of the analysis as they reflect a number of claims within Defendants' estimate of Class Members—that is, Defendants estimated a class size ranging from 30,000 to 140,000 and RG/2 determined 46,954 claims appear to be valid, timely and complete.

## IV.      ARGUMENT

Having already preliminary approved this settlement and the dissemination plan for the class notice, the Court must now determine whether this settlement is "fair, reasonable, and adequate" in light of Class Members' responses and whether the provisionally certified settlement class should be certified for purposes of judgment under Federal Rules of Civil Procedure, Rule

23(a) and (b)(3); and (3) whether the notice issued to the class met the requirements of Rule 23(c). *See* Fed. R. Civ. P. 23(e).

### A. Due Process Rights of the Class Are Protected Against Presumptively Invalid Claim Submissions

Over 700,000 claims were received by RG/2, purportedly claiming into the settlement for the purchase of **36 *billion* bottles of Feel Free**. Considering Botanic Tonics reports having sold a total of 580,080 bottles during the relevant period, this is impossible. Montague Decl., ¶ 16; Rabago Decl., ¶ 15.

At the June 27, 2025 Status Conference, the Parties and Court discussed the abnormally high claim rate in this action and the steps being taken to ensure participation in the Class is limited to legitimate claimants. Rabago Decl., ¶ 15. The Court expressed reservation of approval of the Settlement if the actual claim rate was as high as it appeared, which at the time was an order of magnitude greater than the estimated claim rate at preliminary approval. *Id*. After thorough review by RG/2 and the Parties, it appears clear that a large number of the claims submitted were invalid. Montague Decl., ¶¶ 15-29. After screening and flagging these claims as presumptively invalid, as discussed in detail below, RG/2 determined **46,954** claims appear to be valid and complete. *Id*., ¶ 15.

Under Rule 23, several requirements must be met to protect the due process rights of Class Members, including the adequate representation of all class members and limiting or preventing unfairness in settlement procedures. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Here, Class Counsel worked closely with RG/2 and Defense Counsel to ensure due process rights of the Class Member were protected while implementing a robust procedure to flag and thwart invalid claims. Montague Decl., ¶ 16; Rabago Decl., ¶ 15. A total of 689,319 claims appear to be invalid based on one or more of the reasons described below. Montague Decl., ¶¶ 15-16.

#### 1. Purchase Location Not Reported on Claim Form

RG/2 determined that 211,098 claims listed a retailer that BT Defendants stated did not carry Feel Free. Montague Decl., ¶ 19. RG/2 also determined that 74,452 claims listed a purchase from www.botanictonics.com; however, BT Defendants' records of website purchasers showed

that these individuals did not purchase from the website. *Id*. In short, a total of 285,518 claims purported to have purchased Feel Free through distribution methods that appear to have been impossible and will be rejected. *Id*.

### 2.    Duplicate Submissions

RG/2 determined that 175,604 claims were duplicate submissions. Montague Decl., ¶ 20. RG/2 reviewed claimants' IP addresses, email addresses, and mailing addresses and flagged those claims that appeared to share one of those identifiers with at least three other claims. *Id*. Excluding claims flagged for having an invalid purchase location, an additional 101,273 were flagged as duplicate submissions. *Id*. Although it is unlikely that more than three valid claims come from the same address, it is possible; therefore, the Parties request that prior to distributing funds, RG/2 issue Rejection Notices to these 101,273 individuals and provide them an opportunity to appeal the determination by providing a scanned image of their claim form, along with proofs of purchase.

### 3.    Invalid Documentation Submitted

RG/2 Claims performed a sample review of the proof of purchase documentation provided and identified 7,923 claims with fraudulent receipts and documents provided. Montague Decl., ¶ 22. RG/2's review of documents looked for the same or similar proof of purchase documents from different contact information or amounts reflected. *Id*. Most proofs of purchase were deemed invalid due to documentation from major retailers where Feel Free products have never been sold. *Id*. RG/2 determined that of the 7,923 claims which submitted invalid receipts and documents as proof of purchase, only 167 of these claims were flagged with no other reason for invalidity. *Id*. RG/2 will issue rejection notices to 167 individuals who provided presumptively invalid proofs of purchase. *Id*.

### 4.    Bulk Claims Submissions

#### a)    By mail

RG/2 received approximately 4,287 claims purported to have been submitted in bulk by mail from a printing company. Montague Decl., ¶ 21. RG/2 believes the claims were submitted through www.usesparrow.com. *Id*. Sparrow provides a subscription-based service for submitting

claims on behalf of its subscribers into claims-made settlement funds of class action settlements, and specifically emphasizes in its marketing that it provides subscribers with a weekly supply of class action settlement for which no proof is needed. The Claim Forms and envelopes received by RG/2 do not indicate the company used to submit the Claim Forms, but all envelopes are marked by the same Postage Permit No., are digitally completed, none include a purchase location, and none make a claim for purchases of over 10 bottles. *Id*.



The Botanic Tonics claim submission portal on Sparrow's website also specifically emphasizes that no proof of purchase is required, uses a drop-down menu that does not allow claimants to claim more than 10 bottles (the maximum amount that does not require proof of purchase as stated in the Class Notice), and does not include any method for a claimant to attach a proof of purchase— all of which suggests an intent to allow the submission of illegitimate claims. [1]

> Purchased the kratom-containing "Feel Free" product anytime from March 28, 2019, through and including March 5, 2025.
>
> No proof of purchase needed ✓

[1] All images are taken from Sparrow's website located at https://usesparrow.com/.

Number of Products Purchased

10

Purchased must have been made between March 28, 2019, and March 5, 2025. Up to 10 products may be claimed.

RG/2 received Claim Forms in this format beyond the claims submission deadline with no postmarked date. *Id*. The claims submitted from the company represent 70% of the claim forms received by mail. *Id*. RG/2 issued a notice to Sparrow via email on July 23, 2025 notifying them that the 4,287 claims received were determined to be presumptively invalid. *Id*. RG/2 has not received a response, and this motion will be served on Sparrow in accordance with the Court's order granting preliminary approval. RG/2 plans to issue rejection notices to these 4,287 claims, assuming Sparrow does not file an opposition.

        *b)*    *Online*

RG/2 performed additional analysis to determine if claims were submitted in bulk online. Montague Decl., ¶ 24. This analysis entailed a review of 601,142 claims whose "digital signatures" reflected scenarios outside of a normal claim submission. *Id*. Bulk claim submissions appear to be created using a combination of real information and false information that is not owned by the submitter and often created in bulk. *Id*. Excluding the claims flagged for multiple invalid reasons, 257,787 claims were identified as solely mass claim submission. *Id*. RG/2 will issue rejection notices to 257,787 claims. *Id*.

        **5.**    **Claims Submitted from Outside United States and Canada**

RG/2 reviewed IP addresses used to submit claims online to detect potential invalid claims. IP addresses are unique to a local network and are one way to determine whether multiple claims were submitted under the same network and outside of the United States and Canada. RG/2 determined that 5,466 claims were submitted from an IP address outside the United States and Canada. Montague Decl., ¶ 23. Because the Class is limited to persons who purchased in the United States, these claims were presumed to be invalid. An additional 1,838 claims will be rejected for submitting a claim from outside of the United States and Canada. *Id*.

### 6.   Invalid Email Address

RG/2 flagged 108,924 email addresses provided in the claims forms that appear to have been created in bulk. Montague Decl., ¶ 27. Email addresses created in bulk is one that differs from others by only one or two characters, or only different domain. RG/2 identified 108,924 claims submitted with a rejected email address. Excluding the claims flagged for rejection in the paragraphs outlined above, an additional 36,549 claims were identified as mass claim submission based on an invalid email address. RG/2 will issue rejection notices to these 36,549 claims.

### 7.   Signature Rejection

Additionally, RG/2 analyzed the validity of Claimants' signatures submitted through the online claim submissions portal to determine whether the signature appears to be a normal signature for individuals (as opposed to indicative of bot activity when combined with other flags). Montague Decl., ¶ 27. RG/2 identified a total of 58,361 claims with a signature issue. *Id*. Excluding the claims already flagged for rejection in the paragraphs above, an additional 172 claims were identified as invalid having a signature issue common for mass claim submissions. *Id*. RG/2 recommends these claims should be rejected. *Id*.

In conclusion, a total of 687,696 claims were rejected for presumptively invalid submissions. However, 101,273 of these Claimants will be given the opportunity to remedy the invalidity of their claim submissions.[2]

### B.   The Settlement is Fair, Reasonable, and Adequate

Under Rule 23(e)(2), courts must consider procedural and substantive fairness when determining whether a settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Comm. Notes.  The district court must balance several factors—the "*Churchill* factors"—in its analysis for final approval of class settlement:

---

[2] Several steps were also implemented on the Settlement Website at the outset of notice dissemination to prevent fraudulent claims in the first instance, including: (1) a two-factor authentication process to request login information, requiring a valid email address, that could only be used once, to receive the login information before a claim was able to be submitted; and (2) a Completely Automated Public Turing Test to Tell Computers and Humans Apart ("CAPTCHA") system was added to the claim portal login screen to differentiate between human visitors to a website and robotic agents. Montague Decl., ¶¶ 17-18.

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Oliveira v. Language Line Services, Inc.,* 767 F.Supp.3d 984, 999–1000 (N.D. Cal. 2025).

This Settlement satisfies the relevant "*Churchill* factors" here.[3]

### 1.    Strength of Plaintiffs' Case Weighed Against Risks of Protracted Litigation

Defendants adamantly denied wrongdoing and raised numerous challenges to the action that presented risks to Plaintiffs' chance of prevailing despite his good faith belief in the merits of his claims. First, Plaintiffs faced significant risk in the potential for protracted litigation resulting in Botanic Tonics' inability to satisfy a judgment. A defendant's financial condition can be the predominating factor in determining the fairness of a class settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also, Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (finding settlement fair where, *inter alia*, "the parties were litigating and negotiating 'under a huge cloud of uncertainty concerning [the defendant's] financial stability'" that created a very real risk that plaintiff would recover nothing at trial even if she prevailed.)

Over the course of the mediations, BT Defendants provided Plaintiffs with confidential financial information including year-over-year revenue and expenses, and lack of sufficient insurance coverage applicable to the claims at issue. Rabago Decl., ¶¶ 5, 7. Through additional information shared through the mediator relating to the company's financial circumstances, Class Counsel determined it was probable that BT Defendants would be unable to satisfy a judgment in favor of the Class, especially with anticipated increase in costs and fees associated with litigation as the case moved towards class certification, expert discovery, and trial. *Id*. ¶¶ 7, 8.

Meanwhile, the United States Government's renewed interest in Botanic Tonics, giving Class Counsel reason to believe that delay in the litigation could prejudice the Class. *Id*. ¶ 8. After

---

[3] The seventh factor is not analyzed because there is no government participant in this Settlement.

Class Counsel filed the *Torres* matter, U.S. Marshalls, at the direction of the FDA, filed a forfeiture complaint in the United States District Court for the Northern District of Oklahoma and seized 250,000 units of Feel Free, 1.5 tanks of the liquid product, and approximately 1,000 kilograms of powdered kratom from Botanic Tonics' manufacturing plant in Broken Arrow, Oklahoma. *See U.S. v. 250,000 filled bottles of liquid product*, Case No. 23-cv-168-JFH-CDL, Dkt. 2, Complaint (N.D. Ok. 2023). The Government alleged that Botanic Tonics' products were adulterated dietary supplements, the consumption of which can lead to serious health issues. Further action by the Government to curb Botanic Tonics' sale and manufacture of Feel Free, including further seizure of product or assets, would significantly limit the ability of the Class to recover a meaningful monetary amount, if any, from BT Defendants.[4]  Rabago Decl., ¶ 8.

Accordingly, reaching a resolution that would bring meaningful and imminent monetary relief to the Class was of utmost importance when these risks were considered by Class Counsel.

### 2.  Risk of Maintaining Class Action Status Weighed in Favor of Settlement

Plaintiffs believe their claims have merit and have pursued them aggressively but are clear-eyed about the legal uncertainties that threatened their ability to recover and support settlement. If settlement approval were denied and litigation were to resume, it would be costly, complex, and this matter would consume judicial resources. Rabago Decl., ¶¶ 8, 13. Defendant has raised numerous defenses relevant to the merits, damages, and class certification.  *Id*. There would be a contested class certification motion, *Daubert* motions, likely interlocutory review under Rule 23(f), summary judgment, and potentially a trial.  Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources, with the eventual outcome unknown. Likewise, even if Plaintiffs certified a class, there is also a risk that a court would decertify the class, which it can do at any time. *Rodriguez*

---

[4] Since the time of preliminary approval of the settlement, renewed government interest in regulating kratom reassured Plaintiffs' decision to settle in light of the uncertainty of Defendants' solvency. *See* Press Release, U.S. Dep't of Health & Hum. Servs., Food & Drug Admin., *FDA Takes Steps to Restrict 7-OH Opioid Products Threatening American Consumers* (July 29, 2025), https://www.hhs.gov/press-room/fda-7-oh-scheduling-recommendation.html (last visited July 31, 2025).

*v. West Publishing Corp.*, 563 F. 3d 948, 966 (9th Cir. 2009). In short, a bad outcome in any of the next steps in this litigation would result in the class being deprived of the substantial benefits provided under this settlement.

### 3.    Amount Offered in Settlement Benefits the Class

Under the Settlement, BT Defendants will pay a total of $8,750,000. Dkt. 135-1, Settlement Agreement, ¶ 2.1(a). Approximately $5,469,555.05 or 62.5% of the Gross Fund will go directly into the hands of the Settlement Class Members (the Net Settlement Fund).[5] *Id.*, ¶ 2.1(b); *see also, Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1011 (E.D. Cal. 2019) (a 42% recovery in settlement is exceptional). The Net Settlement Fund will be distributed by mailed check after the Settlement is fully funded. Dkt. 135-1, Settlement Agreement, ¶ 2.1. Class Counsel proposes a second round of distribution of funds from uncashed checks be issued to ensure that the Net Settlement Fund is distributed to Settlement Class Members to the greatest extent practicable. Any remaining funds will be distributed to proposed *cy pres* recipient, Western Center of Law and Poverty. *Id.*, ¶ 2.1(d)-(e). None of the settlement funds will revert back to Defendant. *Id.*

Under the Settlement Agreement, Settlement Class Members are entitled to a *pro rata* share of the Net Settlement Fund, allocated on a per-bottle basis. Dkt. 135-1, Settlement Agreement, ¶ 2.1(b).  Each Class Member was able to claim the amount of bottles purchased, subject to proof of purchase for purchases of over 10 bottles, and will be provided the opportunity to object to the Settlement Payment. *Id.,* ¶ 2.1(d). The Net Settlement allocated evenly across all presumptively valid Class Members yields a recovery of $112.59 per Class Member. Rabago Decl., ¶ 11. This recovery divides bottle purchases equally for all Class Members with an average reimbursement of approximately 11 bottles at $10 per bottle. *Id*. This amount represents a fair reimbursement

---

[5] The Net Settlement Fund is in anticipation of approval of Plaintiffs concurrently filed motion for fees, costs, and services awards seeking approximately $305,270 to be paid to the settlement administrator, $2,916,666.66 to be paid in attorneys' fees and $38,508.95 in litigation costs, and $20,000 to be paid to Named Plaintiffs as service awards.

1

2

given that the purchase price was about $10 per bottle, and is consistent with the Court's no proof limit of 10 bottles per Claimant. *Id.*

Non-monetary benefits provided to the Class also provide meaningful recovery and an attempt to protect a vulnerable group of persons who otherwise would be enticed to purchase and consume Feel Free containing kratom without understanding its addictive nature. That is, the Settlement requires the disclosure of potential side effects of Feel Free products containing kratom on all respective product labels as well as social media advertising. The disclosure must read:

> Warning: This product contains leaf kratom which can become habit-forming and cause serious adverse health effects. Consider avoiding this product if you have a history of substance abuse.

*See* Dkt. 135-1, Settlement Agreement, ¶ 2.8.

### 4.    Extent of Discovery and Stage of Proceedings Support Final Approval

Class settlements are presumed fair when they are reached through "sufficient discovery and genuine arms-length negotiation." *Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Here, Class Counsel conducted early investigation, exchanged discovery that went to the heart of the case, reviewed photographs, videos, medical records, receipts, bank statements, social media content, and spreadsheets detailing data regarding the Class, purchases, advertisements, marketing, and sales. Rabago Decl., ¶¶ 4-5. They also interviewed and communicated with Class Members throughout the entire litigation. *Id.* ¶¶ 4, 16. Due to this preparation, Class Counsel could negotiate a beneficial settlement for Class Members at mediation. The parties engaged in a series of arms-length mediation sessions and discussions facilitated by Judge Patrick Walsh (Ret.) of Signature Resolution. *Id.* ¶¶ 6, 7, 9

Since preliminary approval was granted, Class Counsel continue to perform significant and intensive work on behalf of the Class, including making corrections as directed by the Court regarding notice and settlement procedures, addressing additional concerns regarding claims raised by RG/2, and assisting Class Members with questions about the Settlement. Rabago Decl., ¶ 16. Class Counsel has also worked closely with RG/2 and Defense Counsel to ensure reasonable and effective communication with Class Members. *Id.*

### 5.    Experience and Views of Counsel

Class Counsel are highly experienced in complex class action litigation, including consumer litigation, and believe that this Settlement is a very good result for Class Members. As discussed above and in Plaintiffs' motion for preliminary approval, Class Counsel heavily considered the strengths and weaknesses of class claims, the numerous issues of this case, and endorse the Settlement as fair, reasonable and adequate. Rabago Decl., ¶ 13; *see also*, Dkt. 125, Declaration of Shounak S. Dharap in Support of Preliminary Approval, ¶ 26.

### 6.    Class Members' Response to Settlement

The reaction of the Class to the Settlement has been exceedingly positive. A total of 48,577 presumed valid claims have been submitted as of August 4, 2025. Montague Decl., ¶ 15. With an estimated class size ranging at the higher end of Defense Counsel's estimate, this yields a very successful claims rate of 34%. *See e.g. In re Facebook Internet Tracking Litig.*, 2022 WL 16902426, at *8 (N.D. Cal. 2022) (settlement with a claims rate approaching 2% approved); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827- EJD, 2023 WL 2090981, at *8 (N.D. Cal. 2023) (approval of a settlement with a 3.6% claims rate). *See also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 944–45 (9th Cir. 2015) (35-million-member settlement approved with less than 4% filed claims).

RG/2 has received and processed a total 736,246 Claim Forms. Montague Decl., ¶ 17. This high number of claims is attributable in part to the Publication Notice, as well as class action settlement aggregator websites posting links to the Settlement Website.[6] *Id*.

Of the claims submitted, 10,977 claims were submitted for reimbursement for over ten bottles requiring proof of purchase, and 725,260 claims were submitted for ten bottles or less, with no requirement for proof of purchase. *Id*. This slanted data warranted a thorough analysis to detect fraudulent claims and protect against dilution of recovery for eligible Class Members. To date, RG/2 has received eight (8) valid Requests for Exclusion and zero (0) objections. Montague Decl., ¶¶ 13, 14. In Class Counsel's experience, this indicates the Class's satisfaction with the Settlement.

---

[6] www.claimdepot.com and www.topclassactions.com posted links to the Settlement Website before notice was disseminated by RG/2. Montague Decl., ¶ 16.

Class Member engagement has been higher than expected as evidenced by the sheer volume of claims submitted, as discussed below. However, for purposes of the *Churchill* analysis, the general response from the Class is exceedingly positive and warrants final approval.

### C.    The Settlement Class Should Be Finally Certified

The Court's Preliminary Approval Order provisionally certified a Settlement Class after concluding that each of the requirements under Rule 23(a) and (b)(3) were satisfied. Dkt. 136. No substantive changes have occurred since that ruling, and, more importantly, no objections have challenged that conclusion. The Court may therefore rely on the same rationale as explained in the preliminary approval order to find that class certification is appropriate under Rule 23(a) and (b) in connection with final approval. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 8443230 at *1 (N.D. Cal. 2023) (Chhabria, J.) ("The Court confirms its finding in its Preliminary Approval Order that, for purposes of Settlement Only, all requirements for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a)( and (b)(3) are satisfied."); *Alvarez v. Sirius XM Radio Inc.*, 2021 WL 1234878 at *5 (C.D. Cal. 2021) (…for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement as fair, reasonable and adequate, and certify the Settlement Class.

Dated: August 4, 2025         **ARNS DAVIS LAW**

_____
Shounak S. Dharap
Katherine A. Rabago
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

**BURSOR & FISHER, P.A.**
Neal J. Deckant
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Tel: 925-300-4455
Fax: 925-407-2700

**SMITH KRIVOSHEY**
Joel D. Smith (State Bar No. 244902)
Yeremey Krivoshey (State Bar No. 295032)
166 Geary St
San Frnacisco CA 94108
Tel: (415) 839-7000

**THE VEEN FIRM, P.C.**
Anthony Lawrence Label
20 Haight Street
San Francisco, CA 94102
415-673-4800
Fax: 415-771-5845

**MAZIE SLATER KATZ & FREEMAN, LLC**
Matthew R. Mendelsohn
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel:  (973) 228-0391
Fax: (973) 228-0303

*Counsel for Plaintiffs and the Proposed Class*